*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 4, 2019

**BY ECF**

Honorable Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:    <u>United States v. Turkiye Halk Bankasi A.S.,</u>
               S6 15 Cr. 867 (RMB)

Dear Judge Berman,

       The Government respectfully submits this letter in connection with the arraignment of the defendant, Turkiye Halk Bankasi A.S. ("Halkbank"), scheduled in this matter for November 5, 2019 at 11:00 a.m. This letter will respond to a letter delivered to the Court today by King & Spalding LLP, U.S. counsel for Halkbank, requesting permission to enter a limited and special appearance; and will also outline the Court's civil contempt authority to compel compliance with its orders, specifically the summonses directing Halkbank's appearance in court to respond to the charges against it in the superseding indictment, S6 15 Cr. 867 (RMB) (the "Indictment"). For the reasons discussed more fully below, Halkbank has been properly served with the Indictment and two summonses to appear pursuant to Rule 4 of the Federal Rules of Criminal Procedure. King & Spalding's request to enter a special appearance should be denied, and that request does not excuse Halkbank's obligation to comply with the validly served summonses.

    **Halkbank's Noncompliance with the Court's Summons and Service of Second Summons**

       As the Court knows, a superseding indictment, S6 15 Cr. 867 (RMB) (the "Indictment"), was filed on October 15, 2019 charging Halkbank with conspiring to obstruct the lawful functions of the U.S. Department of the Treasury, conspiring to violate the International Emergency Economic Powers Act ("IEEPA") and national security controls established thereunder, bank fraud and conspiring to commit bank fraud, and money laundering and conspiring to launder money. A summons (the "First Summons") was issued directing Halkbank to appear on October 22, 2019 at 9:15 a.m. to answer to the charges in the Indictment. As the Court has found, Halkbank had notice of the Indictment and First Summons, but failed to appear for arraignment. (D.E. 563, 566 (the "October 23 Order") at 1). Indeed, though Halkbank has been represented by U.S. legal counsel, King & Spalding LLP, for at least two years in connection with the Government's investigation of Halkbank, when the Indictment and First Summons were delivered to King & Spalding the firm

advised the Court that it was not authorized by Halkbank to accept service or to file a notice of appearance. (D.E. 564).

In order to provide Halkbank with an opportunity to cure its noncompliance with the First Summons, the Court issued a new summons (the "Second Summons") on October 23, 2019, directing Halkbank to appear on November 5, 2019 at 11:00 a.m. (D.E. 566 at 13-14). The Court ordered the Government to serve the Second Summons pursuant to Rule 4 of the Federal Rules of Criminal Procedure, including by electronic transmission to Halkbank's counsel, King & Spalding, or delivery by mail or parcel service to Halkbank's principal place of business. (*Id.* at 3-4).[1]

The Second Summons has since been served pursuant to Rule 4, which authorizes service on an organization that is not within a judicial district of the United States by certain specified methods or by "any other means that gives notice." FED. R. CRIM. P. 4(c)(3)(D)(ii); *see In re Pangang Group Co. Ltd.*, 901 F.3d 1046, 1053 & 1055 (9th Cir. 2018). Service has been accomplished by confirmed electronic delivery and attempted delivery by parcel service. In addition, the Department of Justice has requested that the Turkish Ministry of Justice cause the Second Summons and related documents be served on Halkbank under Turkish law, and the Second Summons and the November 5, 2019 conference date have been reported in the news media.

On October 23, 2019, the day the Second Summons issued, electronic copies of the Second Summons, the Indictment, the October 23 Order, and the transcript of the October 22, 2019 proceedings were delivered by email to King & Spalding. The same day, electronic copies of the Second Summons, the October 23 Order, and the Indictment were delivered by email to (1) the email account "halkbank.ir@halkbank.com.tr," an account identified on Halkbank's website and in its 2018 Annual Report[2] as the bank's corporate email address, *see, e.g.*, 2018 Annual Report at 136, 300, 470; and (2) the email account for Tahsin Yazar, a member of the Turkish Ministry of Treasury and Finance, an Advisor to the Turkish Wealth Fund (the Turkish governmental authority that owns 51% of Halkbank's shares), and an individual who has participated in meetings and conversations, together with Halkbank executives and attorneys from King & Spalding, with U.S. Department of Justice officials regarding the criminal investigation of Halkbank.

