U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 26, 2019

**BY ECF**

Hon. Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, NY 10007

    Re:   *United States v. Turkiye Halk Bankasi, A.S.*,
            S6 15 Cr. 867 (RMB)

Dear Judge Berman:

      The Government respectfully submits this letter in opposition to the request by King & Spalding LLP to enter a special appearance on behalf of Turkiye Halk Bankasi, A.S. ("Halkbank" or the "defendant") to file a motion to dismiss the indictment, S6 15 Cr. 867 (RMB) (the "Indictment"), and a motion for recusal. *See* Dkt. Entry No. 577 ("Halkbank Ltr."). Halkbank's request should be denied.

      Halkbank was charged with serious national security, bank fraud, and money laundering offenses in an indictment returned on October 15, 2019, and the indictment and two accompanying summonses have been served pursuant to Rule 4 of the Federal Rules of Criminal Procedure. Notwithstanding that the summonses have been served requiring Halkbank's appearance, and the defendant plainly is aware of the charges, the bank has intentionally refused to answer to them. Twice the defendant intentionally failed to appear. Instead, King & Spalding, on Halkbank's instructions, has asked for permission to enter a special appearance in order to challenge the Indictment without the bank appearing before the Court.

      The premise of Halkbank's request—that it would waive personal jurisdiction arguments by appearing and being arraigned, and that a special appearance is required to permit it to assert a constitutional right—is wrong and, indeed, illogical. First, concepts of personal jurisdiction found in civil suits simply do not apply in criminal cases: the Court's jurisdiction is established by an indictment that sufficiently alleges violations of federal criminal law, *United States v. Prado*, 933 F.3d 121, 134 (2d Cir. 2014), and the application of the charges to a particular defendant complies with due process so long as there is "a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003). It is not unfair or arbitrary to hold Halkbank to account for the serious crimes it has committed through its actions in the United States, the harms it and its

co-conspirators have caused in the United States, and Halkbank's intent to protect its ongoing use of the U.S. financial system by concealing the offenses. *See infra*, 2-4.

Tellingly, Halkbank asserts two distinct and entirely inconsistent theories of personal jurisdiction in an attempt to cloak the vacuity of its request: Halkbank first argues that it must have sufficient "minimum contacts" with the United States in order to be subject to its jurisdiction.[1] *See* Halkbank Ltr. at 2. Then, relying on cases that reject that proposition, Halkbank argues that personal jurisdiction would be "waived" by Halkbank's appearance. *Id*. at 13-14. But that is not waiver, that is simply a lawful and necessary consequence of the charges and summonses. Halkbank can, after appearing, argue that the minimum-contacts test applies and that Halkbank does not meet it, and the Court can resolve that argument on its merits. *United States v. Maruyasu Indus. Cos.*, 229 F. Supp. 3d 659, 665-66 (S.D. Ohio 2017); Rule 12(b)(2), (3), FED. R. CRIM. PR.; *cf*. Rule 12(b), FED. R. CIV. PR. If the Court rejects the bank's motion, then there is personal jurisdiction and the case will proceed, exactly as the summonses require.

Halkbank's refusal to agree to appear if its motion to dismiss were denied (Nov. 5, 2019 Tr. at 15-16) plainly exposes its request for a special appearance as an empty delay tactic. If Halkbank were correct that the minimum-contacts test applies and that Halkbank's contacts with the United States do not satisfy that test, then, after appearing, its motion would be granted. But Halkbank wants to have its cake and eat it too: even if Halkbank is wrong, the bank still intends to argue that it has not appeared and is not subject to the Court's lawful authority.

King & Spalding attempts to mask Halkbank's gamesmanship by trying to recast the question of appearance as whether the defendant will "condition" the exercise of its constitutional rights. Halkbank Ltr. at 4. That is a flat misrepresentation of the entirely appropriate question the Court put to King & Spalding: if the Court's jurisdiction were established, would the defendant acknowledge that jurisdiction and appear? King & Spalding's evasion of that question (Nov. 5, 2019 Tr. at 15-16) and Halkbank's contumacious conduct provide an unequivocal answer: it will not. The remedy is a contempt hearing, at which the bank can be found in contempt and an appropriate coercive penalty imposed. *See* Rule 4(a), FED. R. CRIM. PR.

## I. The Defendant and the Offenses

Halkbank is a Turkish bank majority-owned by the Government of Turkey, currently controlled by the Turkiye Varlik Fonu, or Turkey Wealth Fund. The Wealth Fund, in turn, is under the authority of the Office of the Presidency. The chairman of the Turkey Wealth Fund is the Turkish President; the deputy chairman is the Minister of Treasury and Finance. *Erdogan appoints himself chairman of Turkey's sovereign wealth fund*, REUTERS (Sep. 12, 2018).[2] Prior to 2017, Halkbank was controlled by the Turkish Privatization Administration, which was under the Office

---

[1] As discussed more fully below, Halkbank has not filed a proposed motion to dismiss or even articulated a good-faith basis for arguing that it beyond the jurisdiction of the Court, despite having authorized King & Spalding to file two letters with the Court.

