# King & Spalding

King & Spalding LLP
1185 Avenue of the Americas, 35th Floor
New York, NY 10036-4003
Tel: +1 212 556 2100
Fax: +1 212 556 2222
www.kslaw.com

Andrew C. Hruska
Partner
Direct Dial: +1 212 556 2278
Direct Fax: +1 212 556 2222
ahruska@kslaw.com

December 2, 2019

**VIA HAND DELIVERY**

Honorable Richard M. Berman, U.S.D.J.
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

      **Re:**    **United States v. Türkiye Halk Bankasi A.S., a/k/a/ "Halkbank"**
              **U.S. District Court for the Southern District of New York**
              **No. 1:15-cr-00867-RMB**

Dear Judge Berman:

      We submit this reply to the prosecution's opposition to our request to enter a special and limited appearance on behalf of Türkiye Halk Bankasi A.Ş. ("Halkbank" or the "Bank") for the limited purpose of filing a motion to dismiss for lack of personal jurisdiction and a motion seeking this Court's recusal from this case. A special appearance is the only mechanism that Halkbank can use to raise the critical threshold issues of personal jurisdiction and recusal without risking waiver. In support of its request, Halkbank has cited numerous federal cases in which a foreign corporate defendant was permitted to make a special appearance—many without any objection from the prosecution. In the face of that precedent, the prosecution attempts to distract the Court by injecting irrelevant issues and cases, but it has not and cannot identify a single case in which a foreign corporate defendant was denied a special appearance.

      Rather than squarely address the legal issue presented, the prosecution devotes most of its response to previewing its arguments against the personal jurisdiction challenge, repeating, summation style, allegations in its indictment against the Bank, and reminiscing (complete with trial transcript citations) about the evidence admitted in a case in which the Bank was not a defendant and which is currently on appeal. The prosecution goes on to repeatedly and unfairly attack Turkish government officials and make allegations that have little to do with the case against the Bank. Since none of this is relevant to the request for a special appearance, we decline to address the substance of these baseless assertions that ignore the long-standing U.S. policy that approved of Turkey's economically necessary energy trade with its neighbor, Iran, that complied with U.S. sanctions. We also stress that Halkbank is entirely innocent of any participation in a scheme to violate U.S. sanctions. The Bank's priority is to resolve these

charges to protect its constitutional rights, prior to an arraignment, with maximum efficiency to prevent further damage to its business and reputation. The Bank further seeks recusal to ensure impartial treatment by the Court. It is efficient to resolve these matters at the outset, as these issues could and should resolve the case entirely.

The prosecution argues wrongly that the very concept of personal jurisdiction does not apply in criminal cases and cites two *subject matter* jurisdiction cases, *United States v. Prado*, 933 F.3d 121, 134 (2d Cir. 2019) (citing 18 U.S.C. § 3231 and discussing statutory subject matter jurisdiction)[1] and *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003), as the sole standards limiting the Court's jurisdiction. The holdings of those cases have no bearing on the constitutional, *personal* jurisdiction issue. The Second Circuit in *Prado* did not rule on personal jurisdiction. *Prado*, 933 F.3d at 133 n.6 (first distinguishing legislative and adjudicative jurisdiction, and further distinguishing subject matter and personal jurisdiction as sub-categories of adjudicative jurisdiction). The *Prado* court rejected the statutory subject matter jurisdiction argument raised, but ultimately reversed on other grounds.

Beyond that, the prosecution incorrectly suggests that changes to Fed. R. Crim. P. 4 affected Halkbank's ability to request a special appearance. But Rule 4 eliminated the need for that option solely to challenge notice of the summons, which is not the purpose of the Bank's request. The Justice Department itself—in advocating for the rule change to the Criminal Rule Advisory Committee, and in the face of accusations of jurisdictional overreach—noted that changes to Rule 4 would do nothing to alter the availability of special appearance to contest threshold issues such as personal jurisdiction. *See* Mem. Regarding Proposed Amendments to Fed. R. Crim. P. 4 from Jonathan J. Wroblewski, Dir., Office of Policy and Legislation, U.S. Dep't of Justice to Judge David M. Lawson, Chair, Subcommittee of Advisory Comm. on Criminal Rules at 2 (Feb. 20, 2015) ("DOJ Memo") ("[T]he purpose of a 'special appearance' is to avoid automatically waiving threshold issues by operation of law[.] . . . 'Prior to the federal rules [of civil procedure], the practice was for counsel to appear specially for the purpose of objecting by motion to the jurisdiction of the court over the defendant . . . a failure to follow the correct procedure for doing so often resulted in a waiver of the defense.'") (citation omitted). Remarkably, the Department's prosecutors now fail to even acknowledge their own leadership's position that special appearances are appropriate in the criminal context and that the very purpose is to avoid the risk of waiving threshold issues.

