```
                                            ┌─────────────────────────────┐
                                            │ USDC SDNY                   │
UNITED STATES DISTRICT COURT                │ DOCUMENT                    │
SOUTHERN DISTRICT OF NEW YORK               │ ELECTRONICALLY FILED        │
                                            │ DOC #:_____      │
                                            │ DATE FILED:  12/5/2019      │
                                            └─────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------X

UNITED STATES OF AMERICA,

                              Government,                    **DECISION & ORDER**

            -against-                                        S6 15 CR 867 (RMB)

TÜRKİYE HALK BANKASI A.S.,
            a/k/a "Halkbank,"

                              Defendant.
----------------------------------------------------------X

### I. Background

On October 15, 2019, Türkiye Halk Bankasi A.S. ("Halkbank") was charged in a six

count Indictment ("Indictment").[1]  This Decision & Order resolves the request of Halkbank by

its counsel, Andrew Hruska of King & Spalding LLP ("King & Spalding"), to enter a "special

appearance" to seek the Court's recusal and to challenge the Court's personal jurisdiction.

Halkbank has, so far, refused to appear in court to enter a plea of "guilty" or "not guilty".

Halkbank is a prominent Turkish state-owned bank.  The Turkish government owns 51%

of Halkbank's stock through the Turkish Wealth Fund.  See Portfolio, Turkey Wealth Fund,

https://www.nytimes.com/2019/10/15/us/politics/halkbank-turkey-iran-indictment.html.

According to the Indictment, "Halkbank and its officers, agents, and co-conspirators directly and

indirectly used money service businesses and front companies in Iran, Turkey, the United Arab

---

[1]     **Count One** is Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371;
**Count Two** is Conspiracy to Violate the International Emergency Economic Powers Act
("IEEPA") in violation of 50 U.S.C. § 1705, Executive Orders 12959, 13059, 13224, 13599,
13622, & 13645, and 31 C.F.R. §§ 560.203, 560.204, 560.205, 561.203, 561.204, & 561.205;
**Count Three** is Bank Fraud in violation of 18 U.S.C. §§ 1344 and 2; **Count Four** is Conspiracy
to Commit Bank Fraud in violation of 18 U.S.C. § 1349; **Count Five** is Money Laundering in
violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2; and **Count Six** is Conspiracy to Commit Money
Laundering in violation of 18 U.S.C. § 1956(h). Indictment, ¶¶ 66–81.

1

Emirates, and elsewhere to violate and to evade and avoid prohibitions against Iran's access to

the U.S. financial system, restrictions on the use of proceeds of Iranian oil and gas sales, and

restrictions on the supply of gold to the Government of Iran and to Iranian entities and persons."

Indictment, ¶ 1.  This alleged conspiracy has been described as "the largest Iran sanctions

violation in United States history." See Eric Lipton, U.S. Indicts Turkish Bank on Charges of

Evading Iran Sanctions, N.Y. Times (Oct. 15, 2019), https://www.nytimes.com/2019/10/15/us/

politics/halkbank-turkey-iran-indictment.html.  According to the U.S. Government, "Halkbank

conspired with Turkish government officials; Iranian government officials at [the National

Iranian Oil Company], the Ministry of Oil, and the Central Bank of Iran; Iranian banks; and

Turkish businessmen, to evade and avoid U.S. sanctions imposed on the Government of Iran for

its support for terrorism, its illicit nuclear program, its ballistic missiles development, and its

human rights abuses." Gov. Letter, dated Nov. 26, 2019, at 3, ECF No. 578.[2]

---

[2]     According to the U.S. Government: "During the time that Halkbank was undermining U.S. sanctions, it benefitted enormously from its access to the U.S. financial system.

- Between 2012 and 2016, Halkbank maintained U.S.-dollar correspondent accounts at multiple U.S. financial institutions. Halkbank used these accounts to conduct transfers totaling billions of U.S. dollars during the time of the offense conduct.
- In 2014, Halkbank retained, among others, U.S. financial advisors and institutions to issue $500 million in U.S.-dollar denominated corporate bonds, and retained the services of a U.S. financial institution in order to act as paying agent for those bonds.
- In 2015 and again in 2016, Halkbank issued two placements of $500 million each U.S.-dollar denominated corporate bonds using, among others, U.S. financial advisors and institutions and a U.S. paying agent.
- In March 2017, Halkbank's former Deputy General Manager for International Banking, co-defendant Mehmet Hakan Atilla, was arrested in the United States while traveling to meet with U.S. financial institutions in furtherance of another prospective bond offering.
- Halkbank participates in a U.S. Department of Agriculture program that provides guaranteed financing for certain buyers of U.S. agricultural exports."

Gov. Letter, dated Nov. 26, 2019, at 3–4.

**Related Proceedings**

Halkbank's involvement in related proceedings predates the Indictment. On January 3, 2018, for example, Halkbank's Deputy General Manager for International Banking and alleged co-conspirator, Mehmet Hakan Atilla ("Atilla"), following a four plus week jury trial, was convicted of five out of six counts which were substantially similar to those alleged in the Indictment. See Judgment, dated May 16, 2018, at 1–2. Atilla was found guilty of conspiracy to defraud the United States; conspiracy to violate the International Emergency Economic Powers Act ("IEEPA") and the Iranian Transactions and Sanctions Regulations; bank fraud; conspiracy to commit bank fraud; and conspiracy to commit money laundering. Id.  Evidence adduced at Atilla's trial indicated that other "senior level" officials of Halkbank (and the Turkish government), including Suleyman Aslan, Halkbank's General Manager, were involved in the alleged multi-billion dollar Iran sanctions avoidance scheme. See, e.g., Transcript, dated Nov. 29, 2017, at 364, ECF No. 404.

Halkbank funded Atilla's defense. See Transcript, dated June 12, 2017, at 5–6, ECF No. 269 (Court: "You are aware that your employer, Turkey Halk Bankasi, otherwise known as Halkbank, is paying for your legal fees and expenses in this matter? Do you understand that?" Atilla: "Yes, I know that."). Halkbank initially retained Messrs. Victor J. Rocco, Esq. and Thomas E. Thornhill, Esq. of the law firm Herrick, Feinstein LLP, along with Cathy Fleming, Esq. of Fleming Ruvoldt PLLC, to represent Atilla. See Transcript, dated May 18, 2017, at 3, ECF No. 256 (Court: "You have a retainer agreement between yourself and Mr. Atilla?" Mr. Rocco: "Yes, your Honor." Court: "And does [Atilla] pay your fees?" Mr. Rocco: "My fees are being paid by Halkbank."); Transcript, dated June 12, 2017, at 8–9, ECF No. 269 (Court: "The fact that Halkbank is paying your Fleming Ruvoldt legal fees and expenses as set forth in your

retainer agreement with Fleming Ruvoldt, and both you, Mr. Atilla, and Halkbank also signed this retainer agreement; . . . [Y]ou realize that?" Atilla: "Your Honor, I first signed with Ms. Fleming, and then after I decided to work with her, we signed the agreement, and after that, it was sent to Halkbank, and Halkbank signed it."). Mr. Rocco and Herrick, Feinstein LLP have also represented the Republic of Turkey in various business transactional deals in the United States. See Transcript, dated April 13, 2017, at 7, ECF No. 220.

