*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 19, 2019

**BY ECF**

Hon. Richard M. Berman
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

    Re:    *United States v. Turkiye Halk Bankasi, A.S.*,
           S6 15 Cr. 867 (RMB)

Dear Judge Berman:

      The Government respectfully submits this letter in response to a motion by Turkiye Halk Bankasi, A.S. ("Halkbank" or the "defendant") to stay all proceedings in this matter (the "Motion" or "Mot."). Halkbank asks for a stay because it filed a petition for a writ of mandamus in the Court of Appeals on December 17, 2019, seeking an order directing this Court to allow Halkbank to enter a special appearance to challenge personal jurisdiction and to seek recusal of the presiding District Judge. The stay request is at the very least premature, and in any event unnecessary to prevent irreparable harm, and the Government opposes a stay. The Government does, however, ask that the briefing schedule in connection with the show-cause hearing currently scheduled for February 10, 2020 be adjourned as described below to allow additional time for the Circuit's response to the petition.

      Halkbank was charged in a superseding indictment, S6 15 Cr 867 (RMB) (the "Indictment"), on October 15, 2019, and promptly served with a summons directing its appearance on October 22, 2019. Halkbank did not appear in response to the summons, and on October 23, 2019, the Court issued a second summons directing the defendant to appear on November 4, 2019. The second summons was promptly served, and Halkbank again failed to appear. Instead, Halkbank's counsel attended the November 4 conference to ask that the Court permit Halkbank to enter a special appearance solely for purposes of seeking recusal and moving to dismiss the Indictment for lack of personal jurisdiction under the "minimum contacts" test set forth in *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945) and its progeny. Counsel claimed that the request for a special appearance was based on Halkbank's concern that an appearance would waive its personal jurisdiction argument, despite the Government's and the Court's views that Halkbank's *International Shoe* argument would not be waived by an appearance. *See* Rule 12(b)(1) & (b)(3), FED. R. CRIM. PR. Counsel would not, however—and still has not—conceded that Halkbank would enter an appearance and respond to the charges if its personal jurisdiction

argument were denied. On December 5, 2019, the Court denied Halkbank's request for a special appearance. (Dkt. Entry No. 581.) On December 9, 2019, the Court scheduled a hearing on February 10, 2020, for Halkbank to show cause why it should not be held in contempt of the two summonses. (Dkt. Entry No. 582.)

On December 17, 2019, Halkbank filed a petition for mandamus. The petition relies on substantially the same authorities and arguments that Halkbank relied on in its request for a special appearance, and which this Court already has considered in denying that request. (*See generally* Dkt. Entry Nos. 570, 577, 579.) The same day, Halkbank moved for a stay of these proceedings. (Dkt. Entry. 583.)

A stay of proceedings during the pendency of a mandamus petition "is warranted if there is (1) 'a fair prospect that a majority of the Court will vote to grant mandamus,' and (2) 'a likelihood that irreparable harm will result from the denial of a stay.'" *In re United States*, 139 S. Ct. 452, 2018 WL 5778259 (Nov. 2, 2018) (quoting *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010)); *see also New York v. U.S. Dep't of Commerce*, 339 F. Supp. 3d 144, 147-48 (S.D.N.Y. 2018) ("In determining whether to grant a stay pending mandamus, district courts must consider the following four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." (internal quotation marks omitted)). "Mandamus is 'a drastic and extraordinary remedy' whose use is warranted only under 'circumstances amounting to a judicial usurpation of power or a clear abuse of discretion' by the district court." *Linde v. Arab Bank, PLC*, 706 F.3d 92, 107 (2d Cir. 2013) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)). Mandamus will not issue unless (1) the petitioner demonstrates that its "right to issuance of the writ is clear and indisputable," (2) the petition has "no other adequate means to attain the relief [it] desires," and (3) the issuing court is "satisfied that the writ is appropriate under the circumstances." *Id.* at 107-08 (alteration in original).

Halkbank cannot meet the requirements for mandamus, much less a stay of these proceedings: the Court's December 5, 2019 order reflects a correct statement of the law. Moreover, Halkbank will not suffer irreparable harm absent a stay, because (1) it will not waive its personal jurisdiction challenge based on *International Shoe* simply by appearing (though that jurisdictional challenge has no merit);[1] and (2) Halkbank could invite appellate review of its personal