In addition to this electronic delivery, copies of the Second Summons, the October 23 Order, and the Indictment were also sent for delivery by FedEx to the address of Halkbank's headquarters, where its Legal Affairs Department is also located. *See* 2018 Annual Report at 470. The Government has been advised by FedEx that delivery was attempted but refused on October 29, 2019.

Finally, on November 1, 2019, electronic copies of the Second Summons, the October 23 Order, and the Indictment, both in English and in Turkish, were transmitted electronically by the

---

[1] The October 23 Order also provided for service on any registered agent of Halkbank in the United States. To date, the Government has not identified any such registered agent.

[2] Available at https://www.halkbank.com.tr/images/channels/English/investor_relations/financial_info/Annual_reports/2018%20annualreporteng.pdf.

Department of Justice's Office of International Affairs to the Turkish Ministry of Justice with a request that they be served on Halkbank pursuant to Turkey's domestic law.

The October 23 Order, including the Second Summons, was posted to the electronic docket in this matter on October 23, 2019. The issuance of the Second Summons was also reported in the media. *See, e.g.*, Humeyra Pamuk, *Turkey's Halkbank may face sanctions if it fails to appear in U.S. court*, REUTERS (Oct. 23, 2019);[3] *U.S. judge says may sanction Turkey's Halkbank if it fails to appear in court*, AHVAL NEWS (Oct. 23, 2019).[4]

### King & Spalding's Request to Make a Special Appearance

Earlier today, November 4, 2019, Andrew C. Hruska, Esq., of King & Spalding sent a letter to the Court (the "K&S Ltr.") requesting permission to enter a special appearance for purposes of filing (1) a recusal motion and (2) a motion to dismiss the Indictment for lack of personal jurisdiction. In his letter, Mr. Hruska states:

> [Halkbank] has not yet responded to the [Indictment] . . . or otherwise made an appearance. Halkbank has retained us to represent it in the above-referenced matter for a limited purpose, and we do not concede the acceptance of service nor enter a general appearance on behalf of Halkbank by submitting this request.
>
> The Bank has refused to accept service and has not stipulated to service by any means. Service should be made by the [Turkish] Ministry of Justice and should be received 30 days in advance of an appearance in line with the terms of the mutual legal assistance treaty between Turkey and the U.S.

(K&S Ltr. at 1). Mr. Hruska requests permission to "enter a limited and special appearance" for the purpose of filing the two motions. *Id.* Mr. Hruska does not state that he intends to file a notice of appearance, and does not state that King & Spalding will appear on November 5, 2019 at 11:00 a.m.

Mr. Hruska's letter conclusively establishes that Halkbank has been served the First Summons and Second Summons pursuant to Rule 4(c)(3)(D)(ii). Indeed, Mr. Hruska's letter brings this matter squarely within the Ninth Circuit's decision in *Pangang*. There, a group of companies in China were indicted and the government served summonses by delivering copies to U.S. counsel for the defendant companies, among other things.[5] *Pangang*, 901 F.3d at 1053. The defendant

---

[3] Available at https://www.reuters.com/article/us-usa-turkey-halkbank/turkeys-halkbank-may-face-sanctions-if-it-fails-to-appear-in-u-s-court-idUSKBN1X222A.

[4] Available at http://ahval.co/en-6288.

[5] The government had attempted to serve summonses in connection with an earlier, underlying indictment pursuant to the provisions of Rule 4 prior to its amendment in 2016, which were unsuccessful. *Id.* at 1048-1050. U.S. counsel successfully moved to quash the prior summonses.

companies failed to appear at the hearing stated in the summonses or at a subsequent status hearing, and the government moved for civil contempt sanctions. *Id.* The U.S. law firm moved to quash service of the summons and opposed sanctions. The district court denied the motion to quash, finding that the defendants had received actual notice of the summonses and that delivery to U.S. counsel for the defendants, who had represented the defendants in their motions to quash prior summonses, satisfied Rule 4(c)(3)(D)(ii).