[2] Available at https://www.reuters.com/article/turkey-economy-fund/update-1-erdogan-appoints-himself-chairman-of-turkeys-sovereign-wealth-fund-idUSL5N1VY1SW.

of the Prime Minister. Among other things, Halkbank is and, throughout the time period of the offenses charged in the Indictment, was the principal financial channel for trade between Turkey and Iran. Most significantly, Halkbank held accounts for the Central Bank of Iran and for the National Iranian Oil Company ("NIOC"), where Turkey deposited money to pay for billions of dollars' worth of oil and gas purchases from the Iranian government. (Ind. ¶¶ 3, 8, 26-27, 28, 35.)

Between 2012 and 2016, Halkbank conspired with Turkish government officials; Iranian government officials at NIOC, the Ministry of Oil, and the Central Bank of Iran; Iranian banks; and Turkish businessmen to evade and avoid U.S. sanctions imposed on the Government of Iran for its support for terrorism, its illicit nuclear program, its ballistic missiles development, and its human rights abuses. These sanctions were imposed to deprive the Government of Iran of funding for its deadly and malign activities and to coerce the Government of Iran to participate in diplomatic discussions to limit or abandon those activities. (Tr. 163-65, 179-85, 195, 1081-82, 1409-12.) Dramatically undermining those efforts, Halkbank conspired to secretly give the Government of Iran access to at least approximately $20 billion-worth of oil revenues that were restricted by U.S. and international sanctions. (Ind. ¶ 4.)

This sanctions-evasion conspiracy not only benefitted the Government of Iran; it also benefitted Halkbank by boosting its fees and revenues; it benefitted a corrupt Halkbank chief executive and corrupt Turkish government officials who received tens of millions of dollars' worth of bribes as part of the scheme; and it benefitted the Turkish Government by falsely inflating Turkish economic statistics. (Ind. ¶¶ 30, 31, 36-38, 47, 59, 60, 62.)

Halkbank's profitable participation in the scheme, however, also put the bank at risk of crippling sanctions from the U.S. Department of the Treasury ("Treasury"): the illicit transactions Halkbank was conducting for the Government of Iran could trigger sanctions that would cut Halkbank off from the U.S. financial system. Concealing the scheme from Treasury, accordingly, was essential both to the success of the scheme and to Halkbank's very existence. Halkbank's access to the U.S. financial system was, and remains, critical: without access to correspondent banking accounts in the United States, Halkbank would not be able to conduct U.S.-dollar transactions for itself and its customers. Without access to U.S. capital markets, Halkbank would not be able to raise billions of dollars from corporate bond issuances.

During the time that Halkbank was undermining U.S. sanctions, it benefitted enormously from its access to the U.S. financial system.

- Between 2012 and 2016, Halkbank maintained U.S.-dollar correspondent accounts at multiple U.S. financial institutions. Halkbank used these accounts to conduct transfers totaling billions of U.S. dollars during the time of the offense conduct.

- In 2014, Halkbank retained, among others, U.S. financial advisors and institutions to issue $500 million in U.S.-dollar denominated corporate bonds, and retained the services of a U.S. financial institution in order to act as paying agent for those bonds.

- In 2015 and again in 2016, Halkbank issued two placements of $500 million each U.S.-dollar denominated corporate bonds using, among others, U.S. financial advisors and institutions and a U.S. paying agent.

- In March 2017, Halkbank's former Deputy General Manager for International Banking, co-defendant Mehmet Hakan Atilla, was arrested in the United States while traveling to meet with U.S. financial institutions in furtherance of another prospective bond offering.

- Halkbank participates in a U.S. Department of Agriculture program that provides guaranteed financing for certain buyers of U.S. agricultural exports.

In order to shield its access to these essential U.S. financial markets and facilities, Halkbank went to extraordinary lengths to conceal the scheme from Treasury officials. Because of Halkbank's relationships with the Central Bank of Iran, NIOC, and other Iranian government and private entities, sanctions against the Government of Iran had particular significance for Halkbank and Treasury believed Halkbank was at particular risk of Iranian sanctions-evasion efforts. Accordingly, Treasury officials maintained continuous and in-depth communications with Halkbank's top executives. These included in-person meetings held in Treasury's Washington, D.C. offices and Halkbank's Turkey offices; telephone calls between Halkbank executives in Turkey and Treasury officials in the United States; and letter and email correspondence. (*See, e.g.*, Ind. ¶¶ 5, 26, 42, 63; Tr. 1079-80, 1083-84, 1112-13, 1118, 1126, 1128-29, 1131-32, 1141-42, 1143-44, 1147-48, 1253-66, 1412-13, 1418-19. 1420-22, 1434, 1445-46, 1447, 1452-53, 1457, 1459-60.)