To the extent that there is any "gamesmanship" at play, *United States v. Türkiye Halk Bankasi A.S.*, No. 1:15-cr-00867-RMB (S.D.N.Y. Nov. 4, 2019), ECF No. 578 at 2 ("Gov't Resp."), it is the prosecution's assertion that the Court should erase constitutional limitations on its jurisdiction and adopt the sweeping—and disturbing—position that the Bank should not be permitted to challenge the Court's personal jurisdiction over it until it has already submitted to that jurisdiction. Gov't Resp. at 12. That overbroad assertion stands in sharp contrast both to common practice in which special appearances are routinely granted in criminal cases and to the Department of Justice's own position. As a foreign bank with no physical operations in the U.S.

---

[1] Notably, *Prado* was decided in 2019, not in 2014 as indicated in the prosecution's response. Gov't Resp. at 1.

whatsoever, the Bank should be permitted to make a special appearance to protect its constitutional right to contest the prosecution's jurisdictional overreach.

### I. Personal Jurisdiction Defines the Court's Power in Criminal Cases

Courts must assess their jurisdiction over the defendant's person as a threshold issue in all federal cases, including criminal cases. *Int'l Harvester Co. of Am. v. Kentucky*, 234 U.S. 579, 589 (1914) (assessing personal jurisdiction by Kentucky state court over out-of-state corporate criminal defendant); *see also In re Marc Rich & Co., A.G.*, 707 F.2d 663, 666-70 (2d Cir. 1983) (applying minimum contacts test for personal jurisdiction over foreign corporate recipient of grand jury subpoena). The prosecution failed to address either of these controlling authorities.

Substantial authority spanning the last century confirms that personal jurisdiction must be assessed—and therefore can be contested—in criminal cases, and can be waived through voluntary submission to the court's jurisdiction. *Ford v. United States*, 273 U.S. 593, 606 (1927) (challenge to personal jurisdiction in criminal case waived by entering plea of not guilty); *Yousef*, 327 F.3d at 115 (challenging personal jurisdiction under doctrine of specialty); *United States v. Beadon*, 49 F.2d 164, 167 (2d Cir. 1931) (challenge to personal jurisdiction in criminal case waived by general appearance).

In most criminal cases, the exercise of personal jurisdiction is reasonable based on arrest, voluntary appearance, extradition, or waiver. In contrast, this case presents an issue that does not frequently occur in this District—whether this Court can reasonably exercise personal jurisdiction over a foreign corporate criminal defendant in the absence of any traditional basis. The prosecution incorrectly argues that "Halkbank asserts two distinct and entirely inconsistent theories of personal jurisdiction," specifically, minimum contacts and waiver. Gov't Resp. at 2. There is no inconsistency. A court's exercise of personal jurisdiction over a corporate defendant is reasonable if the defendant has minimum contacts with the forum. Alternatively, if the defendant fails to challenge personal jurisdiction, the argument may be waived.

The prosecution argues at length about *subject matter* jurisdiction issues, which are not presently before the Court, while ignoring the *personal* jurisdiction issues that the Bank seeks to raise. The prosecution appears to argue that the "nexus test" for subject matter jurisdiction adopted in *Yousef*, 327 F.3d at 111-12 and *United States v. Al Kassar*, 660 F.3d 108, 117-20 (2d Cir. 2011) displaces all standards for personal jurisdiction, but this conflates the distinct inquiries into subject matter jurisdiction and personal jurisdiction.

The "nexus test" confirms subject matter jurisdiction by evaluating the extraterritorial application of a statute to ensure it does not violate the Due Process Clause of the Fifth Amendment.[2] *United States v. Saade*, No. 1:11-cr-00111, 2012 WL 2878087, at *3 (S.D.N.Y.

---

[2] This limit on subject matter jurisdiction was first suggested by the Second Circuit. *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1334 (2d Cir. 1972), *abrogated on other grounds by Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010) (stating under the heading "Subject Matter Jurisdiction" that ". . . if Congress has expressly prescribed a rule with

July 11, 2012) ("It is well-established that federal subject-matter jurisdiction may be asserted extraterritorially, if such exercise has been authorized by Congress and does not trespass the limits of the Due Process Clause.").