On the eve of Atilla's trial, Mr. Hruska, counsel to Halkbank, recruited two additional lawyers to serve as co-counsel to Atilla, namely, Todd Harrison, Esq. and Joseph Evans, Esq., of McDermott, Will & Emery, LLP. See Transcript, dated Nov. 21, 2017, at 13–14, 23–24, 28, ECF No. 500 (Mr. Harrison: "So, as I understand it, Halkbank is currently represented by King & Spalding and, in particular, a partner at King & Spalding named Andrew Hruska. . . . Mr. Hruska asked me if I would be available to assist on a trial that was coming up very soon that was very complicated. . . . [Hruska] indicated he had been in communication with the defense team . . . So, he asked me if I would join the defense team and I told him I was willing to try and look into it. . . . Court: "[A]re you [Mr. Atilla] aware that your employer, Halkbank, is paying for your legal fees and expenses in this matter of Mr. Harrison and his firm?" Atilla: "Yes, I am aware of that. . . . I would like to say that the suggestion about adding the firm of McDermott to my defense case was suggested by Halkbank. . . . I agree with the strategy, but I would like to include that the suggestions came from Halkbank.").

On May 16, 2018, Atilla was sentenced to 32 months' imprisonment. Judgment, dated May 16, 2018, at 3. Upon Atilla's release from incarceration in the U.S. and his return to Turkey, Turkish Finance Minister Berat Albayrak announced that Atilla had been appointed as the head of Turkey's stock exchange, Borsa Istanbul. See Ayla Jean Yackley, Turkey Picks Former Jailed

4

Banker to Head Istanbul Stock Exchange, Financial Times (Oct. 21, 2019), https://www.ft.com/
content/31e25da8-f442-11e9-a79c-bc9acae3b654.

**Halkbank's Notice of the Indictment**

Immediately following the Indictment, the Court issued a summons ("First Summons")
directing Halkbank to appear on October 22, 2019 at 9:15 a.m. for arraignment. See First
Summons, dated Oct. 15, 2019, at 1. On October 16, 2019, the Government electronically
delivered the First Summons to King & Spalding, who had been representing Halkbank in
connection with the U.S. Government's investigation of Halkbank, including in negotiations with
the United States Government over a potential fine.  See Gov. Letter, dated Nov. 4, 2019, at 1–2,
ECF No. 571.  According to a letter from Mr. Hruska, dated October 21, 2019, King & Spalding
refused to accept service of the Indictment on behalf of Halkbank, stating that "[a]lthough King
& Spalding has represented Halkbank in connection with the Department of Justice's prior
investigation regarding Halkbank, at no point has King & Spalding been authorized to accept
service of a summons or other legal process on behalf of Halkbank, and we have so informed the
U.S. Attorney's office." Def. Letter, dated Oct. 21, 2019, at 1, ECF No. 564.

On the same day that the Government delivered the First Summons to King & Spalding,
Halkbank published an "Investor Relations Disclosure" on its website, among other things,
acknowledging the Indictment and its cooperation with U.S. officials. "This Bank has been
informed that the U.S. Attorney's Office for the Southern District of New York, under the U.S.
Department of Justice, has taken the decision to engage in due process to prosecute the Bank
based on an indictment related to the allegations made during the Atilla trial. . . .  Per our past
disclosures on numerous occasions, certain U.S. authorities have been asking Halkbank for
records and information pertaining to allegations made during the Atilla trial, which led the Bank

to closely cooperate with these authorities and also initiate an independent investigation of its

own on a voluntary basis." Gov. Letter, dated Oct. 22, 2019, at 8, ECF No. 565.

Notwithstanding Halkbank's extensive commercial dealings with the U.S. and its recent

high level negotiations with the U.S., and coupled with Halkbank's involvement in the Atilla

case and its notice of and acknowledgment of the Indictment, Halkbank failed to appear for the

scheduled arraignment on October 22, 2019. See Transcript, dated Oct. 22, 2019, at 1, ECF No.

568.  On October 23, 2019, the Court issued a finding that "pursuant to Federal Rule of Criminal

Procedure 4(c)(3)(D)(ii), which permits service of a summons on an entity not within a judicial

district of the United States 'by any other means that gives notice,' the Government has properly

served the First Summons and the Indictment on Halkbank." Order, dated Oct. 23, 2019, at 3,

ECF No. 566 (citing Fed. R. Crim. P. 4(c)(3)(D)(ii)).  The Court also found that Halkbank had

"willfully and knowingly disobeyed the Court's order in the First Summons," by failing to

appear.  Id.

It should be noted that Federal Rule of Criminal Procedure 4 was amended in 2016 to

enable the Government more easily to make service upon foreign corporations. See

Memorandum from Hon. Reena Raggi, Chair, Advisory Committee on Criminal Rules to Hon.

Jeffrey S. Sutton, Chair, Standing Committee on Rules of Practice and Procedure, Judicial

Conference of the United States (May 6, 2015), https://www.uscourts.gov/sites/default/files/

2015-05-criminal_rules_report_0.pdf, at 3 ("Given the increasing number of criminal

prosecutions involving foreign entities, the Advisory Committee agreed that it would be

appropriate for the Federal Rules of Criminal Procedure to provide a mechanism for foreign

service on an organization.").  The amendments removed the requirement that a copy of the

summons "be mailed to the organization's last known address within the district or to its

principal place of business elsewhere in the United States." See Fed. R. Crim. P. 4(c)(3)(C) (2011). The Rule as amended provides that a summons may be "served on an organization not within a judicial district of the United States . . . by any other means that gives notice." Fed. R. Crim. P. 4(c)(3)(D) (2016). This rule change was intended to "remove an unnecessary impediment to the initiation of criminal proceedings against organizations that commit domestic offenses but have no place of business or mailing address within the United States." Id. Advisory Committee's Note to 2016 Amendment. The objective is that notice of pending criminal proceedings is accomplished. Id.