---

[1] Halkbank is alleged to have conspired with Iranian government officials, Iranian bank officials, Turkish government officials, Turkish businessmen, and others to evade and to violate U.S. sanctions imposed against the Government of Iran based on the unusual and extraordinary threat posed by the Government of Iran to the national security, economy, and foreign policy of the United States, including its state sponsorship of terrorism, weapons of mass destruction programs, and other murderous and globally destabilizing activities. As part of that conspiracy, Halkbank is alleged to have knowingly worked with its coconspirators to cause unwitting U.S. banks to conduct financial transactions inside the United States for the benefit of the Government of Iran and Iranian banks. Halkbank and its officers also lied about the scheme to senior U.S. Treasury officials in order to thwart the Treasury Department's ability to enforce the sanctions regime and to avoid the imposition of sanctions against Halkbank that would have deprived the bank of the ability to

jurisdiction or special-appearances arguments by appealing a conviction or a contempt order. *See, e.g.*, *Dynegy Midstream Servs. v. Trammochem*, 451 F.3d 89, 92 (2d Cir. 2006) (contempt order for failing to comply with a subpoena is regarded as final and appealable). Indeed, the Second Circuit has recognized "the general rule" that "appellate courts should avoid determining jurisdictional issues on a petition for mandamus." *In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 37 (2d Cir. 2014) (quoting *In re Ivy*, 901 F.2d 7, 10 (2d Cir. 1990)).[2]

Halkbank's argument that it will suffer irreparable harm absent a stay principally repeats its contention that, without a special appearance, it would waive its ability to challenge personal jurisdiction. (*See* Mot. at 8-10.) Halkbank still has cited no persuasive authorities that support this purported concern, relying instead on mischaracterizations of precedent. While personal jurisdiction *can* be waived, there simply is no reason why Halkbank could not promptly assert its personal jurisdiction argument after appearing as required by the two summonses. The Government does not intend to contend that Halkbank will have waived its argument if timely raised following its appearance, and the Court already has held that Halkbank may challenge jurisdiction after appearing. (Dkt. Entry No. 581 at 18, 23-24.)

In support of its mistaken contention, Halkbank continues to argue that the courts in *United States v. Beadon*, 49 F.2d 164 (2d Cir 1931), and *United States v. Maruyasu Industries*, 229 F. Supp. 3d 659, 665 & 666-70 (S.D. Ohio 2017), found a waiver of jurisdictional arguments following an appearance. (Mot. at 9.) This mischaracterizes these cases, as the Government observed in opposing Halkbank's request for a special appearance. In *Beadon*, corporate defendants appealed a jury verdict on the ground that they "*were not in court* and that no valid verdict could be rendered against them *for that reason*." 49 F.2d at 166 (emphasis supplied); *compare* Rule 43(a)(2), FED. R. CRIM. PR. (the defendant must be present at every stage of trial, including jury empanelment and the return of verdict); 43(b)(1) (an organizational defendant represented by counsel need not be present), 43(c)(1)(A) (a defendant initially present at trial who is voluntarily absent after trial has begun waives the right to be present). The corporate defendants

---

maintain property, including correspondent banking accounts, in the United States. Halkbank's argument that this Court lacks jurisdiction because Halkbank maintained no physical office or employees in the United States is specious: the bank engaged in a multi-year scheme to lie to U.S. government officials, cause U.S. financial institutions to conduct unlawful financial transactions, and supply the Government of Iran with approximately $20 billion dollars' worth of illicit funding while simultaneously conducting billions of dollars' of Halkbank's own financial transactions through its U.S. correspondent accounts. But Halkbank's right to advance that argument will not be impaired solely because it complies with two validly issued and served summonses.

[2] *In re Roman Catholic Diocese of Albany* illustrates just how extraordinary the circumstances must be to warrant mandamus relief. There, the district court clearly erred in exercising personal jurisdiction in light of recent, controlling Supreme Court precedent; permitting the litigation to proceed would cause irreparable harm not only to the Diocese and its employees but also to victims of sexual abuse and their families, who would be subjected to "distressing" and "grueling inquiries" regarding the abuse they suffered as minors; and that harm would ultimately be for naught because the litigation would be time-barred in the only forum with jurisdiction. 745 F.3d at 33, 36, 41. No comparable showing has been, or can be, made in this case.

argued that the district court erroneously found them present because their corporate officers and co-defendants were present, but the record showed that counsel had appeared for the corporate defendants on the first day of trial. 49 F.2d at 167. On the following day of trial, counsel for the corporate defendants argued that the defendants had not been served with process, but did not deny that they had appeared the prior trial day and made no motion to strike or withdraw their appearances. *Id*. at 167. The Court of Appeals found that, under those circumstances, the corporate defendants in fact had been present. *Id.* The decision, accordingly, is about presence, and not about waiver of personal jurisdiction. Halkbank similarly continues to mischaracterize *Maruyasu Industries*. As the Government observed in opposing Halkbank's request for a special appearance, the *Maruyasu Industries* court explicitly addressed the defendant's challenge to personal jurisdiction on the merits, and rejected that challenge on the merits. 229 F. Supp. 3d at 659, 665 & 666-70 (holding that *International Shoe* analysis did not apply); *id.* at 672-74 (holding that, if *International Shoe* did apply, personal jurisdiction was established). In connection with the court's conclusion that the *International Shoe* analysis did not apply and that the court "has personal jurisdiction to try any defendant brought before it on federal indictment charging violation of federal law," *id.* at 670 (quoting *United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003)), the court addressed the defendant's argument that it had never appeared in the action but had only entered a special, limited appearance. The court readily concluded that the defendant had not appeared specially. Nowhere in the decision did the *Maruyasu Industries* court find that the defendant had waived its ability to challenge personal jurisdiction by appearing: it found, on the merits, that personal jurisdiction had been established. (*Compare* Dkt. Entry No. 581 at 17-18.)