The Ninth Circuit affirmed, holding that Rule 4(c)(3)(D)(ii) permits service of a summons by any means that provides notice to the defendant and is not limited to formal service under domestic or foreign law, *id.* at 1055-57; and that delivering a summons to U.S. counsel who had previously been permitted to make a special appearance to quash a prior summons in no way contravened the rule. *Id.* at 1057-59. With respect to special appearances, the *Panang* court noted the absence of any evidence "of a longstanding historical practice of allowing special appearances in criminal cases," *id*. at 1057, and observed that even the tradition of special appearances in civil cases had been superseded by Rule 12 of the Federal Rules of Civil Procedure. *Id.* at 1058. The court held that the 2016 amendment to Rule 4(c)(3)(D)(ii) made no effort to avoid impinging on the practice of special appearances, *id*.; rather, "the point of the amendment is to provide a means of service that gives notice, and there is no legitimate interest in allowing a procedure in which an institutional defendant can feign lack of notice." *Id*. at 1059 (quoting Advisory Comm. on Criminal Rules, March 2015 Minutes, at 11 (March 16-17, 2015) ("Advisory Committee Minutes")). The Advisory Rules Committee expressly noted that a defendant cannot make a special appearance to argue that it lacked notice of the summons and indictment. *Id.*

Accordingly, Mr. Hruska's letter acknowledging that the defendant has retained King & Spalding for the purposes of making a recusal motion and challenging personal jurisdiction and his request for permission to enter a special appearance conclusively demonstrates that the First Summons and Second Summons have been served under Rule 4, notwithstanding Mr. Hruska's protestations that Halkbank has refused to accept service and that Halkbank insists on formal service under the procedures of Turkish law. (K&S Ltr. At 1). Halkbank is not entitled to choose its preferred method of service. The defendant has notice of the charges and the Court's orders to appear, and is required to comply.

Mr. Hruska's request to enter a "limited and special appearance" does not excuse Halkbank's refusal to comply with the First Summons, and does not satisfy Halkbank's obligation to comply with the Second Summons. As an initial matter, there is no established tradition of special appearances in criminal cases, but rather a mere handful of isolated instances from other Circuits where a special appearance was made with little in the way of discussion or analysis of the legal authority for doing so. *See Pangang*, 901 F.3d at 1057-58; *see also United States v. Stein*, 435 F. Supp. 2d 330, 379 n. 235 (S.D.N.Y. 2006), *aff'd*, 541 F.3d 130 (2d Cir. 2008) ("The Federal Rules of Civil Procedure, and many modern state codes, go further, abolishing the distinction between general and special appearances and permitting a defendant to preserve a personal jurisdiction objection by answer or timely motion to dismiss. These rules, however, do not apply in a criminal case."). Moreover, those isolated instances all predate the 2016 amendment to Rule 4. To the extent it may have been unclear before, it is now perfectly clear that Rule 4 does not permit special appearances in criminal matters to contest service. *Id*. at 1059. Mr. Hruska's letter misleadingly cites a memorandum from the DOJ Office of Policy and Legislation regarding the

2016 amendment to Rule 4 in support of Halkbank's position that "leave to enter a special appearance is routinely granted," but fails to inform the Court that this same letter notes that the amendment eliminates special appearances to contest notice of a summons: "[T]his is not a flaw in the amendment, it is the point of the amendment. If the defendant corporation has notice of a summons, it ought to be considered served, and there ought not be an avenue to present a factual claim that is, by definition, without merit." Advisory Comm. on Criminal Rules, Agenda (Mar. 16-17, 2015) at 74 (available at https://www.uscourts.gov/sites/default/files/fr_import/CR2015-05.pdf); *see also* Advisory Comm. Minutes at 11 (agreeing with DOJ's response). The memo observes: "A foreign organization acting lawfully in this situation has two reasonable choices: it can either appear in a U.S. court to raise any legitimate defense or it can choose not to appear and face any attendant risks." *Id.* at 75. The DOJ memo does contemplate the possibility of a special appearance for extremely narrow purposes: to challenge the constitutionality of Rule 4 or its retroactive application, or to establish that a defendant corporation is dissolved. *Id.* King & Spalding does not advance any of these narrowly circumscribed issues.