Treasury sought to ensure that Halkbank understood and was complying with sanctions and was alert to Iranian evasion efforts. Halkbank, however, concealed its cooperation with the Government of Iran in evading sanctions and lied to Treasury about its sanctions compliance and business practices. These communications are among the overt acts that Halkbank took in furtherance of the charged conspiracies.

## II. The Indictment and Summonses

The Indictment was returned on October 15, 2019. The Indictment alleges Halkbank's participation in crimes with which other co-defendants already have been charged or convicted: major Halkbank client and co-conspirator Reza Zarrab was arrested in March 2016, and pleaded guilty in October 2017. Atilla, Halkbank's former Deputy General Manager for International Banking and a co-conspirator in the offenses, was arrested in March 2017 and convicted following a five-week jury trial in January 2018. Additional co-conspirators, including Halkbank's former chief executive, Suleyman Aslan; Haklbank's former Head of Foreign Operations, Levent Balkan; and the former Turkish Minister of Economy, Mehmet Zafer Caglayan, each were indicted in September 2017. (Dkt. Entry No. 293.) King & Spalding has represented Halkbank in the criminal investigation of its participation in the offenses since at least October 2017.

Following the return of the Indictment, the Indictment and a summons (the "First Summons") requiring appearance on October 22, 2019 were delivered by email to King &

Spalding. Halkbank issued a press release contending that the charges were part of a political attack on Turkey. (Dkt. Entry No. 566.) The Government of Turkey reportedly raised the Indictment in a meeting with Vice President Pence and Secretary of State Pompeo. *Id*. In a telephone conversation between attorneys with King & Spalding and the Government, King & Spalding stated that it was discussing with Halkbank whether the firm would appear and asked the Government's consent to adjourn the initial appearance. *Id*. The Government declined to consent to an adjournment, and King & Spalding sent a letter to the Court simply stating that it was not authorized by Halkbank to accept service. *Id*. Halkbank did not appear at the October 22, 2019 conference.

The Court issued another summons (the "Second Summons") directing Halkbank to appear on November 5, 2019, which was delivered by email to King & Spalding; to Halkbank's corporate email address; and to a representative of the Turkish Ministry of Treasury and Finance and an advisor to the Turkey Wealth Fund who had participated in meetings with U.S. government officials about the Halkbank criminal investigation. (Dkt. Entry No. 571.) The Second Summons and Indictment were also sent for delivery to Halkbank's legal department in Istanbul, but the legal department refused to accept delivery. (Dkt. Entry No. 572.) The Second Summons and Indictment were also sent by email to the Turkish Ministry of Justice by the U.S. Department of Justice. (Dkt. Entry No. 571.)

On November 5, 2019, Halkbank again did not appear, and instead King & Spalding attended the conference to request permission to make a special appearance. King & Spalding did not answer the Court's question whether Halkbank was aware of the charges and the content of the Indictment (Nov. 5, 2019 Tr. at 11), but also has not contested that Halkbank has actual knowledge of the Indictment and the summonses.[3] In response to the Court's question whether Halkbank would appear and respond to the charges if its motion to dismiss were denied, King & Spalding claimed to be unable to answer, despite having represented the bank for more than two years with respect to the criminal investigation and despite the Indictment having been returned three weeks prior. (*Id.* at 15-16.)

### III. The Request for a Special Appearance Should Be Denied

Halkbank's request for permission to make a special appearance of counsel should be denied. Halkbank offers essentially two reasons why it should be granted a special appearance: special appearances are routinely granted in criminal cases, Halkbank Ltr. at 5-9; and a special appearance is necessary for it to assert personal jurisdiction arguments. Halkbank Ltr. at 2-5, 9-14. Halkbank is wrong on both counts.

---

[3] King & Spalding would not concede that Halkbank was aware of the charges and the content of the Indictment, but also argued that there were "many other illegal [sic] issues which we see as being debilitating problems in the indictment" (Nov. 5, 2019 Tr. at 9), and that "[t]he indictment makes assertions and allegations that are outside of the jurisdiction of this court." (*Id*. at 18). King & Spalding's refusal to answer the Court notwithstanding, Halkbank clearly is aware of the charges and the content of the allegations.

### A. A Special Appearance Is Not Warranted

Pointing to slightly over a dozen instances where individual or corporate defendants were permitted to make special appearances in criminal matters, Halkbank attempts to characterize this practice as "routine." Halkbank Ltr. at 5-9, 15-18. But Halkbank is incorrect, and its list is striking for several reasons: first, the list is sparse, and nearly half of the cases it cites involved uncontested requests for limited appearance. *Id.* at 16-18. Second, all but one of the cases in which limited appearances were permitted[4] occurred prior to the December 2016 amendment to Rule 4's service provisions—in fact, many of them represented special appearances that the amendment was intended to preclude. Third, all of the cases concerning corporate defendants involved defendants who had not been served under Rule 4 or who were contesting the validity of service—Halkbank has already been served and is required by the summonses to appear. Lastly, not one is from the Second Circuit.