The nexus test does not address personal jurisdiction at all. First, all of the nexus cases cited by the prosecution concerned individual defendants physically present before the court. *Yousef*, 327 F.3d at 111; *Al Kassar*, 660 F.3d at 118; *United States v. Yousef*, 750 F.3d 254, 258 (2d Cir. 2014); *United States v. Ali*, 718 F.3d 929, 944 (D.C. Cir. 2013). It is axiomatic that a court has personal jurisdiction over a criminal defendant physically present in court, absent a challenge to extradition under the doctrine of specialty. *See, e.g., United States v. Pryor*, 842 F.3d 441, 448 (6th Cir. 2016).[3] Notably, the prosecution's reliance on *Yousef*, 750 F.3d at 258-59, is misplaced since it is no longer good law in the Second Circuit. That case held that defendants who pled guilty could not challenge nexus issues on appeal. *Id.* A recent Second Circuit opinion, *United States v. Van Der End*, No. 17-2926, 2019 WL 5991546, at *4 (2d Cir. Nov. 14, 2019), observed that the *Yousef* court's ruling was no longer valid following the Supreme Court's decision in *Class v. United States*, 138 S. Ct. 798, 803 (2018).

Second, the Second Circuit's 2003 opinion in *Yousef*, 327 F.3d at 115—cited by the prosecution as one of its main authorities—separately addresses the "nexus test" and personal jurisdiction, demonstrating this distinction in unmistakeable terms. 327 F.3d at 111-12, 115. Criminal defendants, including Halkbank, are entitled to raise each of these constitutional guarantees at the appropriate juncture. The prosecution also cites *Ali*, which correctly observes that in applying the nexus test, "the law of personal jurisdiction is simply inapposite." 718 F.3d at 944. These legal analyses are distinct.

Third, defendants who plead guilty can still challenge "nexus" at any point, even on appeal, because it presents an issue of subject matter jurisdiction, but defendants who fail to challenge personal jurisdiction waive the argument on appeal. *Compare Van Der End*, 2019 WL 5991546, at *4 (nexus issue can be challenged on appeal after guilty plea) *with United States v. Gernie*, 228 F. Supp. 329, 339 (S.D.N.Y. 1964) (collecting cases on waiver of personal jurisdiction).

---

respect to conduct outside the United States . . . a United States court would be bound to follow the Congressional direction unless this would violate the due process clause of the Fifth Amendment." *Leasco* has a separate discussion on personal jurisdiction.). The Ninth Circuit developed the nexus test, *United States v. Davis*, 905 F.2d 245, 248-49 (9th Cir. 1990), which was adopted by the Second Circuit. *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003); *Al Kassar*, 660 F.3d at 118 (rejecting defendant's challenge to subject matter jurisdiction based on the nexus test).

[3] This is consistent with three other cases cited by the prosecution demonstrating that courts have personal jurisdiction over individuals physically before the court. *United States v. Alvarez-Machain*, 504 U.S. 655, 670 (1992); *Frisbie v. Collins*, 342 U.S. 519, 522 (1952); *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003).

December 2, 2019
Page 5

As stated before, constitutional challenges to the extraterritorial application of U.S. law are analogous to state choice of law issues under the Fourteenth Amendment. *United States v. Shahani-Jahromi*, 286 F. Supp. 2d 723, 727 (E.D. Va. 2003) (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302 (1981) and confirming a link between these Due Process standards). The prosecution presents no authority to contradict this point. Gov't Resp. at 10, n.8.

The other cases cited by the prosecution simply do not support its argument. The prosecution cites *United States v. Williams*, 341 U.S. 58, 65 (1951) (citing 18 U.S.C. § 3231) for the same statutory subject matter jurisdiction issue as *Prado*, 933 F.3d at 134, discussed above. Although *Williams* mentions in passing, "jurisdiction . . . of the persons charged," no other text from *Williams* suggests it is addressing personal jurisdiction. *Id.* Further, laws passed by Congress can grant statutory jurisdiction, but Congress is powerless to alter the boundaries of personal jurisdiction set by the Constitution. Thus, *United States v. Cotton*, holding that the failure to allege a quantity of narcotics in an indictment did not merit reversal under the structural error standard, is inapplicable as well. 535 U.S. 625, 630-32 (2002). Halkbank seeks only to challenge personal jurisdiction at this stage, not the merits of the indictment.