The Court also provided Halkbank with an opportunity to cure its noncompliance by issuing a second summons ("Second Summons") which directed Halkbank to appear on November 5, 2019 at 11:00 a.m. See Order, dated Oct. 23, 2019, at 3, ECF No. 566 ("[T]o afford Halkbank an opportunity to cure its noncompliance with the First Summons, the Court is issuing a second summons. . . ."). On October 23, 2019, the Government, pursuant to Federal Rule of Criminal Procedure 4, emailed electronic copies of the Second Summons and the Indictment to King & Spalding. See Gov. Letter, dated Nov. 4, 2019, at 2. In addition, the U.S. Department of Justice requested that the Turkish Ministry of Justice serve the Second Summons and related documents on Halkbank. Id. at 2–3. The Government also emailed the Second Summons and the Indictment to Halkbank at the email address listed on its website and in its 2018 Annual Report. Id. at 2–3. And, the Government also sent an email with the Indictment and the Second Summons to Tahsin Yazar, a member of the Turkish Ministry of Treasury and an advisor to the Turkish Wealth Fund. Id. at 2. Mr. Yazar had "participated in meetings and conversations, together with Halkbank executives and attorneys from King & Spalding, with U.S. Department of Justice officials regarding the criminal investigation of Halkbank." Id.

The Government also sent the Second Summons and the Indictment by FedEx to Halkbank's legal department at Halkbank's headquarters in Istanbul. Id. Halkbank refused to accept the FedEx delivery. Id. Instead, it provided FedEx with a handwritten note, written in both Turkish and English, stating: "Please be informed that this package . . . sent by the U.S. Attorney's Office for the Southern District of New York was . . . not accepted by this Bank, since the form of delivery is not in compliance with the legal service provisions of bilateral treaties between the Turkish Republic and the U.S." Id. The note was presumably signed by an employee of Halkbank. Id. A copy of the note is attached to this Decision & Order as Exhibit A.

There can be no doubt that Halkbank was notified of the charges against it.

**Unusual Contacts**

Following the arrests of Zarrab and Atilla in the U.S. and after their respective arraignments, an extraordinary, sustained series of Turkey-initiated state to state meetings, contacts, and involvements began—outside the courtroom—between and among Turkish and U.S. officials, lobbyists and attorneys.[3] The objective of the campaign was, initially, to obtain the release and repatriation of Mr. Zarrab—even though he was in the middle of a U.S. Federal

---

[3]     This remarkable campaign involved, among others, Turkish President Recep Tayyip Erdoğan; Turkish Justice Minister Bekir Bozdag; former Turkish Deputy Prime Minister Mehmet Şimşek; Berat Albayrak, President Erdogan's son-in-law and Turkish Minister of Finance; and Turkish Minister of Foreign Affairs Mevlut Cavusoglu.

    The Americans who appear for the most part to have been on the receiving end of these efforts include, among others, President Donald J. Trump; Joe Biden, former Vice President of the United States; Loretta Lynch, former United States Attorney General; Steven Mnuchin, United States Secretary of the Treasury; and Rex W. Tillerson, former United States Secretary of State.

    Rudolph W. Giuliani, former New York City Mayor and former United States Attorney for the Southern District of New York and Michael B. Mukasey, former United States Attorney General & former Chief District Judge of the Southern District of New York participated on behalf of Defendant Reza Zarrab. Mr. Hruska, of King & Spalding, participated as counsel to Halkbank.

criminal proceeding and heading for trial.  See, e.g., Letter from Benjamin Brafman, Defense

Counsel for Mr. Zarrab, to the Court, dated Mar. 30, 2017, at 1–2, ECF No. 205.  Mr. Brafman

advised that "[t]he engagement of Messrs. Giuliani and Mukasey relates to the [Zarrab]

prosecution."  "Messrs. Giuliani and Mukasey do not represent Mr. Zarrab before this Court, are

not involved in trial preparation or plea discussions with United States Attorney's Office for the

Southern District of New York, and they do not intend to appear . . . in any capacity in

connection with this case."  Id. at 1.  Mr. Brafman also advised that the "engagement of Messrs.

Giuliani and Mukasey relates to the prosecution; it may impact the prosecution, but it has not,

and whether it will is a matter of speculation."  Id. at 1. [4]

More recently, the objective of the campaign, following the conviction of Mr. Atilla on

January 3, 2018, appears to have been to avoid Halkbank being indicted and, relatedly, to avoid

Halkbank having to pay a potential fine.  This effort appears to have failed prior to the Halkbank

Indictment on October 15, 2019.  According to reporting by the New York Times:

> After repeated appeals to President Trump by Turkey's President to avoid charges
> against a state-owned Turkish bank . . . [t]he settlement push abruptly ended on
> Tuesday when prosecutors in New York filed bank fraud and money laundering
> charges against the institution, Halkbank . . . .  But the criminal charges were filed
> only after more than a year of interventions by President Recep Tayyip Erdogan
> of Turkey and other senior officials of his government, as well as lawyers and
> lobbyists working in New York and Washington on Turkey's behalf, to try to
> avoid a criminal prosecution of the bank.

---

[4]     By Decision & Order, dated April 5, 2017, the Court directed that a Curcio hearing be
held to examine whether there existed any actual or potential conflicts of interest regarding the
representation of Mr. Zarrab and other clients of Messrs. Giuliani and Mukasey or their firms,
and if so, whether Mr. Zarrab was aware of such actual or potential conflicts and knowingly and
voluntarily waived them. See Decision & Order, dated Apr. 5, 2017, ECF No. 209.
        The Curcio hearing was held on May 11, 2017.  Messrs. Giuliani and Mukasey submitted
written affidavits or declarations in connection with the hearing. See, e.g. Giuliani Affidavit,
dated May 4, 2017, ECF No. 238; Giuliani Affidavit, dated May 22, 2017, ECF No. 250;
Mukasey Affidavit, dated May 3, 2017, ECF No. 239; Mukasey Affidavit, dated May 19, 2017,
ECF No. 250.

Eric Lipton, Settlement Talks for Bank Followed Pressure on Trump by Turkey's Leader, N.Y.

Times (Oct. 16, 2019), https://www.nytimes.com/2019/10/16/us/politics/halkbank-trump-

turkey.html.

**Halkbank's Request to Make a Special Appearance**

On November 4, 2019, Mr. Hruska sent a letter to the Court stating that "Halkbank has

retained us to represent it in [this case] for a limited purpose, and we do not concede the

acceptance of service nor enter a general appearance on behalf of Halkbank by submitting this

request.  The Bank has refused to accept service and has not stipulated to service by any means. .