Halkbank also argues that it will suffer irreparable injury as a matter of law because its "constitutional due process rights are at stake." (Mot. at 10.) This argument is based solely on its mistaken assertion that appearing as required by the summonses would waive a jurisdictional challenge. Halkbank has an opportunity to raise its due process claims by complying with the summonses. Similarly, Halkbank's assertion regarding the purported impact of its indictment on aspects of the Turkish economy (*id.*) is offered without factual support, and Halkbank itself concedes those purported impacts resulted from the filing of the Indictment—issuing a stay of the contempt proceedings would not address the underlying cause of the purported effects. In the case Halkbank cites in support of this argument, *In re City of New York*, 607 F.3d 923 (2d Cir. 2010), the court considered the irreversible effects of a discovery order for the disclosure of confidential undercover reports from investigations of potential extremist violence—a far cry from Halkbank's assertion of mere economic harm resulting from charges. And, to the extent that a faster resolution (Mot. at 10) is in the interests of the bank and its customers, it is Halkbank's own failure to comply with the summonses that is delaying the proceedings.[3] Lastly, Halkbank argues that it will be

---

[3] Halkbank's contention about "a negative impact on the bilateral relationship between the United States and the Republic of Turkey" is irrelevant. Whatever impact Halkbank's own contumacious refusal to comply with the summonses may have on diplomatic relations does not favor providing Halkbank with further opportunities to evade this Court's jurisdiction. Moreover, the Supreme Court has cautioned against courts "impinging on the discretion of the Legislative and Executive Branches in managing foreign affairs." *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 116 (2013) (quoting *Sosa v. Alvarez-Manchain*, 542 U.S. 692, 727 (2004)). Purported foreign affairs implications do not alter the application of clear law or warrant treating Halkbank differently from any other party before the Court.

irreparably harmed because of its inability to file a recusal motion. (Mot. 11.) But once again, Halkbank clearly *can* file a motion for recusal after appearing, and the Court doubtless will promptly address the motion.[4] Halkbank suffers no prejudice from the absence of a stay; it suffers only the consequences of its own willful failure to comply with valid and lawful summonses.

Accordingly, the Government opposes Halkbank's request for a stay and the February 10, 2020 show-cause hearing should proceed as scheduled. Indeed, Halkbank's petition for mandamus alerted the Circuit to the date of the scheduled hearing, and the Circuit may deny the petition without further briefing or argument. *See* Rule 21(b)(1), FED. R. APP. PR. Halkbank may also request expedited consideration of its petition, which it presumably intends to do given its desire to resolve the matter quickly. (*See* Mot. at 10; *see also In re Roman Catholic Diocese of Albany, New York, Inc.*, 745 F.3d at 34.)

However, the Government does request a modest adjournment of the briefing schedule in connection with the February 10 hearing. Though the Circuit could deny the petition without further briefing, the Circuit may also order the Government to respond to the petition. *Id*. Because Halkbank did not file its petition until the week before the holidays, the Circuit may not issue its response to the petition before the Government's brief is due on January 3, 2020. Accordingly, we ask that the briefing schedule be adjourned in order to provide additional time for the Circuit's response. The Government requests that the schedule be adjourned as follows: the Government's brief and related filings to be filed by January 17, 2020; Halkbank's opposition (if any) due by January 31, 2020; and the Government's reply due by February 5, 2020. In the event of changed circumstances arising out of the Court of Appeals' response to the petition, they can be addressed at that time.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

by: _____
Michael D. Lockard/Sidhardha Kamaraju/David W. Denton, Jr./Jonathan E. Rebold/Kiersten A. Fletcher
Assistant United States Attorneys
(212) 637-2193/-6523/-2744/-2512/-2238

cc:   Andrew Hruska, Jr. (by email)
      Counsel of record (by ECF)

---

[4] Halkbank has repeatedly adverted to a recusal motion, but has never identified the basis for such a motion, including in its mandamus petition (and the Government is unaware of a valid basis). By refusing to explain the basis of its prospective motion, Halkbank has deprived the Court of the ability even to evaluate the likelihood of success. Accordingly, Halkbank's recusal argument should carry no weight in connection with its stay request.