King & Spalding's proposed "limited and special appearance" is not supported by common practice or tradition, and would serve no legitimate purpose. Where special appearances were allowed, they were for the purpose of allowing a defendant to contest issues that it would otherwise waive by appearing. (Advisory Comm. on Criminal Rules, Agenda (Mar. 16-17, 2015) at 74). This concern has been eliminated in the civil context by Rule 12, which preserves a defendant's ability to challenge personal jurisdiction. The matters that Halkbank seeks to raise through a limited appearance require no special appearance at all. Halkbank's two proposed motions—for recusal, and to dismiss the Indictment for lack of personal jurisdiction—can be raised after the defendant complies with the summonses and appears in this matter. No special appearance is required.

Nor is there any reason to expect that the proposed motions have any merit. Civil concepts of personal jurisdiction are inapposite in criminal prosecutions. *See United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013) ("It is true courts have periodically borrowed the language of personal jurisdiction in discussing the due process constraints on extraterritoriality. But Ali's flawed analogies do not establish actual standards for judicial inquiry; the law of personal jurisdiction is simply inapposite."). Rather, a defendant can challenge whether charges in the U.S. violate constitutional due process for lack of fair warning that the defendant's conduct exposed him or her to criminal prosecution. *See, e.g., United States v. Al Kassar*, 660 F.3d 108, 119 (2d Cir. 2011). But it is constitutionally irrelevant whether or not the defendant reasonably understood that prosecution could occur *in the United States*, *id.*, and that argument is not waived by Halkbank's appearance.

Moreover, to the extent that Halkbank seeks to raise challenges to the Indictment based on extraterritoriality, those arguments are hardly an "issue of first impression in this Circuit." They are not even issues of first impression in this case: Zarrab and Atilla each challenged the charges on jurisdictional and extraterritoriality grounds. (*See* D.E. 66 & 67; 280, 281, 306 & 307). This Court, after careful consideration, denied the motions to dismiss. (D.E. 90; November 16, 2017 Tr. at 13-22). Notably, while Atilla has appealed his conviction and sentence, he has not challenged the Court's jurisdiction on appeal. And there is even less reason to believe that Halkbank can raise a meritorious jurisdictional claim, where the evidence introduced at the trial of Atilla showed, among other things, that Halkbank repeatedly met and spoke with senior Treasury officials both

in Turkey and in Washington D.C. over the course of several years; that Halkbank repeatedly lied to those Treasury officials in meetings, phone calls, and written communications in order to conceal and protect the sanctions-evasion scheme that it devised with its clients, Zarrab and the Government of Iran; and that Halkbank made these lies in order to avoid being sanctioned and to protect its ability to conduct financial transactions in and through the United States, including through correspondent accounts Halkbank held at banks located in the United States.

Halkbank is no more likely to make a meritorious recusal motion. Mr. Hruska's letter, for example, identifies no statements or actions by the Court whatsoever that could cause a reasonable person to question the Court's impartiality, and the Government is aware of none. To the extent that the Court has issued rulings or made findings in connection with those rulings in the prior proceedings, those are not a basis for recusal. *See United States v. Pugliese*, 805 F.2d 1117, 1125 (2d Cir. 1986) ("The rule of law . . ., without belaboring the point, is that what a judge learns in his judicial capacity—whether by way of guilty pleas of codefendants or alleged coconspirators, or by way of pretrial proceedings, or both—is a proper basis for judicial observations, and the use of such information is not the kind of matter that results in disqualification.") (quoting *United States v. Bernstein*, 533 F.2d 775, 785 (2d Cir. 1976)); *see also Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 81 (5th Cir. 2011) ("[F]acts learned by a judge in his or her judicial capacity regarding the parties before the court, whether learned in the same or a related proceeding, cannot be the basis for disqualification[.]") (quoting *Conkling v. Turner*, 138 F.3d 577, 592 (5th Cir. 1998)). Indeed, the Court has previously been faced with a recusal motion (D.E. 79 & 80), which was denied. (D.E. 87). The Court's conduct of the proceedings throughout has provided no basis for any reasonable observer to question its impartiality.