As the Ninth Circuit observed in *Pangang Group Co. Ltd.*, there is no evidence "of a longstanding historical practice of allowing special appearances in criminal cases." 901 F.3d 1046, 1057 (9th Cir. 2018). That court reached this conclusion after considering the same cases that Halkbank offers, including *United States v. Kolon*, 926 F. Supp. 2d 794 (E.D. Va. 2013) (*compare* Halkbank Ltr. at 16); *United States v. Tucor Int'l, Inc.*, 35 F. Supp.2d 1172 (N.D. Cal. 1998) (*compare* Halkbank Ltr. at 7, 15); *United States v. Noriega*, 683 F. Supp. 1373 (S.D. Fla. 1988) (*compare* Halkbank Ltr. at 7, 15); *United States v. Sinovel Wind Grp. Co.*, 794 F.3d 787 (7th Cir. 2015) (compare Halkbank Ltr. at 17), and the district court's prior decision in the Pangang case itself, *United States v. Pangang Group Co., Ltd.*, 11 Cr. 573 (N.D. Cal.) (*compare* Halkbank Ltr. at 18). *See Pangang Group*, 901 F.3d at 1049-50, 1057-58. In many of these cases, defendant corporations sought to challenge the sufficiency of service of a summons without appearing before the court,[5] which Rule 4 now prohibits. *Pangang Group*, 901 F.3d at 1059 ("[T]here is no legitimate interest in allowing a procedure in which an institutional defendant can feign lack of notice.") (quoting Advisory Comm. on Criminal Rules, March 2015 Minutes, at 11 (March 16-17, 2015).

Halkbank places special reliance on *United States v. Siriwan*, *Tucor International*, and *Noriega* in support of its request for a special appearance. Halkbank Ltr. at 6-7. These cases do not bear the weight Halkbank would put on them. Contrary to Halkbank's characterization of *Siriwan*, the order granting a special appearance in that case was by stipulation. *See United States v. Siriwan*, 09 Cr. 81 (GW) (C.D. Cal.) (Dkt. Entry No. 61) (*compare* Halkbank Ltr. at 6). *Tucor Internaional*, from a district court in the Ninth Circuit, was considered by the Ninth Circuit in

---

[4] Halkbank identifies one contested motion for a special appearance that was granted after the Rule 4 amendments: a foreign defendant requested a special appearance to oppose the application of the crime-fraud exception to communications between the defendant and his attorneys. *United States v. Rafiekian*, 18 Cr. 457 (AJT) (E.D. Va.) (Dkt. Entry No. 188, 189 & 213 at 3-4). *Rafiekian* is not relevant to Halkbank's request.

[5] The requests for special appearances often included a proposed motion, *e.g.*, *Tucor Int'l*, 35 F. Supp. 2d 1172, 1176 (N.D. Cal. 1998); *Dotcom*, 12 Cr. 3 (LO) (E.D. Va.) (Dkt. Entry No. 96); *Kassian Maritime*, 13 Cr. 70 (MSD) (TEM) (E.D. Va.) (Dkt. Entry No. 25). .

*Pangang* and found unpersuasive—a case not "embodying a fundamental rule," but rather an example of "a more recent trend of prosecuting criminal defendants who are not amenable to the execution of a warrant." 901 F.3d at 1057-59. Similarly, *Noriega*, from a district court in the Eleventh Circuit, has not been persuasive in its own circuit. In a much more recent case, the district court denied a foreign defendant's request for a special appearance to move to dismiss the indictment. *United States v. Shalhoub*, 98 Cr. 460 (DMM) (S.D. Fla.) (Dkt. Entry No. 16.) The Eleventh Circuit held that the denial was not appealable, the defendant was not entitled to mandamus, and the defendant "has an adequate remedy: appearance in the district court." *United States v. Shalhoub*, 855 F.3d 1255, 1265 (11th Cir. 2017). *Pangang* and *Shalhoub*, rather than the prior district court decisions in *Tucor International* and *Noriega*, reflect the law of those circuits.

Halkbank also relies on the Seventh Circuit's decision in *United States v. Hijazi*, 589 F.3d 401 (7th Cir. 2009). Halkbank Ltr. at 2-3, 8. That case, too, provides little support. *Hijazi* has been closely limited to its facts, and has not been followed by other Circuits or applied in the Second Circuit. In *Hijazi*, the circuit court reversed the district court's denial of a foreign defendant's request to make a special appearance to challenge to the extraterritorial application of the charged offenses. 589 F.3d at 403, 406-12. Hijazi, a foreign national residing in Kuwait, was indicted along with a co-defendant; Hijazi surrendered to Kuwaiti authorities, who refused to turn him over to the custody of the United States. *Id*. at 405. His co-defendant eventually pleaded guilty to a misdemeanor. *Id*. The circuit concluded that Hijazi had been in Kuwait when indicted, would not be extradited despite having surrendered to foreign authorities, and had no duty to voluntarily surrender to the United States. *Id.* at 407. Accordingly, the circuit concluded that "under the unusual circumstances of this case," the district court should have considered his motion to dismiss. *Id*. at 403.