## II. The Change in Criminal Rule 4 Did Not Eliminate Special Appearances to Challenge Threshold Issues

A special appearance is the proper mechanism to challenge threshold issues such as personal jurisdiction and recusal to avoid risking waiver. The prosecution attempts to distinguish the many cases presented in which courts granted special appearances, with or without contest, *United States v. Türkiye Halk Bankasi A.S.*, No. 1:15-cr-00867-RMB (S.D.N.Y. Nov. 19, 2019), ECF No. 577 at 5-6 ("Def. Letter") because many involved challenges to service that the amendment to Fed. R. Crim. P. 4 later eliminated.

The prosecution makes several key statements about special appearance cases that are inaccurate. The prosecution incorrectly states that "all but one of the cases in which limited appearances were permitted occurred prior to the December 2016 amendment to Rule 4's service provisions." Gov't Resp. at 6. However, the specific service provisions at issue in the cases referenced by the prosecution were only in place from 2002 through 2016. Therefore, the prosecution overlooks the seven cases presented in our chart from before 2002. Def. Letter at 15-19. The prosecution also writes, inaccurately, that "all of the cases concerning corporate defendants involved defendants who had not been served under Rule 4 or who were contesting validity of service . . . ." Gov't Resp. at 6. In fact, at least seven special appearances cases with corporate defendants involved issues aside from service or presented other important issues in addition to service. *See, e.g., United States v. Tucor Int'l, Inc.*, No. 4:92-cr-00425 (N.D. Cal. Oct. 20, 1997), ECF No. 102 (special appearance granted to file motion to dismiss for failure to state an offense); *see also* Def. Letter at 15-19.

The change to Rule 4 applied to the narrow issue of what constituted notice for the purpose of *service*. As the Department of Justice itself argued in support of the change, it did nothing to restrict special appearances and both the Advisory Committee and the Department of Justice emphasized that special appearances remained intact as a mechanism to challenge other threshold issues.

December 2, 2019
Page 6

In its November 4 letter to this Court, the prosecution misguidedly suggests that Halkbank is attempting to enter a special appearance to contest service, a challenge it claims is no longer permitted by Rule 4. *United States v. Türkiye Halk Bankasi A.S.*, No. 1:15-cr-00867-RMB (S.D.N.Y. Nov. 4, 2019), ECF No. 571 ("Gov't Letter to J. Berman"). The prosecution states in its letter that Halkbank "misleadingly cites to a memorandum from the DOJ" in support of its position but "fails to inform the Court that this same letter notes that the amendment eliminates special appearances to contest notice of the summons." Gov't Letter to J. Berman at 4-5. First, the purpose of Halkbank's special appearance request is not to contest service, but to challenge personal jurisdiction and request recusal. Second, there is nothing "misleading" about our characterization of the Department's memorandum. As reflected in our opening brief, the memorandum states that special appearances are no longer necessary to challenge notice of the summons. Def. Letter at 11. This is precisely the point. The amendment's purpose was to address a specific issue, namely to allow the Department more flexibility to serve foreign defendants with no U.S. presence. *See* Letter from Lanny A. Breuer, Assistant Attorney General, to Judge Reena Raggi, Chair, Advisory Comm. on Criminal Rules (Oct. 25, 2012). The Advisory Committee and the Department emphasized that other challenges via special appearance remained available and appropriate. *See* DOJ Memo (listing examples of instances in which a special appearance was still appropriate). The prosecution's position that the amendments to Rule 4 affect Halkbank's right to challenge personal jurisdiction and recusal via a special appearance contradicts its own previous position and the intent behind the rule change.

### III. Special Appearance Remains the Only Way to Challenge Personal Jurisdiction, Request Recusal and Avoid Risk of Waiver

The prosecution's arguments that the caselaw on special appearance is "sparse" and that many requests for a special appearance are uncontested in fact support the Bank's position that a special appearance is appropriate here to address an issue of first impression in this Circuit without risking waiver. The prosecution laments the dearth of authority, but the reason the caselaw is "sparse" is because prosecutors rightfully do not generally charge companies that have no meaningful presence in the United States. The prosecution's own actions here have created this anomalous situation and lack of Second Circuit guidance.