. . [C]ounsel for Halkbank respectfully requests leave to enter a limited and special appearance

for the purpose of filing a motion to dismiss for lack of personal jurisdiction and a motion

seeking this Court's recusal from this case."  Def. Letter, dated Nov. 4, 2019, at 1.

The Government opposed Mr. Hruska's application, arguing that it is an "empty delay

tactic"; that it "serves no legitimate purpose"; and that there is clearly "no established tradition of

special appearances in criminal cases."  See Gov. Letters, dated Nov. 26, 2019, at 2, and Nov. 4,

2019, at 4, 5.  The Government also contends: "[t]he matters that Halkbank seeks to raise

through a limited appearance require no special appearance at all.  Halkbank's two proposed

motions can be raised after the defendant complies with the summonses and appears in this

matter." Gov. Letter, dated Nov. 4, 2019, at 5.

On November 5, 2019, the Court held oral argument.  See Transcript, dated Nov. 5, 2019,

ECF No. 575.  Mr. Hruska emphasized again that he wished to "make clear that we are **not**

requesting . . . to make a special appearance in order to challenge [the] summons. That's not our

intention. . . . [W]e have been authorized by the client to appear for th[e] limited purpose, and no

further, [of] challeng[ing] jurisdiction and also to file the recusal motion. . . ." Id., at 4, 6

(emphasis added.)  Mr. Hruska also stated that "[w]e have seen examples where participation in aspects of court process beyond challenge of jurisdiction has led to courts concluding that there has been a waiver of jurisdiction. We are seeking to avoid that. . . ." Id. at 5.

The Government, in turn, contended that Halkbank's "refusal [to appear for arraignment] shows [] there is certainly an air of gamesmanship here with the bank's request to make a special appearance. . . .   Instead, it appears that what Halkbank is trying to do is to deny the jurisdiction of the Court to attempt to move to dismiss the indictment with no commitment whatsoever that it is going to remain in the case and answer the charges if it does not get its preferred ruling." Id. at 13, 14.

At the conclusion of oral argument, the Court directed the parties to submit additional letter briefs. Id. at 26–27.

On November 19, 2019, King & Spalding submitted a letter repeating (with some exceptions) arguments set forth in their November 4, 2019 letter and at oral argument. See Def. Letter, dated Nov. 19, 2019; see also Def. Letter, dated November 4, 2019, at 2 ("[T]he Bank's incidental contacts with the U.S. are insufficient to establish either general or specific personal jurisdiction over the Bank." (emphasis added)).  The November 19, 2019 letter also asserts— without citing any persuasive authority—that "[a]s a corporation, Halkbank cannot be a 'fugitive' since it has no physical body to present and can appear before the court in any case only through representatives such as its legal counsel."  Def. Letter, dated Nov. 19, 2019, at 6–7.

On November 26, 2019, the Government opposed Halkbank's application, arguing that "concepts of personal jurisdiction found in civil suits simply do not apply in criminal cases: the Court's jurisdiction is established by an indictment that sufficiently alleges violations of federal criminal law, and the application of the charges to a particular defendant complies with due

process so long as there is a sufficient nexus between the defendant and the United States, so that

such application would not be arbitrary or fundamentally unfair." Gov. Letter, dated Nov. 26,

2019, at 1 (internal citations and quotation marks omitted).

**For the reasons that follow, the Court denies Halkbank's request to enter a "special**

**appearance." [5] Following arraignment and consistent with this Decision & Order,**

**Halkbank may file a motion for the Court's recusal and/or relating to the Court's**

**jurisdiction.**

### II. Legal Standard

"'[F]eigning ignorance of a criminal summons of which the foreign organization does

have notice (either by declining to appear, or by appearing and denying knowledge) is not a

legitimate interest the criminal rules should protect.'"  In re Pangang Grp. Co. LTD., 901 F.3d

1046, 1052 (9th Cir. 2018) (quoting Mem. from Jonathan J. Wroblewski, Director, Office of

Policy and Legislation, Department of Justice to Judge David M. Lawson, Chair, Subcommittee

on Rule 4, Advisory Committee on Rules of Criminal Procedure, Judicial Conference of the

United States, at 3 (Feb. 20, 2015), https://www.uscourts.gov/sites/default/files/fr_import/

CR2015-05.pdf ("DOJ Memo")).  "A foreign organization acting lawfully in this situation has

two reasonable choices: it can either appear in a U.S. court to raise any legitimate defenses or it

can choose not to appear and face any attendant risks."  DOJ Memo at 3.

Federal Rule of Criminal Procedure 4 was amended in 2016 to permit service "on an

organization not within a judicial district of the United States . . . by any other means that gives

notice."  Fed. R. Crim. P. 4(c)(3)(D).  The modification was intended to "remove an unnecessary

---

**[5]    Any arguments or issues raised by the parties but not specifically addressed herein**
**have been considered by the Court and rejected.**

impediment to the initiation of criminal proceedings against organizations that commit domestic offenses but have no place of business or mailing address within the United States." Id. Advisory Committee's Note to 2016 Amendment.

There is no evidence of "a longstanding historical practice of allowing special appearances in criminal cases." In re Pangang Grp., 901 F.3d at 1057. And, following the enactment of Federal Rule of Criminal Procedure 12, a defendant is not "required at the door of the federal courthouse to intone that ancient abracadabra of the law, *de bene esse*, in order by its magic power to enable himself to remain outside even while he steps within. He may now enter openly in full confidence that he will not thereby be giving up any keys to the courthouse door which he possessed before he came in." Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d Cir. 1944); see also De Bene Esse, Black's Law Dictionary (11th ed. 2019) ("As conditionally allowed for the present; in anticipation of a future need.").

18 U.S.C. § 3231 provides that district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States. "In the criminal context, 18 U.S.C. § 3231 is all that is necessary to establish a court's power to hear a case involving a federal offense . . ." United States v. Yousef, 750 F.3d 254, 262 (2d Cir. 2014), abrogated on other grounds by Class v. United States, 138 S. Ct. 798 (2018). [6]

"[D]ue process of law is satisfied when one present in court is convicted of crime after having been fairly apprised of the charges against him and after a fair trial in accordance with

---

[6]   In its reply, Halkbank contends that "reliance on *Yousef*, 750 F.3d at 258–59, is misplaced since it is no longer good law in the Second Circuit." See Def. Letter, dated Dec. 2, 2019, at 4. Halkbank is not correct. Only a portion of Yousef was abrogated by Class, i.e. the portion dealing with whether a guilty plea "by itself bars a federal criminal defendant from challenging the constitutionality of the statute of conviction on direct appeal." See United States v. Van Der End, No. 17-2926, 2019 WL 5991546, at *4 (2d Cir. Nov. 14, 2019) (quoting Class, 138 S. Ct. at 803)). The remainder of Yousef remains good law.