Most important, however, with respect to King & Spalding's request for a limited and special appearance is the fact that Halkbank would not waive its jurisdictional or recusal motions by appearing as required by the summonses. Those arguments can be raised after Halkbank appears, and cannot be raised before then. Those arguments would be meritless, but regardless of their merit Halkbank has ample ability and opportunity to raise them without a special appearance. The only apparent purpose to the request is to attempt to permit Halkbank to challenge this Court's impartiality and jurisdiction, while allowing Halkbank to seek to evade that very jurisdiction if its motions are denied. This is not a legitimate purpose, and the request should not be granted.

### The Court's Contempt Authority

The Supreme Court has long observed that "[t]here can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "An adjudication of civil contempt is coercive—to compel obedience to a lawful court order[.]" *In re Grand Jury Witness*, 835 F.2d 437, 440 (2d Cir. 1987); *see also Matter of Dickinson*, 763 F.2d 84, 87 (1985) ("The primary purpose of the imposition of a sanction for civil contempt is to coerce the contemnor into future compliance and to remedy past non-compliance, rather than to punish him.").

Civil contempt sanctions may be imposed on "notice and an opportunity to be heard," and "[n]either a jury trial nor proof beyond a reasonable doubt is required." *United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828 (1994). To impose contempt sanctions, a district court must

Case 1:15-cr-00867-RMB   Document 571   Filed 11/04/19   Page 7 of 8

Page 7

(1) find that the order that the party allegedly failed to comply with is clear and unambiguous; (2) find that proof of noncompliance is clear and convincing, and (3) find that the contemnor was not reasonably diligent in attempting to comply. *United States v. Local 1804-1 Int'l Longshoremens Ass'n AFL-CIO*, 44 F.3d 1091, 1096 (2d Cir. 1995)

A district court has "wide discretion" in "fashioning a remedy for civil contempt." *Matter of Dickenson*, 763 F.2d at 87. That discretion "clearly permits the imposition of a fine." *Id.* at 88 (citing *Marc Rich & Co. A.G. v. United States*, 707 F.2d 663, 670 (2d Cir. 1983)). A "per diem" fine, "imposed for each day a contemnor fails to comply with an affirmative court order," is a civil contempt sanction that "exert[s] a constant coercive pressure, and once the jural command is obeyed, the future, indefinite, daily fines are purged." *Bagwell*, 512 U.S. at 829.

"[W]hen the civil contempt order imposes a fine, the contemnor's financial resources must be weighed in order to decide whether the sanctions appropriately compel obedience to the order." *In re Grand Jury Witness*, 835 F.2d at 443. In order to determine an appropriately coercive contempt sanction, a district court should consider "(1) the character and magnitude of the harm threatened by continued contempt, (2) the probable effectiveness of the proposed sanction, and (3) the financial consequence of that sanction upon the contemnor." *Id.* (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 304 (1947); *Perfect Fit Indus., Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)).

## Conclusion

Accordingly, the Court has the authority to impose civil contempt sanctions against Halkbank for its knowing violations of the First Summons and—in the event the bank fails to appear for the November 5, 2019 arraignment in response to the Second Summons—the Second Summons on notice to the bank and with an opportunity to be heard, based on clear and convincing evidence of the bank's noncompliance and its lack of reasonable diligence in attempting to comply. A *per diem* fine for each day of Halkbank's continued noncompliance (*i.e.*, its failure to appear in this action through counsel to answer the charges in the Indictment) may be imposed based on the character and magnitude of the harm threatened by the bank's continued contempt, the probable effectiveness of the fine, and the financial consequences to Halkbank in light of the defendant's financial resources and other relevant circumstances. Should Halkbank fail to appear on November 5, the Government respectfully submits that the defendant should be ordered to show cause why contempt sanctions should not be imposed and a potential hearing date scheduled.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____/s/_____
Michael D. Lockard / Sidhardha Kamaraju / David W. Denton, Jr. / Jonathan Rebold / Kiersten A. Fletcher
Assistant United States Attorney
(212) 637-2193/-6523/-2744/-2512/-2238

cc: Counsel of Record (by ECF)
    Drew Hruska, Esq. (by email)