Two other circuits to have considered *Hijazi* and have declined to follow it. In *Shalhoub*, the defendant argued that his circumstances were exactly the same as Hijazi's. *Shalhoub*, 855 F.3d at 1264-65. The Eleventh Circuit distinguished *Hijazi*, finding no indication that Shalhoub's own government had refused to extradite him and that he was alleged to have committed part of the charged offenses in the United States. *Id*. The Eleventh Circuit also rejected the proposition that an overseas defendant may challenge an indictment without appearing: "Notwithstanding what the Seventh Circuit has stated on this issue . . . we submit that Shalhoub has an adequate remedy: appearance in the district court." *Id*. (citing *Hijazi*, 589 F.3d at 407. The Sixth Circuit has also declined to follow *Hijazi*. In *United States v. Martirossian*, the district court held in abeyance a foreign defendant's motion to dismiss the indictment until the defendant either appeared or agreed to submit to the jurisdiction of the court. 917 F.3d 883, 886 (6th Cir. 2019). The Sixth Circuit denied the defendant's appeal and his petition for mandamus, finding that the defendant could obtain the relief he sought—a ruling on his motion—by appearing. *Id*. at 889, 890. "No one who is indicted and who declines to answer the charge has a right to be labeled a non-fugitive." *Id*. at 890. Like the Eleventh Circuit in *Shalhoub*, the Sixth Circuit rejected the application of *Hijazi*, finding that Martirossian's failure to surrender to foreign authorities so that he could be turned over to U.S. custody was sufficient to distinguish *Hijazi*.

At least one district court in this Circuit has also considered *Hijazi* and found it, at best, limited to the specific circumstances of that case. In *United States v. Sindzingre*, Judge Seybert held that foreign defendants were not entitled to move to dismiss the indictment when they had

been neither extradited nor submitted to the court's jurisdiction. *United States v. Sindzingre*, 14 Cr. 474 (JS), 2019 WL 2290494, *2-3, 8-9 (E.D.N.Y. May 29, 2019).[6] Because the defendants had not surrendered to foreign authorities so that they could be turned over to the custody of the United States, *Hijazi* did not apply. *Id*. at *7. *See also United States v. Itriago*, 13 Cr. 20050 (WJZ) (PMH), 2019 WL 1232128 (S.D. Fla. Feb. 8, 2019) (distinguishing *Hijazi* and declining to rule on a motion to dismiss filed by a foreign defendant who had not been extradited or surrendered to the court), *United States v. Itriago*, 13 Cr. 20050 (WJZ) (PMH), 2019 WL 1228000 (S.D. Fla. Mar. 15, 2019) (adopting report and recommendation).

Moreover, Halkbank's circumstances do not compare to Hijazi's. Halkbank, a corporate defendant, cannot be arrested or extradited. It can, however, be served with a summons. It has been served with two. It is legally required to appear, but it has not. Halkbank has intentionally disregarded both summonses. It has not taken any steps to comply with the summonses or submit to the court's authority. "Federal courts do not play 'catch me if you can.' If a defendant refuses to show up to answer an indictment, ignores an arrest warrant, or leaves the jurisdiction, the court may decline to resolve any objections to the indictment in his absence." *Martirossian*, 917 F.3d at 885.

Halkbank argues that cases rejecting a request for a special appearance, or denying a challenge to an indictment, based on the defendant's fugitive status are inapplicable because Halkbank "cannot 'flee' the jurisdiction," Halkbank Ltr. at 8; and because the fugitive disentitlement doctrine does not apply to entities. *Id*. at 6-7. Halkbank cites no authority for either proposition—it cites only an unpublished Sixth Circuit opinion noting that a motions panel had denied a motion to dismiss the appeal of a corporate defendant under fugitive disentitlement. *Id*. at 6 (citing *United States v. Yang*, 144 Fed. Appx. 521 (6th Cir. 2005)). The motions panel decision cited in the unpublished opinion is not available on the electronic docket. But it is nonetheless clear that, unlike Halkbank, that corporate defendant *did* appear and in fact was convicted after trial. *Yang*, 144 Fed. Appx. at 522.