Special appearances are often uncontested because they are routinely granted as uncontroversial remedies to protect defendants' basic rights. Notably, all of the cases in which special appearances were uncontested involved foreign corporations. That many cases involved challenges to service and that the service rules were later changed does nothing to suggest that the Rule eliminated the Bank's ability to challenge other non-service issues.

The prosecution all but ignored the three cases in which courts have generated written opinions granting special appearances. For example, rather than discussing *Siriwan* on the merits, a case where the court allowed foreign defendants to enter a special appearance to challenge their indictments, the prosecution takes issue with our "characterization" of the case because the court's order was by stipulation. Gov't Resp. at 6. That stipulation confirms the Bank's argument that this type of special appearance is routine and accepted. First, according to the stipulation, the prosecution agreed that it would not contest the special appearance request with the "[u]nderstanding that the Court is prepared to grant Defendants' Motion to Appear

December 2, 2019
Page 7

Specially[.]" *See United States v. Siriwan*, 2:09-cr-000081 (C.D. Cal. Aug. 1, 2011), ECF No. 61 at 1. Thus, the prosecution acknowledged that the court was going to rule in the defendant's favor. Second, whether by stipulation or not, the court determined that it was appropriate for the foreign defendants to challenge their indictments through a special appearance.

The prosecution's treatment of *United States v. Noriega* and *Tucor* is similarly superficial and incorrect. The prosecution suggests that *Tucor* has been superseded because it was "considered by the Ninth Circuit in *Pangang* and found unpersuasive." Gov't Resp. at 6-7. The court in *Pangang* cited *Tucor* as part of a string cite with no substantive discussion of the case at all. *In re Pangang Group Co., Ltd.*, 901 F.3d 1046, 1057-58 (9th Cir. 2018). In *Pangang*, the foreign defendants had entered a special appearance to move to quash service of a summons. The Ninth Circuit noted that the defendants pointed to *Tucor* and three other special appearance cases to support their interpretation of the newly amended Rule 4, but ultimately rejected that interpretation and held that the company had actual notice of the summons consistent with amended Criminal Rule 4. *Id.* *Tucor* and *Pangang* presented different facts and the courts reached different legal conclusions, but nevertheless, Halkbank would welcome this Court to apply *Pangang* in this case. In *Pangang*, whose earlier iteration had directly inspired the change to Rule 4, the Ninth Circuit made clear that the change in Rule 4 only eliminated special appearances contesting service, but the court expressly preserved special appearances contesting other threshold issues. *Id.* at 1059 ("Criminal Rule 4 would not eliminate the possibility of special appearances entirely.").

The court in *Noriega* allowed the defendant to challenge his indictment via a special appearance because of "delicate issues" in a case "fraught with political overtones." 683 F. Supp. 1373, 1374-75 (S.D. Fla. 1988). The prosecution ignores the unique circumstances presented by *Noriega*, instead claiming that the court's opinion in *United States v. Shalhoub* governs. Gov't Resp. at 7. *Noriega* and *Shalhoub* present entirely different factual scenarios, so it is reasonable that courts would reach different legal conclusions. Moreover, *Shalhoub* does not even cite *Noriega*, let alone reverse or otherwise affect its holding. *Shalhoub* involved a custody battle in which the defendant took his daughter from her home in the United States to Saudi Arabia. No. 1:98-cr-00460, 2016 WL 8943847 (S.D. Fla. Jan. 26, 2016), *appeal dismissed*, 855 F.3d 1255 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 381 (2017). The court denied the defendant's request for a special appearance because it deemed him a fugitive, stating that he constructively fled by failing to return to the Southern District of Florida when he was indicted. 2016 WL 8943847, at *2. Unlike *Shalhoub*, Halkbank is not an individual defendant, it was never "present" in the United States, and it therefore cannot "flee" the jurisdiction.