constitutional procedural safeguards." United States v. Alvarez-Machain, 504 U.S. 655, 662 (1992) (quoting Frisbie v. Collins, 342 U.S. 519, 522 (1952)). "[I]n a criminal prosecution, '[i]t is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained.'" United States v. Maruyasu Indus. Co., 229 F. Supp. 3d 659, 670 (S.D. Ohio 2017) (quoting United States v. Lussier, 929 F.2d 25, 27 (1st Cir. 1991)).

"[T]he extent of [a] statute's extraterritorial reach is not an issue related to the court's jurisdiction: '[T]o ask what conduct [a statute] reaches is to ask what conduct [the statute] prohibits, which is a merits question.  Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case.'"  United States v. Prado, 933 F.3d 121, 138 (2d Cir. 2019) (quoting Morrison v. Nat'l Australia Bank, Ltd., 561 U.S. 247, 254 (2010)).

The fugitive disentitlement doctrine "exists precisely to guard against defendants . . . that 'attempt to invoke from a safe distance only so much of a United States court's jurisdiction as might secure him a dismissal while carefully shielding himself from the possibility of a penal sanction.'" United States v. Hayes, 118 F. Supp. 3d 620, 626 (S.D.N.Y. 2015) (quoting Collazos v. United States, 368 F.3d 190, 200 (2d Cir. 2004)).

### III. Analysis

As discussed at pp 10-11 above, defense counsel emphasizes that Halkbank is **not** challenging service of process.  See, e.g., Def. Letter, dated Nov. 19, 2019, at 11; Def. Letter, dated Dec. 2, 2019 at 6; see also Transcript, dated Nov. 5, 2019, at 4 ("I do want to make clear that we are not requesting a need to make a special appearance in order to challenge a summons. That's not our intention."). This approach is surprising since the issue of service of process (notice) is linked directly to the issue of personal jurisdiction. It may be that defense counsel

14

believes that such a challenge would be futile because the Government has complied with Federal Criminal Rule of Procedure 4 which permits service "by any means that gives notice." Fed. R. Crim. P. 4(c)(3)(D)(ii); <u>see also</u> discussion at pp. 5-7 above.

The defense's disparate jurisdictional arguments include the following: (i) "the Bank's incidental contacts with the U.S. are insufficient to establish either general or specific personal jurisdiction over the Bank;" (ii) "Halkbank is a Turkish corporation headquartered in Istanbul with no U.S. offices or physical operations in the United States;" and (iii) Halkbank's "conduct alleged in the indictment has no connection to the U.S. sufficient to create jurisdiction." Def. Letter, dated Nov. 4, 2019, at 2. Construed in the light most favorable to Halkbank, the defense appears to challenge extraterritoriality and/or the lack of a connection or nexus between Halkbank and the U.S. sufficient to satisfy the constitutional requirement of fairness. "In order to apply extraterritorially a federal criminal statute to a defendant consistently with due process, there must be a sufficient nexus between the defendant and the United States, so that such application would not be arbitrary or fundamentally unfair." Gov. Letter, dated Nov. 26, 2019, at 9 (quoting <u>United States v. Yousef</u>, 327 F.3d 56, 111 (2d Cir. 2003)). Halkbank may seek recusal and/or make its extraterritorial or jurisdictional challenge by motion following arraignment. <u>See</u> e.g. Fed. R. Crim. P. 12(b); <u>see also</u> <u>Morrison</u>, 561 U.S. at 254; <u>Yousef</u>, 750 F.3d at 260.

The Court has found no instance where a special appearance was required to seek recusal. Recusal motions are generally made after the parties appear, and are resolved swiftly by the court because "a prompt application affords the district judge an opportunity to assess the merits of the application before taking any further steps. . . ." <u>See In re Int'l Bus. Mach. Corp.</u>, 45 F.3d 641, 643 (2d Cir. 1995); <u>see also United States v. LaMorte</u>, 940 F. Supp. 572, 575 (S.D.N.Y. 1996).

**(1) Special Appearances to Challenge "Minimum Contacts" Are Not Properly Entertained in Criminal Cases**

Defense counsel in his submissions refers to the idea that this is a "high profile" case and is "widely publicized", perhaps suggesting somehow that high profile qualifies his client, Halkbank, for a special appearance.  See, e.g., Def. Letter, dated Nov. 4, 2019, at 3, ECF No. 570; Def. Letter, dated Nov. 19, 2019, at 7, ECF No. 577.  The Court fails to perceive a correlation between accounts of political leaders and others who have taken a keen interest in these court proceedings and the more mundane and easily resolved question whether a special appearance is appropriate here.  It is not.

Halkbank's proposal to make a "limited and special appearance" to challenge the Court's personal jurisdiction is denied.  As the Ninth Circuit has recently pointed out, there is no "evidence of a longstanding historical practice of allowing special appearances in criminal cases."  See In re Pangang Grp., 901 F.3d at 1057.  Similarly, the court in Maruyasu Industries could "not recall encountering a 'Special Appearance' in a criminal case" - - and was "not satisfied that it may make a distinction between a general appearance and a 'Special Appearance'" in the criminal context.  See Maruyasu Industries, 229 F. Supp. 3d at 671.

There is a good reason for the paucity of cases supporting Halkbank's application. Simply stated, it is improper to make a personal jurisdiction motion based upon the absence of minimum U.S. contacts in a criminal case. While minimum contacts challenges may be appropriate in civil cases, such challenges do not apply to criminal matters. See id. at 668; see also United States v. Ali, 718 F.3d 929, 944 (D.C. Cir. 2013) ("It is true courts have periodically borrowed the language of personal jurisdiction in discussing the due process constraints on extraterritoriality. But . . . flawed analogies do not establish actual standards for judicial inquiry; the law of personal jurisdiction [in civil cases] is simply inapposite.").  Further, **"the issue of**

16

**'minimum contacts' does not arise in criminal cases."** <u>United States v. Bodmer</u>, 342 F. Supp. 2d 176, 188 (S.D.N.Y. 2004) (emphasis added).

Halkbank's reliance upon minimum contacts jurisprudence is simply misplaced.  "A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law."  <u>United States v. Rendon</u>, 354 F.3d 1320, 1326 (11th Cir. 2003) (citing <u>United States v. Alvarez-Machain</u>, 504 U.S. 655, 659–70 (1992)).