There is no reason—including *Yang*—why a corporate defendant like Halkbank, which has been served with two summonses and intentionally refused to comply with those lawful orders, should be permitted to simultaneously ignore and invoke the court's authority. The principles underlying the disentitlement doctrine apply equally to a corporate defendant as to an individual defendant. Unlike an individual defendant, a corporate defendant does not even need to physically appear, and the appearance of counsel is all that is required. *See* Rule 43(b)(1), FED. R. CRIM. PR. And Halkbank's contention that it cannot be a fugitive because it has never "fled" the jurisdiction misrepresents the scope of the doctrine: it applies not only to individuals who left the jurisdiction in order to avoid prosecution, but also to defendants who, like Halkbank, have intentionally failed to return or appear. *United States v. Catino*, 735 F.2d 718, 779 (2d Cir. 1984) (defendant engaged in "constructive flight from justice" when he "actively resisted the extradition request throughout the proceedings"); *United States v. Hayes*, 118 F. Supp. 3d 620, 624-25 (S.D.N.Y. 2015) ("But defendants need not affirmatively flee to be labeled fugitives.").

---

[6] The district court addressed the merits of certain grounds of the motion to dismiss as an alternative holding. *Id.* at *10-14.

Moreover, because Halkbank is "an organizational defendant [who] fail[ed] to appear in response to a summons," the Court "may take any action authorized by United States law." Rule 4(a), FED. R. CRIM. PR. Whether considered an application of the fugitive disentitlement doctrine, or of Rule 4(a), or the Court's inherent discretion, Halkbank's request should be denied and it should be compelled to appear as required by the summonses.

### B.  A Legitimate Challenge to the Indictment Would Not Be Waived by Appearance

Halkbank's final argument is that it would waive its challenge to personal jurisdiction by appearing. Halkbank cannot articulate a legitimate personal jurisdictional challenge, and in any event its appearance would not waive its incorrect argument that minimum contacts are required.

District courts "have original jurisdiction . . . of all offenses against the laws of the United States." 18 U.S.C. § 3231. "If the indictment alleges an offense under U.S. criminal statutes, the courts of the United States have jurisdiction to adjudicate the claim." *United States v. Prado*, 933 F.3d 121, 134 (2d Cir. 2014); *see also United States v. Williams*, 341 U.S. 58, 65 (1951) ("The District Court had jurisdiction of offenses against the laws of the United States. Hence, it had jurisdiction of the subject matter, to wit, an alleged violation of a federal conspiracy statute, and, of course, of the persons charged."); *United States v. Yousef*, 750 F.3d 254, 259 (2d Cir. 2014). A district court "has jurisdiction of all crimes cognizable under the authority of the United States ... [and] [t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *United States v. Cotton*, 535 U.S. 625, 630-31 (2002) (quoting *Lamar v. United States*, 240 U.S. 60 (1916)) (alterations in original).

The territorial reach of a criminal statute is not a jurisdictional question, but a merits question. *Yousef*, 750 F.3d at 261-62 (citing *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010)). Congress' authority to apply criminal statutes to foreign conduct or foreign defendants is constitutionally limited by the due process clause of the Fifth Amendment: "When Congress so intends, we apply a statute extraterritorially as long as doing so does not violate due process." *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir 2011) (citing *United States v. Yousef*, 327 F.3d 56, 86 (2d Cir. 2003)).

The due process limit of Congress' authority in criminal statutes is simply this: "In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." *Yousef*, 327 F.3d at 111 (quoting *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir.1990)). With respect to "non-citizens acting entirely abroad,[7] a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests." *Al Kassar*, 660 F.3d at 118 (citing *United States v. Peterson*, 812 F.2d 486, 494 (9th Cir. 1987); *Yousef*, 327 F.3d at 112; and *Davis*, 905 F.2d at 249)); *see also United States v. Steinberg*, 62 F.2d 77, 78 (2d Cir. 1932) (per curiam) ("It has long

---

[7] As alleged in the Indictment, Halkbank committed overt acts in furtherance of the charged offenses in the United States, and in direct communication with U.S. government officials. *See supra* at 2-4.

been a commonplace of criminal liability that a person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which that evil is the fruit.").[8] If the statute applies to the defendant's conduct, and that application is consistent with due process, the appearance of the defendant is all that is needed to try the case. *See, e.g.*, *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003). ("A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law."). How the defendant's appearance is obtained is irrelevant to the court's jurisdiction. *See United States v. Alvarez-Machain*, 504 U.S. 655, 670 (1992); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952).

This federal criminal due process standard under the Fifth Amendment is different than the civil due process standard under the Fourteenth Amendment embodied in personal jurisdiction doctrine. *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013) ("It is true courts have periodically borrowed the language of personal jurisdiction in discussing the due process constraints on extraterritoriality. But . . . the law of personal jurisdiction is simply inapposite."). In the civil context, "[t]he Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S.310, 319 (1945)). In the civil context, the Due Process Clause thus "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

As *Rudzewicz* illustrates, the same civil personal jurisdiction standards apply to individuals as to entities. Similarly, the same federal criminal due process standards apply to individuals like Monser Al Kassar and to entities like Halkbank. All that is required is that there is "a sufficient nexus between" Halkbank and the United States so that the application of the charged offenses "would not be arbitrary or unfair." *Yousef*, 327 F.3d at 111. Halkbank intentionally deceived U.S. government officials, including in meetings in the United States and in communications directed to the United States; and did so in order to protect its ability to conduct billions of dollars' worth of financial transactions through the United States; and conspired to deceive United States financial institutions and to launder money through the United States. *See supra*, 2-4. There is plainly nothing "arbitrary or unfair" about the application of the charged offenses to the defendant, and all that is required for the case to proceed to trial is the appearance of the defendant.