The prosecution spends four paragraphs discussing *Hijazi*, yet instead of distinguishing its facts, it simply asserts that because *Hijazi* involved "unusual circumstances" and was not followed by two other circuits, it must be inapposite. Gov't Resp. at 7. However, Halkbank's case too involves unusual circumstances. Like *Hijazi*, this case involves the issue of pre-arraignment appearance to seek dismissal of an indictment of a foreign defendant who has never been present in the court's jurisdiction and was lawfully abroad at the time of the indictment. 589 F.3d 401, 412 (7th Cir. 2009). Because a general appearance bears the risk of waiving its personal jurisdiction arguments, Halkbank similarly would be denied an adequate remedy by "ordinary proceedings" of making an appearance and entering a plea. *Id.* at 408. The

prosecution argues that *Shalhoub* and *United States v. Martirossian* apply instead. Gov't Resp. at 7-8. Both cases involve individual defendants who were deemed fugitives because they constructively fled by failing to return to the United States after they were indicted. As the prosecution has acknowledged, Halkbank is a corporate defendant and cannot be arrested or extradited. Gov't Resp. at 8. This fact would necessarily distinguish Halkbank's case from those of any individual foreign defendants, including *Martirossian*, *Sindzingre*, and *Itriago*, all of which involve issues of extradition and/or surrender. This distinction underscores the "unusual circumstances" of a case involving a foreign corporate defendant seeking to appear specially to challenge personal jurisdiction.

The cases that the prosecution seizes on in which courts have denied a special appearance all concern the application of the fugitive disentitlement doctrine to individual defendants, and as discussed below, this doctrine does not apply. The prosecution has identified no cases in which a foreign corporate defendant was denied a special appearance, and we are aware of none following extensive research. The mechanism of special appearance exists for the very purpose that Halkbank seeks to use it: to challenge a threshold issue that it might otherwise waive if forced to enter a general appearance and enter a plea at arraignment.

The prosecution argues that there is no risk of waiver here but entirely ignores the Department of Justice's official position on this issue asserted in a successful effort to convince the federal court system to change the service notice rule. The Department of Justice's letter to the Advisory Committee itself recognized that special appearances are appropriate to avoid the risk of waiving threshold issues like personal jurisdiction. DOJ Memo at 2. The prosecution's response tellingly does not address the Department's position, not citing it even a single time.

As the prosecution concedes, seemingly contradicting its position that personal jurisdiction is irrelevant in criminal cases, Rule 12(b)(1) could possibly provide a procedural mechanism for Halkbank to challenge personal jurisdiction and recusal via pre-trial motion. But precedent indicates that the existence of this procedural avenue does *not* mean that Halkbank can make a personal jurisdiction argument at any time before trial *without risking waiver*. The court in *United States v. Maruyasu Indus. Co., Ltd.* acknowledged this point when it held that the defendant waived its personal jurisdiction argument, even though its motion to dismiss was filed pre-trial. 229 F. Supp. 3d 659, 671 (S.D. Ohio 2017). In *Maruyasu*, the defendant, the prosecution, and the court all agreed that a challenge to personal jurisdiction should be brought under Rule 12(b). Nevertheless, even though the defendant filed its challenge pre-trial, the court found waiver. *Id.* at 665, 671.

The prosecution inaccurately asserts that *Maruyasu* did not find that the defendant had waived its jurisdictional argument. Gov't Resp. at 11. Yet the court explicitly stated that "Maruyasu's participation in the litigation beyond an appearance for purposes other than contesting jurisdiction," including pleading not guilty, amounted to "consent[] to the Court's personal jurisdiction over it." *Id.* at 671 (stating that cases in which a special appearance was appropriate involved "a request by a party to seek leave for counsel to do so and for the limited purpose of moving to dismiss or contesting personal jurisdiction.") (citations omitted). Should Halkbank rely on the prosecution's argument that Rule 12 provides a post-arraignment remedy in this instance, it risks the same possibility of waiver that the court found in *Maruyasu*.

Longstanding authority suggests that the failure to challenge personal jurisdiction before arraignment could risk waiver. *Ford*, 273 U.S. at 606 (challenge to personal jurisdiction in criminal case waived by entering plea of not guilty). *Ford* has been recently cited by both the Second Circuit and the Supreme Court. This Circuit has cited *Ford* in support of its holding that a defendant waived its personal jurisdiction challenge under the doctrine of specialty. *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003); *see also Alvarez-Machain*, 504 U.S. at 661 n.7 (stating that the *Ford* defendant waived personal jurisdction challenge). These cases demonstrate that the failure to challenge personal jurisdiction before arraignment can waive the defendant's rights by necessarily acknowledging the court's jurisdiction. The Bank seeks to avoid this risk through a special appearance.