A recent (2017) decision which is on point is <u>Maruyasu Industries,</u> where the Southern District of Ohio described as a "novel argument" the contention that "minimum contacts applies in [a] criminal prosecution," <u>i.e.</u> the same position being advanced here by Halkbank.  229 F. Supp. 3d at 666-67.  In <u>Maruyasu Industries</u>, a Japanese corporation defendant was indicted for engaging in a price-fixing conspiracy. <u>Id.</u> at 663. The foreign corporation moved to dismiss the indictment for lack of personal jurisdiction arguing that "before exercising personal jurisdiction over a non-resident defendant like itself, a district court must find that the defendant has minimum contacts with the forum state so as not to offend notions of fair play and substantial justice—the jurisdictional test typically applied in *civil* cases." <u>Id.</u> at 666–67 (emphasis in original). The Government opposed the defendant's motion, arguing persuasively that "the Due Process Clause does not impose identical requirements in the civil and criminal contexts. Rather, in a criminal prosecution, due process of law is satisfied when one present in court is convicted of [a] crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional safeguards. . . . Nothing more, including meeting the minimum contacts test, is required." <u>Id.</u> at 668 (internal citations and quotations omitted).

The Ohio court examined the (few) criminal cases which assessed minimum contacts and it concluded that each of those cases was either "distinguishable" or an "outlier." Id. at 669. It reasoned as follows:

> [T]he Court finds compelling the Government's position that due process in the civil and criminal contexts simply is *different*. . . . This Court, therefore, will apply the long-held standard that due process 'is satisfied when one present in court is convicted of [a] crime after having been fairly apprised of the charges against him and after a fair trial in accordance with constitutional safeguards.' A 'federal district court has personal jurisdiction to try any defendant brought before it on [a] federal indictment charging violation of federal law.'

Id. at 670 (internal citations omitted) (quoting Lussier, 929 F.2d at 27 Alvarez–Machain, 504 U.S. at 670, Frisbie, 342 U.S. at 522, and Rendon, 354 F.3d at 1326).

Halkbank "has two reasonable choices: it can either appear in a U.S. court to raise any legitimate defense or it can choose not to appear and face any attendant risks." See DOJ Memo at 3.  If Halkbank wishes the district court to decide its jurisdictional motion, this international bank holds the key to unlock its dilemma: travel to New York and answer the charges or have its legal counsel do so.  "That is all the district court ask[s] of [it]." Martirossian, 917 F.3d at 887–88; see also DOJ Memo at 3.

**Halkbank's Authorities Are Not At All Compelling**

The cases which Halkbank relies upon are not persuasive. They do not include any case from the Second Circuit where a special appearance was entertained to address minimum contacts or recusal in a criminal matter. The three cases which appear most germane do not support Halkbank's cause and are discussed immediately below.  (Halkbank's other authorities are distinguished in Exhibit B attached hereto.)  None of Halkbank's cases involves a special appearance to move for recusal.

Here is the Court's assessment of the three principal cases put forward by Halkbank in its opening brief.

**(i) <u>United States v. Kassian Maritime Navigation Agency, Ltd.</u>, No. 2:13-cr-00070 (E.D. Va. June 24, 2013), ECF No. 38**

In <u>Kassian</u>, a Greek corporate defendant sought to enter a special appearance in order to challenge personal jurisdiction on the grounds that it did not have "sufficient minimum contacts with the United States." <u>See</u> Def. Mem. of Law in Support of Mot. to Dismiss, at 7, <u>id.</u> (June 10, 2013), ECF No. 25. The defendant also asserted that it "does not have an office, employees, and/or property within the judicial district, or anywhere else within the United States of America," and argued that it "conducts its business exclusively out of its office in Greece." <u>Id.</u> at 3. While the Government did not oppose the special appearance, it argued that the minimum contacts test was irrelevant because "[w]hen a defendant enters a jurisdiction and commits a crime, jurisdiction immediately attaches to that defendant regardless of his 'minimum contacts' with the jurisdiction." See Gov. Mem. of Law in Oppn. to Mot. to Dismiss, at 6, <u>id.</u> (June 6, 2013), ECF No. 28.

The district court in <u>Kassian</u> denied the foreign corporate defendant's motion to dismiss. It determined that "a Rule 12 motion is not an appropriate method of raising such a factual defense," and that "the Government's proof with respect to jurisdictional elements is subject to evaluation by the trial court solely in connection with a motion for judgment of acquittal made after the evidence on either side is closed." <u>See</u> Order, at 3-4, <u>id.</u> (June 24, 2013) ECF No. 38. The Court stated that defendant's motion was in essence a challenge to the Government's factual assertions "and how such facts impact the elements of the offenses." <u>Id.</u> at 5. The defendant's argument that it "does not 'do business' and/or have sufficient minimum contacts with the

United States"—which is comparable to Halkbank's contention —did not, according to the Virginia district court, implicate personal jurisdiction.  Id. at 5.

### (ii) <u>United States v. Nippon Paper Industries Co., No. 1:95-cr-10388, 944 F. Supp. 55 (D. Mass. 1996)</u>

In the <u>Nippon Paper</u> case, a Japanese corporate defendant filed a "NOTICE of special appearance of counsel," without first requesting permission from the court.  See id. (Jan. 23, 1996), ECF No. 17.  However, the Government did not raise an objection.  Thereafter, the defendant filed a motion to dismiss for lack of personal jurisdiction because Nippon did not have "sufficient contacts with the United States to fall within the Court's general or specific jurisdiction."  See 944 F. Supp. at 62.  The Government opposed the motion on the merits and contended that service on Nippon's office in Seattle "standing alone" was sufficient to assert jurisdiction over Nippon and, alternatively, that "because Nippon has sufficient contacts with the United States, service pursuant to Rule 4 [also] gives this Court jurisdiction over Nippon."  Id. at 59-60.

The Massachusetts District Court held that "the mere service of process on an agent or officer of an alien corporation within the United States does not without more establish the jurisdiction of a federal court over an alien corporation.  Rather, as this Court has previously decided in the context of a civil matter, service of such process is only effective to create in personam jurisdiction where a defendant has sufficient contacts with the United States."  Id. at 61.  The Massachusetts court did not explain why it believed that the minimum contacts test employed in civil cases should also apply to criminal prosecutions.  It ultimately determined that the defendant engaged in continuous and systematic activity in the United States and "[a]ccordingly, the Court possess[ed] general personal jurisdiction over Nippon."  Id. at 62.