---

[8] Halkbank argues that the due process limits on the reach of criminal statutes is analogous to state choice-of-law limitations under the Fourteenth Amendment, citing *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985). (Halkbank Ltr. at 12). Halkbank mischaracterizes *Phillips Petroleum*. That case concerned "modest restrictions" on the application of state law under both the Full Faith and Credit Clause and the Due Process Clause, based on the forum state's interests in regulating the conduct. *Id.* at 818-19. That is a different question than the fairness to a defendant of being subject to the jurisdiction of a particular court, regardless of what forum's law is applied; that question is governed in the federal criminal context by the Fifth Amendment's Due Process Clause, *see Yousef*, 327 F.3d at 111; and in the state civil context by personal jurisdiction analysis under the Fourteenth Amendment's Due Process Clause. *See Rudzewicz*, 471 U.S. at471-72.

Nor has Halkbank articulated any legitimate basis to believe that its argument that the civil minimum-contacts test applies, or that Halkbank does not meet that standard, would be waived by appearing, as the summonses require. Halkbank argues that Rule 12 of the Federal Rules of Criminal Procedure—unlike the Federal Rules of Civil Procedure—do not protect its ability to make such a challenge after Indictment, citing to Rule 12(b)(2). Halkbank Ltr. at 10. Rule 12(b)(2) permits challenges to subject-matter jurisdiction at any time, including after trial (indeed, even on appeal). Other provisions of Rule 12, however, apply to motions that must be made pretrial: Rule 12(b)(1) provides that "*any* defense, objection, or request that the court can determine without a trial on the merits" may be raised prior to trial (emphasis supplied). Certain challenges—to alleged defects in instituting a prosecution, or a defect in the indictment, must be made prior to trial. Rule 12(b)(3). At arraignment or as soon as practicable afterwards, the Court can set a schedule for pretrial motions. Rule 12(c). Under Rule 12, Halkbank could raise its recusal and jurisdiction motions prior to trial.

The principal case Halkbank relies on to argue that it could be deemed to have "waived" its personal jurisdiction argument if it appears isn't about waiver at all—it is about the lack of merit of Halkbank's jurisdictional argument. Halkbank cites *United States v. Maruyasu Industries Companies*, 229 F. Supp. 3d 659 (S.D. Ohio 2017), Halkbank Ltr. at 13,[9] where a corporate criminal defendant was served with a summons (as Halkbank has been) and made an appearance through counsel (as Halkbank has not). The defendant moved to dismiss the indictment on the same basis that Halkbank proffers—that personal jurisdiction under *International Shoe* and its progeny required the government to show that the defendant satisfies the "minimum contacts" test. The *Maruyasu* court <u>did not find the argument waived</u>: it permitted the defendant to make the motion under Rule 12, 229 F. Supp. 3d at 665-66, and considered the argument on the merits. *Id.* at 666-74. The *Maruyasu* court held that the *International Shoe* test does not apply to criminal cases, *id*. at 669-70,[10] and the defendant's appearance was all that was required for the court to have authority to hear the charges. *Id.* at 671. The defendant argued that it had not appeared, but had only entered a special appearance. Reviewing the procedural history, the court readily concluded that the defendant had appeared. *Id*. at 670-71.

Halkbank's mischaracterization of *Maruyasu* as finding a waiver of the defendant's personal jurisdiction argument is revealing. Halkbank's real concern is not waiving its jurisdictional argument, but rather its desire to try to evade the Court's jurisdiction even if the Court denies its motion to dismiss. But Halkbank simply does not have a choice about whether or

---

[9] Halkbank also cites *United States v. Beadon*, 49 F.2d 164 (2d Cir. 1932). Halkbank Ltr. at 13. Corporate defendants appeared through counsel on the first day of a trial; on the next day, counsel argued that the defendants were not appearing because they had not been served with process, but counsel never sought to withdraw their original appearances. *Id.* at 166-67. The Second Circuit held that the defendants were present at trial. *Id*. at 167. The decision does not indicate that there was ever a motion to challenge or quash service, to dismiss for lack of personal jurisdiction, or any other challenge to personal jurisdiction until after trial had commenced.

[10] In an alternative holding, the court also held that *Maruyasu* satisfied the minimum contacts test if it did apply. *Id*. at 671-75.

not to appear: it has been served with two summonses, and those summonses require Halkbank's appearance in court to answer the charges. Halkbank can seek recusal or challenge the indictment on any ground permitted by law, but it cannot remain a fugitive. Halkbank's refusal to comply with the summonses already provides the Court authority over the defendant to "take any action authorized by United States law." Rule 4(a), FED. R. CRIM. PR. The appropriate action is to set a hearing where, after notice and an opportunity to be heard, Halkbank must appear or be held in contempt.