### IV. The Fugitive Disentitlement Doctrine Does Not Apply to the Bank Because the Bank Is Not, and Cannot Be, a Fugitive

The Bank is not, and cannot be, a fugitive. The prosecution suggests that the "principles" underlying the fugitive disentitlement doctrine apply to corporations, but never actually claims that the doctrine applies to Halkbank. Gov't Resp. at 8. Any attempt to apply the doctrine to a corporation would be futile. Corporations cannot be "fugitives." The fugitive disentitlement doctrine has never been applied to deny a foreign corporate defendant a special appearance. Further, we are aware of no case where a corporation was found to be a "fugitive."

The prosecution fails to cite a single instance in which a corporation was deemed a fugitive and instead attempts to distinguish *United States v. Yang* because the corporate defendant appeared at trial and was convicted. The Sixth Circuit's decision in *Yang* confirms Halkbank's position that the fugitive disentitlement doctrine does not apply to corporations. In *Yang*, two individual defendants and a corporate defendant appealed their convictions for conspiracy to steal trade secrets. 144 F. App'x 521, 523 (6th Cir. 2005). The prosecution moved to dismiss the appeals of all three defendants under the fugitive disentitlement doctrine. *Id.* at 522. The defense argued that the definition of a fugitive is rooted in being subject to arrest, which a corporation obviously cannot be. Def's Opp'n to the Gov't Mot. to Dismiss at 2, *United States v. Yang*, No. 03-4093 (6th Cir. Dec. 8, 2003). The defense further argued that the doctrine is intended to discourage escape and encourage voluntary surrenders, considerations that do not apply to corporations. *Id.* In its reply, the prosecution agreed with the defense, conceding that the corporate defendant's appeal should not be dismissed. Gov't Reply to Def's Opp'n to Mot. to Dismiss at 1-2, *United States v. Yang*, No. 03-4093 (6th Cir. Dec. 19, 2003). The *Yang* court determined that the doctrine applied only to the individual defendants in that case. *Yang*, 144 F. App'x at 523.

The *Yang* decision underscores that, contrary to the prosecution's assertions, the principles underlying the fugitive disentitlement doctrine do not apply to corporations. The prosecution itself acknowledges that "Halkbank, a corporate defendant, cannot be arrested or extradited." Gov't Resp. at 8. For these very reasons, the concept of "constructive flight" is inapplicable to corporations and has never been applied to one.

Even if, contrary to logic and precedent, the Court were to determine that a corporation could be a fugitive, Halkbank would still not qualify. *See Siriwan*, 2011 WL 13057709, at *1

(C.D. Cal. July 28, 2011) (declining to apply the disentitlement doctrine where defendant had no reason to leave home country); *Hijazi*, 589 F.3d at 412-14 (declining to apply the disentitlement doctrine because the defendant had never been to the United States except for a brief visit and therefore did not flee the jurisdiction).

The prosecution premises its characterization of Halkbank as a "fugitive" on the incorrect allegation that it has failed to appear in response to a summons. Gov't Resp. at 12. Even if this were the appropriate standard, the Bank remedied any concern by addressing the Court on November 5 to request a special appearance. Halkbank's request stems from genuine concerns with jurisdictional issues and the potential for waiver, not from any desire to avoid the U.S. judicial process. As a corporate defendant—and one that recently sent its authorized representatives to this Court to protect its rights—the Bank is not, and cannot be, a fugitive.

The prosecution repeatedly suggests that Halkbank has not committed to moving forward in its defense should its special appearance be denied. It is unfortunate and disingenuous that the U.S. Department of Justice views a defendant's assertion of constitutional rights as an "empty delay tactic[,]" Gov't Resp. at 2, but due process provides Halkbank the ability to assert those rights and requires this Court to adjudicate them. Defendants are not required to make conditional, hypothetical commitments in open court. Halkbank's participation in the judicial process through its current motion demonstrates its measured consideration of each legal step in response to the Court's decisions as each is rendered.

\* \* \* \* \*

For the foregoing reasons and the reasons set forth in Halkbank's opening brief, this Court should grant counsel for Halkbank leave to appear on a limited and special basis to argue on behalf of Halkbank the merits of the proposed submissions without waiving any objections to this Court's jurisdiction.

Respectfully,

Andrew C. Hruska
AH3224

cc: Michael Lockard, Esq.
Sidhardha Kamaraju, Esq.
David Denton, Esq.
Jonathan Rebold, Esq.
Kiersten Fletcher, Esq.
Richard Walker, Esq.
William Johnson, Esq.
Katherine Kirkpatrick, Esq.
(all by electronic mail)