This Court agrees with the <u>Maruyasu Industries</u> decision discussed above at pp. 18–19 which concluded that <u>Nippon Paper</u> is "not . . . particularly persuasive" in part because it did not "adequately address . . . *why* and *whether* the minimum contacts test is properly applied to determine whether personal jurisdiction exists over a criminal defendant." 229 F. Supp. 3d at 669. <u>Nippon Paper</u> is an "outlier[] . . . and the court here is not persuaded to follow [it]." <u>Id.</u>

### (iii) <u>United States v. Chitron Electronics Co. Ltd., No. 1:08-cr-10386, 668 F. Supp. 2d 298 (D. Mass. 2009)</u>

In <u>Chitron</u>, a Chinese corporate defendant filed a "NOTICE OF SPECIAL APPEARANCE . . . for the limited purpose of seeking dismissal for lack of personal jurisdiction and insufficiency of service of process."  <u>See</u> Notice of Attorney Appearance, at 1, <u>Id.</u> (June 5, 2009), ECF No. 46.  The defendant did not request permission to appear specially, however the Government did not raise an objection.  Thereafter, the Defendant filed a motion to "dismiss for insufficiency of service of process and lack of personal jurisdiction" because it "does not do business, in any state of the United States, . . .  does not own any real or tangible property in the United States, and it has no offices, bank accounts or employees in the United States."  <u>See</u> Def. Mem. in Support of Mot. to Dismiss, at 1, 3, <u>id.</u> (June 22, 2009), ECF No. 57.  The Government countered that notice of the charges against Chitron through service of process "was adequately provided" and that the issue "is not whether [the Defendant] conducted business in the United States but rather whether it committed a crime in the United States."  <u>See</u> Gov. Mem. in Oppn. to Mot. to Dismiss, at 3, 9, <u>id.</u> (July 9, 2009), ECF No. 60.  The Government also argued that "the civil concepts of personal jurisdiction under *International Shoe* and its progeny are not applicable to a criminal case."  <u>See</u> <u>Id.</u> at 15-16.

In its <u>Chitron</u> decision, the Massachusetts District Court concluded, without explanation, that "to establish personal jurisdiction over a foreign corporation charged with a crime, the

Government has the burden of demonstrating (via the indictment or affidavits) . . . 'minimum contacts' between the corporation (or its agent) and the United States."  See 668 F. Supp. 2d at 302.  The two cases relied upon by the Chitron court concern a court's power to enforce a subpoena to testify or provide documents, and they do not involve jurisdiction over a criminal defendant—such as Halkbank—which has been indicted.  See In re Sealed Case, 832 F.2d 1268 (D.C. Cir. 198), abrogated on other grounds by Braswell v. United States, 487 U.S. 99 (1968); Matter of Marc Rich & CO., A.G., 707 F.2d 663 (2d Cir. 1983).  They "are distinguishable on that basis alone."  See Maruyasu Industries, 229 F. Supp. 3d at 669.  Ultimately, the Chitron court determined that the defendant "engaged in activities in the United States sufficient to meet the 'minimum contacts' and 'effects' test."  See 688 F. Supp. 2d at 304.  Chitron like Nippon Paper has been considered an "outlier."  The Court is respectfully not persuaded to follow it.  See Maruyasu Industries, 229 F. Supp. 3d at 669.

**(2) Halkbank will Not be Prejudiced by Seeking Recusal and/or Dismissal on Jurisdictional Grounds Following Arraignment**

Even though the Court rejects Halkbank's request to make a special appearance, Halkbank faces no prejudice because it is entitled to litigate recusal and jurisdiction following arraignment.

It is a court's obligation to deal with a recusal request expeditiously.  This was the approach the Court followed in the Zarrab case.  At the outset of that case, the Court disclosed to counsel and to Mr. Zarrab the following: "I personally have been in Istanbul on one occasion. . . . The occasion was May of 2014, and I was one of five Americans, including three prominent constitutional law professors, the Vermont Attorney General, and myself, among 20 speakers in total to participate in an international legal symposium for lawyers, law students, academics, and judges about the Rule of Law. . . . My participation in this panel does not impact my ability to

preside over this case fairly and impartially, and to ensure that Mr. Zarrab, who is presumed to be innocent . . . receives a fair and impartial hearing and eventual trial." See Transcript, dated Apr. 27, 2016, at 3-4, ECF No. 14.

Defense counsel Brafman responded: "Might I add, your Honor, that with all modesty, you have proven me correct. I was familiar with your Honor's remarks and appearance in Istanbul because, in our thoroughness, we try and follow everything that everyone does. And . . . so I said that the first thing the judge is going to do is raise the fact that he participated in the panel, so I'm glad that you proved me correct. . . . [M]y experience here has allowed me to conclude that you are indeed a fair and impartial judge. . . ." Id. at 4-5. Notwithstanding Mr. Brafman's positive (and kind) comments, his co-counsel filed a recusal motion on August 30, 2016. It was resolved on September 29, 2016. See Def. Mot. for Recusal, United States v. Zarrab, No. 15-CR-867-RMB-1 (S.D.N.Y. Aug. 30, 2016), ECF No. 79; Decision & Order, Id. (Sept. 29, 2016), ECF No. 87.

Similarly, there is no prejudice to Halkbank as a result of the Court's rejection of Halkbank's personal jurisdiction claim based upon minimum contacts. Halkbank is free to argue absence of U.S. contacts or conduct following arraignment. See Morrison, 561 U.S. at 254. ("[T]o ask what conduct [a statute] reaches is to ask what conduct [the statute] prohibits, which is a merits question. . . . [J]urisdiction, by contrast, refers to a tribunal's power to hear a case." (internal citations and quotation marks omitted)). Extraterritoriality and/or subject matter jurisdiction may well be what Halkbank is contesting by arguing that "[t]he Bank's conduct alleged in the indictment has no connection to the U.S." See Def. Letter, dated Nov. 4, 2019, at 2. This issue also can be raised after Halkbank has appeared, as also happened in the Atilla case.

See Def. Mot. to Dismiss, at 14-18, United States v. Atilla, No. 15-CR-867-RMB-5 (S.D.N.Y.

July 31, 2017), ECF No. 281; see also Decision & Order, Id., (Feb. 7, 2018), ECF No. 493.

In United States v. Prado, 933 F.3d 121, 138 (2d Cir. 2019), the Court of Appeals

explained "that the extent of [a] statute's extraterritorial reach is not an issue related to the

court's jurisdiction: . . . 'to ask what conduct [a statute] prohibits . . . is a merits question.'"

(quoting Morrison, 561 U.S. at 254); see also Yousef, 750 F.3d at 258 ("[I]n order to apply

extraterritorially a federal criminal statute to a defendant consistently with due process, there

must be a sufficient nexus between the defendant and the United States, so that such application

would not be arbitrary or fundamentally unfair." (internal quotation marks omitted)).