### IV. Conclusion

For the reasons discussed above, Halkbank's request to make a special appearance should be denied and the Court should promptly schedule a hearing at which it can determine whether Halkbank should be held in contempt.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____/s/_____
Michael D. Lockard/Sidhardha Kamaraju/David W. Denton, Jr./Jonathan Rebold/Kiersten Fletcher
Assistant United States Attorneys
(212) 637-2193/6523/2744/2512/2238

cc: Counsel of record (by ECF)
    Andrew Hruska, Esq. (by email)

Enclosure: Proposed order

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **ORDER** |
| - v. - | : | S6 15 Cr. 867 (RMB) |
| TÜRKİYE HALK BANKASI A.S.,<br>   a/k/a "Halkbank," | : | |
| Defendant. | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

WHEREAS a federal grand jury sitting in the Southern District of New York returned a superseding indictment against TÜRKİYE HALK BANKASI A.S., a/k/a "Halkbank" (referred to herein as "Halkbank"), which was filed on October 15, 2019 (the "Indictment");

WHEREAS the Court issued a summons to Halkbank to appear before the Court for an arraignment on October 22, 2019, at 9:15 a.m. (the "First Summons");

WHEREAS the law firm of King & Spalding LLP ("King & Spalding") submitted a letter to the Court dated October 18, 2019, in which King & Spalding indicated that it had received the summons on October 16, 2019, and wrote that "[a]lthough King & Spalding has represented Halkbank in connection with the Department of Justice's prior investigation regarding Halkbank, at no point has King & Spalding been authorized to accept service of a summons or other legal process on behalf of Halkbank" and "are not authorized to make an appearance in this case;"

WHEREAS the Court held a conference in this matter on October 22, 2019 (the "First Conference"), at which Halkbank did not appear, through counsel or otherwise;

WHEREAS, the Court issued an order dated October 23, 2019 (the "Order"), finding that the Government has properly served the First Summons and the Indictment on

Halkbank and that Halkbank has willfully and knowingly disobeyed the Court's order in the First Summons to appear at the First Conference;

WHEREAS, on October 23, 2019, the Court issued a summons (the "Second Summons") directing Halkbank to appear for an arraignment on November 5, 2019;

WHEREAS, the Government served the Second Summons and Indictment on Halkbank by electronic delivery to Halkbank, King & Spalding, and a representative of the Turkish Ministry of Treasury and Finance; and attempted to deliver the Second Summons and Indictment by commercial carrier to Halkbank's Legal Department at its principal place of business in Istanbul, Turkey but delivery was refused;

WHEREAS, King & Spalding delivered a letter to the Court dated November 4, 2019, requesting permission to make a special and limited appearance on behalf of Halkbank;

WHEREAS, Andrew Hruska, Esq., William Johnson, Esq., Richard Walker, Esq., and Jacob Gerber, Esq., attorneys with King & Spalding, attended the court appearance on November 5, 2019 (the "Second Conference"), denied that they were entering an appearance on behalf of Halkbank, and requested permission to make a special and limited appearance on behalf of Halkbank;

WHEREAS, the Court finds, based on the foregoing, that, pursuant to Federal Rule of Criminal Procedure 4(c)(3)(D)(ii), that the Second Summons and Indictment have been served on Halkbank and that Halkbank had actual knowledge of the Second Conference;

IT IS HEREBY ORDERED that Halkbank's request for counsel to make a special and limited appearance is DENIED;

IT IS FURTHER ORDERED that a hearing will be held in this matter on _____, 20__, at _____ a.m./p.m. at which Halkbank shall show cause why it

2

should not be held in contempt of the First Summons and the Second Summons and contempt sanctions imposed;

IT IS FURTHER ORDERED that, should counsel of record enter an appearance on behalf of Halkbank prior to the date of the hearing, Halkbank shall be arraigned on the Indictment at the hearing;

IT IS FURTHER ORDERED that the Government shall submit briefing regarding a contempt finding and contempt sanctions on or before _____, 20\_\_; Halkbank, through counsel of record, shall submit briefing regarding a contempt finding and contempt sanctions on or before _____, 20\_\_; and the Government shall submit a reply on or before _____, 20\_\_;

IT IS FURTHER ORDERED that the Government will serve this Order on Halkbank within one day of the issuance of this Order by any means specified; and

IT IS FURTHER ORDERED that, the Government will serve this Order, the Second Summons, and the Indictment on Halkbank within one day of the issuance of this Order, by any means specified under Federal Rule of Criminal Procedure 4. Electronic transmission to King & Spalding shall be sufficient to establish service.

SO ORDERED:

_____    _____
HONORABLE RICHARD M. BERMAN            Date
UNITED STATES DISTRICT JUDGE