**(3) As a Fugitive, Halkbank Would Not Be Entitled to Invoke the Court's Processes**

It is not necessary to reach the fugitive disentitlement issue because the Court has already

denied (in Sections III (1) and (2) above) Halkbank's motion to make a special appearance.  If

the Court were to reach this issue, it would almost certainly conclude that the fugitive

disentitlement doctrine applies and that the doctrine's principles would render Halkbank a

fugitive.

 "[T]he fugitive disentitlement doctrine 'disentitles [a] defendant to call upon the

resources of the Court for determination of [its] claims' while [it] remains a fugitive."  See

United States v. Miller, 166 F. Supp. 3d 346, 348 (W.D.N.Y. 2016) (quoting Molinaro v. New

Jersey, 396 U.S. 365, 366 (1970)).  A defendant who fails to appear in the first instance or

absconds during the course of ongoing criminal proceedings flouts the authority of the court.

"By imposing the sanction of disentitlement, that court can both protect the dignity of its

proceedings and deter similarly situated parties. . . ."  See United States v. Awadalla, 357 F.3d

243, 246 (2d Cir. 2004).  "Federal courts do not play 'catch me if you can.'  If a defendant

refuses to show up to answer an indictment . . . the court may decline to resolve any objections to the indictment in [its] absence." United States v. Martirossian, 917 F.3d 883, 885 (6th Cir. 2019).

Halkbank unpersuasively asserts that "[a]s a corporation, Halkbank cannot be a 'fugitive' since it has no physical body to present and can appear before the court in any case only through representatives such as its legal counsel." See Def. Letter, dated Nov. 19, 2019, at 6–7. Halkbank cites one unpublished out-of-circuit case that stated little more than: "a motions panel of this court held that Four Pillars, as a corporate defendant, is not subject to dismissal under the fugitive disentitlement doctrine." See United States v. Yang, 144 F. App'x 521, 522 (6th Cir. 2005). No explanation or reasoning was offered for the statement, but it should be noted that the corporate defendant, Four Pillars, had in fact appeared in the case through counsel even after the individual defendant owners of the corporation fled the United States. See Defs. Oppn. to Gov. Mot. to Dismiss Appeal Under the Fugitive Disentitlement Rule, at 3, United States v. Yang, No. 03-4093 (6th Cir. Dec. 8, 2003).

The Court agrees with the Government that "[t]he principles underlying the disentitlement doctrine apply equally to a corporate defendant as to an individual defendant." Gov. Letter, dated Nov. 26, 2019, at 8. "There is no reason . . . why a corporate defendant like Halkbank, which has been served with two summonses and intentionally refused to comply with [two] lawful orders, should be permitted to simultaneously ignore and invoke the court's authority." Id.

Moreover, Congress has explicitly authorized the applicability of the fugitive disentitlement doctrine to corporations. 28 U.S.C. § 2466 permits a court to "disallow a person from using the resources of the courts of the United States in furtherance of a claim in any

related civil forfeiture action or a claim in third party proceedings in any related criminal

forfeiture action" if the person in order to avoid criminal prosecution purposefully leaves or

declines to enter or re-enter the jurisdiction of the United States or otherwise evades the

jurisdiction of the court in which a criminal case is pending. See 28 U.S.C. § 2466(a).  And, in

2001, Congress amended this statute to permit a court to apply the fugitive disentitlement

doctrine to "a claim filed by a corporation if any majority shareholder, or individual filing the

claim on behalf of the corporation" is a fugitive.  28 U.S.C. § 2466(b). In United States v.

$6,976,934.65 Plus Interest, 478 F. Supp. 2d 30, 43 (D.D.C. Mar. 21, 2007), the court

specifically determined that: **Subsection (b) was "intended to clarify the fact that fugitive**

**disentitlement could apply to a corporate entity."** (emphasis added).

Halkbank's argument that the fugitive disentitlement doctrine does not apply because

Halkbank is "not present in the United States [and] did not flee the jurisdiction" is also

unavailing – and unsupported.  See Def. Letter, dated Nov. 19, 2019, at 6–7.  The Second Circuit

recognizes that a defendant may become a fugitive when, "having learned of charges while

legally outside the jurisdiction, [the defendant] 'constructively flees' by deciding not to return."

See United States v. Catino, 735 F.2d 718, 722 (2d Cir. 1984); see also United States v. Blanco,

861 F.2d 773, 779 (2d Cir. 1988) ("A person can be said to be a fugitive when, while abroad,

they learn that they are under indictment and make no effort to return to the United States to face

charges.").  It appears to the Court that this is what Halkbank – which is an important institution

in Turkey – has done so far in this case.  "The primary purpose of the fugitive disentitlement

doctrine—promoting mutuality of litigation—is served both when a defendant flees the United

States and when he chooses to remain outside the United States."  Miller, 166 F. Supp. 3d at 348;

see also Martirossian, 917 F.3d at 890 (where the Court confirmed that "a defendant need not be

present in and leave a jurisdiction to become a fugitive; the mere refusal to report for prosecution can constitute constructive flight").

Halkbank has failed to appear following the service of two summonses, with full knowledge and notice of the charges in the Indictment and of the related Atilla and Zarrab cases. See pp. 3–5 above.  Halkbank has also been represented by U.S. legal counsel, Mr. Hruska of King & Spaulding LLP, for at least two years in connection with the U.S. criminal investigation of Halkbank's alleged Iran sanctions evasion.  See Gov. Letter, dated Nov. 4, 2019, at 1.  And, this Court has found that "Halkbank has willfully and knowingly disobeyed the Court's order in the First Summons to appear at the First Conference."  Order, dated Oct. 23, 2019, at 3.  The fugitive disentitlement doctrine exists to encourage compliance with the law and to protect against entities that "'attempt to invoke from a safe distance only so much of a United States court's jurisdiction as might secure . . .  a dismissal while carefully shielding [itself] from the possibility of a penal sanction.'"  Hayes, 118 F. Supp. 3d at 625–26 (brackets omitted) (quoting Collazos v. United States, 368 F.3d 190, 200 (2d Cir. 2004)); see also Niemi v. Lasshofer, 728 F.3d 1252, 1255 (10th Cir. 2013).

**IV. Conclusion & Order**

For the reasons stated above, the Court denies Halkbank's application, dated November 19, 2019, to make a special appearance.

Dated:  December 5, 2019
          New York, New York

**RICHARD M. BERMAN**
**U.S.D.J.**