**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

TÜRKIYE HALK BANKASI A.Ş.,

Defendant.

S6 15 Cr. 867 (RMB)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS**


Robert M. Cary
Simon A. Latcovich
James W. Kirkpatrick
Damayanti Desai

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

650 Fifth Avenue, Suite 1500
New York, NY 10019
(202) 434-5000

*Counsel for Türkiye Halk Bankası A.Ş.*

## <u>TABLE OF CONTENTS</u>

I.     **Halkbank Is Immune from Liability.**..................................................................1

     A.     **The Indictment establishes that Halkbank is an instrumentality of Turkey.**..................................................................1

     B.     **The FSIA's grant of immunity applies to criminal cases.**..................................2

     C.     **Section 1605's exceptions do not apply.**..................................................4

     D.     **Even if the FSIA does not apply, Halkbank is entitled to immunity under the common law.**..................................7

II.    **The Indictment Should Be Dismissed Because This Court Does Not Have Personal Jurisdiction over Halkbank.**..................................................8

III.   **The Indictment Should Be Dismissed Because the Statutes at Issue Do Not Apply Extraterritorially.**..................................................12

     A.     **The Second Circuit recently adopted a strong presumption against extraterritoriality in the criminal context.**..................................13

     B.     **The Indictment improperly applies U.S. law extraterritorially.**.....................14

IV.   **The Indictment Fails to Allege Bank Fraud or Conspiracy to Commit Bank Fraud.**..................................................18

     A.     **The Indictment fails to allege a scheme to defraud a U.S. bank.**.....................18

     B.     **The Indictment fails to allege a scheme to obtain bank property by means of false or fraudulent pretenses, representations, or promises.**...........21

V.    **Count Six Should Be Dismissed as Multiplicitous.**..................................................22

VI.   **Count One Should Be Dismissed Because the Indictment Does Not Allege a Conspiracy to "Defraud" the United States.**..................................................24

# **TABLE OF AUTHORITIES**

## **CASES**

*Anglo-Iberia Underwriting Management v. P.T. Jamsostek*, 600 F.3d 171 (2d Cir. 2010) .......... 7

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ................................ 2

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98 (2d Cir. 2016). 8

*Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) ...................................................... 18, 19, 21, 22

*Big Sky Network Canada, Ltd. v. Sichuan Provincial Government*, 533 F.3d 1183 (10th Cir. 2008) ....................................................................................................................................... 2

*Blockburger v. United States*, 284 U.S. 299 (1932) .................................................................... 30

*Braswell v. United States*, 487 U.S. 99 (1988) ............................................................................ 12

*Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016) ................................................. 13

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985).............................................................. 14

*City of Arlington v. F.C.C.*, 569 U.S. 290 (2013) ....................................................................... 20

*Contant v. Bank of America Corp.*, 385 F. Supp. 3d 284 (S.D.N.Y. 2019)........................... 14, 15

*Daimler AG v. Bauman*, 571 U.S. 117 (2014) ............................................................................ 13

*Dale v. Colagiovanni*, 337 F. Supp. 2d 825 (S.D. Miss. 2004) .................................................... 3

*Fox TV, Inc. v. Aereokiller, LLC*, 851 F.3d 1002 (9th Cir. 2017).................................................. 5

*Gould, Inc. v. Mitsui Mining & Smelting Co.*, 750 F. Supp. 838 (N.D. Ohio 1990) .................... 3

*Gucci America, Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) .................................... 13, 14

*Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69 (2d Cir. 2010)........................................... 8, 9

*Haas v. Henkel*, 216 U.S. 462 (1910) ......................................................................................... 33

*Hammerschmidt v. United States*, 265 U.S. 182 (1924) .............................................................. 33

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984) ................................ 13

*In re Grand Jury Proceeding Related to M/V Deltuva*, 752 F. Supp. 2d 173 (D.P.R. 2010) ......... 4

*In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019) .................................................... 4, 6

*In re Investigation of World Arrangements*, 13 F.R.D. 280 (D.D.C 1952) ................................... 9

*In re Marc Rich*, 707 F.2d 663 (2d Cir. 1983)....................................................................... 11, 12

*In re Sealed Case*, 832 F.2d 1268 (D.C. Cir. 1987).................................................................... 12

*In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659 (2d Cir. 2013) ................................ 13, 15

*International Harvester v. Commonwealth of Kentucky*, 234 U.S. 579 (1914) ........................... 10

*International Shoe Co. v. Washington*, 326 U.S. 310 (1945) ........................................... 10, 13, 14

*J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873 (2011) ............................................. 11

*Keller v. Central Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002) .................................................. 3

*Kelly v. United States*, 140 S. Ct. 1565 (2020) ............................................................ 27

*Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108 (2013) ........................................... 23

*Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2d Cir. 1991) .................................. 15, 16

*Loughrin v. United States*, 573 U.S. 351 (2014) ....................................... 26, 27, 28, 29

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009) ...................................................... 5, 6, 10

*McDonnell v. United States*, 136 S. Ct. 2355 (2016) ..................................................... 33

*Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437 (2007) ........................................ 17

*Morrison v. National Australian. Bank Ltd.*, 561 U.S. 247 (2010) ............................... 19, 23

*Murray v. The Schooner Charming Betsy*, 6 U.S. (2 Cranch) 64 (1804) ......................... 5

*Peterson v. Islamic Republic of Iran*, 627 F.3d 1117 (9th Cir. 2010) ....................... 1, 9

*Public Citizen v. DOJ*, 491 U.S. 440 (1989) ................................................................ 6

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) .......................................... 8

*RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016) ................................ passim

*Samantar v. Yousuf*, 560 U.S. 305 (2010) ................................................................ 3, 9

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) .............................................................. 6

*Southway Construction Co. v. Central Bank of Nigeria*, 198 F.3d 1210 (10th Cir. 1999) ............. 4

*United States v. Ajayi*, 808 F.3d 1113 (7th Cir. 2015) ................................................ 30

*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) ........................................ 18

*United States v. Atilla*, ---F.3d---, 2020 WL 4045356 (2d Cir. July 20, 2020) ............................ 16

*United States v. Basciano*, 599 F.3d 184 (2d Cir. 2010) ............................................. 30

*United States v. Blackmon*, 839 F.2d 900 (2d Cir. 1988) .......................................... 28

*United States v. Bouchard*, 828 F.3d 116 (2d Cir. 2016) ................................ 26, 27, 29

*United States v. Bowman*, 260 U.S. 94 (1922) ............................................... 17, 22

*United States v. Briggs*, 939 F.2d 222 (5th Cir. 1991) ............................................... 25

iii

*United States v. Calderon*, 944 F.3d 72 (2d Cir. 2019) .............................................. 27

*United States v. Chitron Electronics. Co.*, 668 F. Supp. 2d 298 (D. Mass. 2009)...................... 12

*United States v. Coplan*, 703 F.3d 46 (2d Cir. 2012)........................................................... 22, 33

*United States v. Cotten*, 471 F.2d 744 (9th Cir. 1973)........................................................... 22

*United States v. D'Amato*, 39 F.3d 1249 (2d Cir. 1994)........................................................ 28

*United States v. Hendron*, 813 F. Supp. 973 (E.D.N.Y. 1993) ............................................ 4

*United States v. Holmes*, 44 F.3d 1150 (2d Cir. 1995) ......................................................... 30

*United States v. Hoskins*, 902 F.3d 69 (2d Cir. 2018) ................................................... 18, 22

*United States v. Jahedi*, 681 F. Supp. 2d 430 (S.D.N.Y. 2009)............................................ 32

*United States v. Josephberg*, 459 F.3d 350 (2d Cir. 2006)................................................... 31

*United States v. Klein*, 247 F.2d 908 (2d Cir. 1957)............................................................. 32

*United States v. Laljie*, 184 F.3d 180 (2d Cir. 1999) .................................................. 25, 26, 27

*United States v. Morgenstern*, 933 F.2d 1108 (2d Cir. 1991) ............................................. 26

*United States v. Napout*, 963 F.3d 13 (2d Cir. 2020).................................................... 18, 21

*United States v. Nippon Paper Industries*, 944 F. Supp. 55 (D. Mass. 1996) ............................ 12

*United States v. Pangang Group Co.*, 879 F. Supp. 2d 1052 (N.D. Cal. 2012) .......................... 11

*United States v. Perez*, 962 F.3d 420 (9th Cir. 2020) ........................................................... 22

*United States v. Piervinanzi*, 23 F.3d 670 (2d Cir. 1994)..................................................... 31

*United States v. Pirk*, 267 F. Supp. 3d 406 (W.D.N.Y. 2017)............................................... 2

*United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684 (S.D.N.Y. 2017) ..................... 24

*United States v. Reed*, 639 F.2d 896 (2d Cir. 1981) ............................................................. 31

*United States v. Rodriguez,* 140 F.3d 163 (2d Cir. 1998) ..................................................... 25

*United States v. Siddiqui*, 699 F.3d 690 (2d Cir.), *as amended* (Nov. 15, 2012) ...................... 17

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ............................................ 24, 27

*United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013)............................................................... 18

*United States v. Zvi*, 168 F.3d 49 (2d Cir. 1999) ................................................................. 30

*WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129 (2018) ..................................... 19

*Williams v. United States*, 458 U.S. 279 (1982) .................................................................. 25

## STATUTES AND RULES

18 U.S.C. § 1344 ................................................................................................ 18, 21

18 U.S.C. § 1956 ..................................................................................................... 17

28 U.S.C. § 1330 ....................................................................................................... 2

28 U.S.C. 1603 ........................................................................................................... 1

28 U.S.C. § 1604 .................................................................................................... 1, 2

28 U.S.C. § 1605 .................................................................................................... 4, 6

28 U.S.C. § 1605A ..................................................................................................... 4

28 U.S.C. § 1605B ..................................................................................................... 4

50 U.S.C. § 1702 ..................................................................................................... 15

Fed. R. Crim. P. 4 ...................................................................................................... 8

## OTHER AUTHORITIES

31 C.F.R. § 535.329 (2019) .................................................................................... 15

31 C.F.R. § 560.314 (2019) .................................................................................... 15

31 C.F.R. § 561.203 (2019) .................................................................................... 15

Charles A. Wright, *Federal Practice and Procedure* (5th ed.) ................................ 23

Clark A. Nichols et al., 11 Cyc. of Fed. Proc. § 39:140 (3d ed.).............................. 9

David P. Stewart, Federal Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for Judges* (2nd ed. 2018) ........................................................................................ 3

*Jurisdictional Immunities of the State (Ger. v. It.)*, Judgment, 2012 I.C.J. Rep. 99 (Feb. 3) ......... 5

U.S. Dep't of the Treasury, *OFAC Regulations for the Financial Community* 4 (2012), https://www.treasury.gov/resource-center/sanctions/Documents/facbk.pdf ........................... 15

The government's Indictment of Halkbank overreaches and conflicts with governing law and the plain language of multiple statutes. The Second Circuit has already rejected the government's secondary sanctions theory of liability in the *Atilla* matter. The Indictment still contains multiple legal flaws, however, because this case includes not only a different defendant, but also a different indictment, and intervening developments in the law that require dismissal of all counts.

## I.       Halkbank Is Immune from Liability.

Under the Foreign Sovereign Immunities Act ("FSIA"), Halkbank is immune from criminal prosecution. The FSIA provides that "foreign state[s] shall be immune from the jurisdiction of the courts of the United States," 28 U.S.C. § 1604, and extends this immunity to any "instrumentality of a foreign state," *id.* § 1603(a). As alleged in the Indictment, Halkbank, which is majority-owned by the Turkish government, is a foreign instrumentality of the Republic of Turkey. And even if the FSIA does not apply, Halkbank is entitled to immunity under the common law. Thus, Halkbank is immune from jurisdiction and cannot be prosecuted.

### A.       The Indictment establishes that Halkbank is an instrumentality of Turkey.

The FSIA "creates a statutory presumption that a foreign state is immune from suit," which is triggered "if it is apparent from the pleadings or uncontested that the defendant is a foreign state." *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1124–25 (9th Cir. 2010) (internal quotation marks omitted); *see also Big Sky Network Can., Ltd. v. Sichuan Provincial Gov't*, 533 F.3d 1183, 1189 (10th Cir. 2008) (Gorsuch, J.) (finding immunity where complaint conceded defendants were political subdivisions of a foreign state). The FSIA defines a foreign instrumentality as, in relevant part, a corporate entity "a majority of whose shares . . . [are] owned by a foreign state." 28 U.S.C. § 1603(b). Here, the Indictment alleges that Halkbank is a

"foreign financial institution organized under the laws of and headquartered in Turkey" and that a "majority of Halkbank's shares are owned by the Government of Turkey."  Superseding Indictment ¶ 7, ECF No. 562.  Because at the motion-to-dismiss stage "a court must assume the truth of the allegations in the indictment," the foregoing allegations establish that Halkbank is an instrumentality of Turkey.  *United States v. Pirk*, 267 F. Supp. 3d 406, 415 (W.D.N.Y. 2017) (internal quotation marks omitted).

### B.      The FSIA's grant of immunity applies to criminal cases.

The FSIA's text—bolstered by both caselaw and a venerable canon of construction— makes clear that the statute's grant of immunity applies in criminal cases.

The Supreme Court has noted the "comprehensiveness of the statutory scheme in the FSIA," *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 437 (1989), and found that the statute "provides the sole basis for obtaining jurisdiction over a foreign state in federal court," *id.* at 439.  And the text of the FSIA on this point is clear: federal courts do not have jurisdiction over criminal actions against foreign states.  Section 1604's blanket mandate that "foreign state[s] shall be immune from the jurisdiction of the courts of the United States" does not distinguish between civil and criminal actions.  28 U.S.C. § 1604.  And the statute's jurisdiction-granting provision—which operates to confer jurisdiction where a foreign state is *not* entitled to immunity—is explicitly limited to "nonjury *civil action*[*s*] against a foreign state."  28 U.S.C. § 1330(a) (emphasis added).

Multiple courts have reached this conclusion.  In *Keller v. Central Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002), *abrogated on other grounds*, *Samantar v. Yousuf*, 560 U.S. 305 (2010), for example, the Sixth Circuit held that "the FSIA grants immunity to foreign sovereigns from criminal prosecution," reasoning that FSIA "does not limit [its] grant of immunity to civil cases."

2

*Id.* at 820; *see also Dale v. Colagiovanni*, 337 F. Supp. 2d 825, 842–43 (S.D. Miss. 2004), *rev'd on other grounds*, 443 F.3d 425 (5th Cir. 2006); *Gould, Inc. v. Mitsui Mining & Smelting Co.*, 750 F. Supp. 838, 843–44 (N.D. Ohio 1990).  The Federal Judicial Center has similarly explained that "nothing in the text or legislative history [of the FSIA] supports" the conclusion that "states or their agencies or instrumentalities can be subject to criminal proceedings in U.S. courts."  David P. Stewart, Federal Judicial Center, *The Foreign Sovereign Immunities Act: A Guide for Judges* 1 n.2 (2nd ed. 2018).  But some courts have adopted a contrary position.  *See, e.g.*, *Southway Constr. Co. v. Cent. Bank of Nigeria*, 198 F.3d 1210, 1214 & n.4 (10th Cir. 1999); *In re Grand Jury Proceeding Related to M/V Deltuva*, 752 F. Supp. 2d 173 (D.P.R. 2010); *United States v. Hendron*, 813 F. Supp. 973, 974–77 (E.D.N.Y. 1993).[1]  These decisions disregarded Section 1604's plain language and presumed, without explanation, that federal courts have jurisdiction over foreign states unless Congress limits jurisdiction.  That is backwards.[2]

The Sixth Circuit's approach aligns with *The Charming Betsy* canon, an "age-old canon of construction [that] instructs that 'an act of Congress ought never to be construed to violate the law of nations if any other possible construction remains.'"  *Fox TV, Inc. v. Aereokiller, LLC*, 851 F.3d 1002, 1011 (9th Cir. 2017) (quoting *Murray v. The Schooner Charming Betsy*, 6 U.S.

---

[1] The D.C. Circuit recently noted this Circuit split, but declined to "weigh in on [the] dispute." *In re Grand Jury Subpoena*, 912 F.3d 623, 627 (D.C. Cir. 2019) (per curiam), *cert denied*, 139 S. Ct. 914 (2019).  The Supreme Court has not addressed the split.

[2] The FSIA should also be interpreted in light of the preexisting common law approach, which, as discussed *infra* Section I.D., provides for absolute sovereign immunity.  "The FSIA is a statute that 'invade[d] the common law' and accordingly must be 'read with a presumption favoring the retention of long-established and familiar principles, except when a statutory purpose to the contrary is evident.'"  *Matar v. Dichter*, 563 F.3d 9, 13 (2d Cir. 2009) (alteration in original).

(2 Cranch) 64, 118 (1804)).  International law has long recognized the principle of foreign

sovereign immunity.  *See, e.g.*, *Jurisdictional Immunities of the State (Ger. v. It.)*, Judgment,

2012 I.C.J. Rep. 99, ¶¶ 53–58 (Feb. 3).  Thus, the FSIA should be interpreted so as not to violate

international law.

      **C.**      **Section 1605's exceptions do not apply.**

      <u>Section 1605's exceptions do not apply to criminal cases</u>.  The FSIA includes limited

exceptions to immunity, and all but two of these exceptions—waiver and commercial activity—

are limited to civil cases by their express terms.  *See* 28 U.S.C. §§ 1605(a)(3)–(5), (b)–(d),

1605A, 1605B.  Included among these exceptions are actions where "*money damages* are

sought" from a foreign state based on terrorism or "torture, extrajudicial killing, aircraft

sabotage, hostage taking, or the provision of material support . . . for such an act."  28 U.S.C. §

1605A, 1605B (emphasis added).  To construe the commercial activity exception in Section

1605(a)(2) to apply in criminal cases would produce an absurd result: a foreign sovereign could

be prosecuted for financial crimes, but not for acts such as terrorism or torture.  *See, e.g.*, *Pub.

Citizen v. DOJ*, 491 U.S. 440, 453–54 (1989) (discussing the absurdity doctrine); *but see In re

Grand Jury Subpoena*, 912 F.3d 623 (rejecting a categorical bar on applying Section 1605(a)

exceptions in a criminal case because these exceptions "apply to 'any case'").  To avoid such an

absurd result, Section 1605 must be interpreted to limit these exceptions to the civil context.

      <u>The "commercial activity" exception does not apply to sovereign activities</u>.  The

government has the burden of production to show that one of the exceptions to the FSIA applies.

*See, e.g.*, *Matar v. Dichter*, 563 F.3d at 12.  And even if Section 1605's exceptions *did* apply in

criminal cases, none would apply here.  Presumably, the government will argue that the

commercial activities exception applies here.  *See* 28 U.S.C. § 1605(a)(1).  But while private

banking activities may be generally commercial, the Supreme Court has found that a state

engages in commercial activity when "it exercises *only those powers that can also be exercised*

*by private citizens*, as distinct from those powers peculiar to sovereigns." *Saudi Arabia v.*

*Nelson*, 507 U.S. 349, 360 (1993) (internal quotation marks) (emphasis added).  Under this test,

Halkbank's facilitation of Iranian trade was a sovereign activity.  "Private citizens" did not have

the power to intermediate Iranian oil sales.  Rather, Turkey designated Halkbank, under the

National Defense Authorization Act ("NDAA"), to act on Turkey's behalf as the sole repository

of funds from Iranian oil sales.  The Turkish government's designation of Halkbank to fill this

critical function on its behalf was the result of discussions between the United States and Turkey

to allow the continued importation of Iranian oil so long as Turkey met goals to become less

dependent on Iranian oil.  Because it was acting on behalf of the Turkish state, Halkbank was

exercising a uniquely sovereign function.  *See also Anglo-Iberia Underwriting Mgmt. v. P.T.*

*Jamsostek*, 600 F.3d 171, 177 (2d Cir. 2010) (finding that commercial exception did not apply to

state-owned insurer because of the unique role it played as the country's "default health

insurer").  Thus, although Halkbank was engaged in banking activities, the commercial activity

exception does not apply.

     The "commercial activity" exception does not apply to the alleged conduct.  Even if

processing these transactions was not uniquely sovereign for purposes of the commercial activity

exception (which it was), the exception would still not apply.  The allegations in the Indictment

do not support—and in fact contradict—application of the exception.  For the exception to apply,

Halkbank's alleged actions must be based "upon an act outside the territory of the United States

in connection with a commercial activity of the foreign state elsewhere [that] causes a direct

effect in the United States." 28 U.S.C. § 1605(a)(2).[3]  None of Halkbank's activities are alleged

to have caused a "direct effect" in the United States.  A "direct effect" must "follow as an

immediate consequence of the defendant's activity."  *Atlantica Holdings v. Sovereign Wealth*

*Fund Samruk-Kazyna JSC*, 813 F.3d 98, 108 (2d Cir. 2016) (alterations and internal quotation

marks omitted).  A consequence is immediate if there is no intervening element between the

defendant's activity and the effect of that activity.  *See Guirlando v. T.C. Ziraat Bankasi A.S.*,

602 F.3d 69, 74 (2d Cir. 2010).  Such an effect need not be either substantial or foreseeable but

"'the requisite immediacy' is lacking where the alleged effect 'depend[s] crucially on variables

independent of' the conduct of the foreign state."  *Id.* at 75 (alteration in original); *see id.* at 75.

Jurisdiction under this provision "may not be predicated on purely trivial effects in the United

States."  *Republic of Arg. v. Weltover, Inc.*, 504 U.S. 607, 618 (1992).

Here, the government has not alleged sufficient facts tying Halkbank's conduct to

commercial activity with a direct effect in the United States.  Specifically, the government has

alleged that Reza Zarrab conducted gold and food trades with Iranian and Dubai entities through

Halkbank and then funneled the proceeds of those transactions through several channels and

jurisdictions, eventually allegedly converting some of the proceeds into U.S. dollars via U.S.

banks.  *See, e.g.*, ECF No. 562 ¶ 48.  This set of facts depends on intervening elements with

characters, intermediaries, and variables independent of the conduct of Halkbank.  The nexus to

the United States is tenuous at best; there is no allegation that any proceeds that originated at

---

[3] Section 28 U.S.C. § 1605(a)(2) also provides that the commercial activity exception may apply based on "a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere."  But Halkbank is not alleged to have carried on commercial activity or performed acts in the United States.  In fact, Halkbank has no presence (*e.g.*, branch) in the United States.

Halkbank *were required* to move through the United States.  *See, e.g.*, *Guirlando*, 602 F.3d at 75

(noting lack of FSIA jurisdiction when payment in United States "was not a contractual

requirement" (internal quotation marks omitted)).  That is demonstrated by the government's

own allegations, which claim that Zarrab helped move the equivalent of $20 billion out of

Halkbank—but only a fraction of that money is alleged to have ever touched a U.S. account.  *See*

ECF No. 562 ¶¶ 4, 64.  Nor is Halkbank alleged to have engaged in the transactions that actually

touched the U.S. financial system.  Thus, the U.S. activity could not have been an "immediate

consequence" of Halkbank's alleged activities, and any effect in the United States was purely

trivial.

> **D.     Even if the FSIA does not apply, Halkbank is entitled to immunity under the common law.**

The Supreme Court has made clear that where the FSIA does not apply, common-law

foreign sovereign immunity does apply.  *Samantar v. Yousuf*, 560 U.S. 305, 324 (2010) ("Even if

a suit is not governed by the [FSIA], it may still be barred by foreign sovereign immunity under

the common law.").  And at common law, "foreign states were absolutely immune from suit."

*Peterson*, 627 F.3d at 1126; *see also, e.g.*, *In re Investigation of World Arrangements*, 13 F.R.D.

280, 291 (D.D.C 1952) (quashing criminal subpoena against foreign instrumentality on sovereign

immunity grounds).  Thus, even if the FSIA does not address criminal actions, Halkbank remains

immune under common-law principles because statutory "silence does not suffice" to "abrogate"

the common law providing for sovereign immunity.  *Matar*, 563 F.3d at 14.

Accordingly, the Indictment must be dismissed because Halkbank is immune from

criminal prosecution.

**II.     The Indictment Should Be Dismissed Because This Court Does Not Have Personal Jurisdiction over Halkbank.**

Halkbank is organized under Turkish law, has no branches in the United States, and has no "continuous and systematic" contact with the United States.  Importantly, the government has not shown, and cannot show, that Halkbank engaged in conduct such that it could reasonably have foreseen being haled into court in the United States to defend itself in this case.  The Indictment therefore should be dismissed due to a lack of personal jurisdiction.

In *International Harvester v. Commonwealth of Kentucky*, the Supreme Court held that the Due Process Clause protects corporations from being forced to respond to criminal charges in fora with which they do not have sufficient contacts.  *See* 234 U.S. 579, 587 (1914). *International Harvester* was one of a long line of cases that led to the adoption of the "minimum contacts" test articulated in *International Shoe*.  *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 314, 315, 317, 319, 321 (1945) (repeatedly citing *International Harvester* in developing test). Although there is a dearth of caselaw discussing personal jurisdiction in the corporate-criminal context, the 2016 amendments to Federal Rule of Criminal Procedure 4 bring this issue to a head. Previously, a criminal summons generally had to be served upon an organizational defendant in the United States.  *See United States v. Pangang Grp. Co.*, 879 F. Supp. 2d 1052, 1057–58 (N.D. Cal. 2012).  Now, a criminal defendant may be served "by any . . . means that gives notice." Fed. R. Crim. P. 4(c)(3)(D)(ii).  Without due process protections, the government could subject any organization in the world to criminal jurisdiction in the United States, regardless of the organization's actual connection to the forum country.  *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) ("Personal jurisdiction, of course, restricts judicial power not as a matter of sovereignty, but as a matter of individual liberty, for due process protects the individual's right to be subject only to lawful power." (internal quotation marks omitted)).

Several courts have applied *International Shoe* in the criminal context.  For example, in *In re Marc Rich*, the Second Circuit analyzed the extent of the grand jury's investigatory power, which the court noted was coterminous with the power of the district court.  707 F.2d 663, 665–67 (2d Cir. 1983).  Holding that the government has the burden of demonstrating sufficient contacts with the forum to enforce a grand jury subpoena, the court reasoned that "[a] federal court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction."  *Id.* at 669; *see also In re Sealed Case*, 832 F.2d 1268, 1274 (D.C. Cir. 1987) (finding insufficient contacts to issue a grand jury subpoena), *abrogated on other grounds by Braswell v. United States*, 487 U.S. 99 (1988).  At least two courts have applied this principle to corporate criminal defendants.  *United States v. Nippon Paper Indus.*, 944 F. Supp. 55, 60 (D. Mass. 1996) (rejecting the argument that "Congress can authorize federal courts to exercise jurisdiction over an alien corporation, without regard to the contacts of that corporation to the United States"), *rev'd on other grounds*, 109 F.3d 1 (1st Cir. 1997); *United States v. Chitron Elecs. Co.*, 668 F. Supp. 2d 298, 303 (D. Mass. 2009); *see also* Clark A. Nichols et al., 11 Cyc. of Fed. Proc. § 39:140 (3d ed.) ("To establish personal jurisdiction over a foreign corporation charged with a crime, the government has the burden of demonstrating via indictment or affidavits: (1) the effects necessary to establish personal jurisdiction, and (2) minimum contacts between the corporation or its agent and the United States.").

To meet the requirements of the Due Process Clause, the government must establish either (1) that Halkbank has "continuous and systematic" contacts with the United States such that it can be regarded as "at home" here, or (2) that the conduct giving rise to the alleged crimes "arise[s] out of" activities by Halkbank in the United States and the exercise of jurisdiction

9

comports with notions of "fair play and substantial justice." *See Helicopteros Nacionales de Colom., S.A. v. Hall*, 466 U.S. 408, 414 (1984) (internal quotation marks omitted); *Int'l Shoe*, 326 U.S. at 320. The government cannot do either.

First, there are no allegations suggesting that Halkbank has such continuous and systematic contacts that it is "at home" and therefore subject to general jurisdiction in this Court. A corporation generally is "at home" only in its place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 629 (2d Cir. 2016). The presence of correspondent accounts in Manhattan does not place a bank within the general jurisdiction of the Southern District of New York. *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014) (finding no general jurisdiction over a foreign bank, despite business and branch offices in New York); *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 680 (2d Cir. 2013) ("[W]e conclude that the alleged use of correspondent bank accounts and the maintenance of a website that allows account holders to manage their accounts are insufficient to support the exercise of general personal jurisdiction."). The government acknowledges that Halkbank is incorporated, and has its principal place of business, in Turkey. ECF No. 562 ¶ 7. Moreover, the Indictment scarcely alleges any "continuous" connections between Halkbank and the United States other than the maintenance of correspondent accounts. *See generally id.* The Court therefore does not have general jurisdiction over Halkbank. *See Gucci Am., Inc.*, 768 F.3d at 135.

Nor does the Court have specific jurisdiction over Halkbank. For the Court to assert such jurisdiction, the government must make "non-conclusory and fact-specific" showings that (1) Halkbank purposefully availed itself of the United States, *and* (2) the alleged crime arises out of that purposeful availment. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Int'l*

10

*Shoe*, 326 U.S. at 319; *Contant v. Bank of Am. Corp.*, 385 F. Supp. 3d 284, 290 (S.D.N.Y. 2019). To determine whether a defendant has "purposefully availed" itself of a forum, courts look to whether, at the time of the alleged conduct, the defendant could reasonably have expected that it could be called to defend itself there. *Burger King Corp*, 471 U.S. at 474. It is not enough for the defendant's contact with the forum to have been foreseeable; the defendant must have engaged in conduct "intentional[ly] . . . aimed at the forum." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674 (internal quotation marks omitted). Specific jurisdiction cannot be based solely on the actions of a co-conspirator; each defendant over which the court asserts jurisdiction must have engaged in "conspiracy-related conduct" that purposefully availed itself of the forum. *Contant*, 385 F. Supp. 3d at 294. Finally, jurisdiction cannot be based solely on a non-resident's "getting information from or giving information to the government, or getting the government's permission to do something." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991) (internal quotation marks omitted).

The government has not alleged facts giving rising to specific jurisdiction over Halkbank. The alleged conduct underlying the charges against Halkbank has no connection to the United States, and there are no allegations that Halkbank purposefully availed itself of the laws and protections of the United States. The sole allegations connecting the supposed conspiracy to the United States are (1) that, after Halkbank allegedly facilitated gold and food transactions, Zarrab later engaged the U.S. banking system by causing other banks to transfer funds through U.S. accounts, and (2) that Halkbank employees made misstatements to U.S. regulators. The former allegation does not suffice. Even if Zarrab, as a co-conspirator, availed himself of the United States, his conduct does not subject all co-conspirators to jurisdiction. *See Contant*, 385 F. Supp. 3d at 294. And even if Halkbank could have foreseen that proceeds from the alleged gold

transactions would eventually enter the U.S. financial system, foreseeability alone is insufficient to confer jurisdiction.  *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d at 674.  With respect to the allegation regarding regulators, Halkbank's alleged actions cannot confer jurisdiction because the alleged interactions were limited to providing information to U.S. regulators. *Klinghoffer*, 937 F.2d at 51.  The government cannot meet its burden of establishing personal jurisdiction.

### III.   The Indictment Should Be Dismissed Because the Statutes at Issue Do Not Apply Extraterritorially.

This case and its brethren represent novel prosecutions.  Before this matter, the government had never sought to enforce criminally an alleged attempt to avoid secondary sanctions.  The Second Circuit recently rejected this theory, precluding the government from doing so here.  *See United States v. Atilla*, ---F.3d---, 2020 WL 4045356, at *5 (2d Cir. July 20, 2020).  But that now-rejected theory is not the only unique aspect of this prosecution.  The Iranian sanctions framework is not designed to criminally prosecute a foreign actor for foreign conduct—legal under foreign law—based solely on incidental contact with U.S. correspondent banks of banks other than Halkbank.  And for good reason: this framework is designed to govern the actions of U.S. persons and the movement of U.S. exports; it does not purport to govern the world.  The government's efforts here run up against the strong-form presumption against extraterritoriality laid down by the Supreme Court in *RJR Nabisco, Inc. v. European Community*, 136 S. Ct. 2090 (2016), and subsequently adopted by the Second Circuit in the criminal context. This framework forecloses the IEEPA count and casts serious doubt on the other charges.  While Halkbank recognizes that the Court found similar arguments unpersuasive in related cases, it advances them here to highlight changes in Second Circuit doctrine since the Court last visited the issue.

**A.      The Second Circuit recently adopted a strong presumption against extraterritoriality in the criminal context.**

"It is a basic premise of our legal system that, in general, 'United States law governs domestically but does not rule the world.'" *RJR Nabisco*, 136 S. Ct. at 2100 (quoting *Microsoft Corp. v. AT & T Corp.*, 550 U.S. 437, 454 (2007)).  This fundamental principle is effectuated through the presumption against extraterritoriality: "[a]bsent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application."  *Id.*  But until recently, Second Circuit extraterritoriality doctrine was murky.  Some of the confusion stemmed from *United States v. Bowman*, 260 U.S. 94 (1922), which held that the presumption against extraterritoriality should not apply to criminal statutes which are "not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated."  *Id.* at 98. Several Second Circuit panels relied on *Bowman* to reject the presumption's applicability in the criminal context altogether, *see United States v. Siddiqui*, 699 F.3d 690, 700–01 (2d Cir.), *as amended* (Nov. 15, 2012); *United States v. Al Kassar*, 660 F.3d 108, 118 (2d Cir. 2011), but a subsequent panel rejected this approach, *see United States v. Vilar*, 729 F.3d 62, 73 (2d Cir. 2013).  There was no standard approach to determining when the presumption was rebutted or when domestic conduct rendered the presumption inapplicable.

This all changed in the past three years.  Since the Court last visited the issue, the Second Circuit has adopted the Supreme Court's modern presumption against extraterritoriality in the criminal context.  *See, e.g.*, *United States v. Napout*, 963 F.3d 13, 177–79 (2d Cir. 2020); *Bascuñán v. Elsaca*, 927 F.3d 108, 120–25 (2d Cir. 2019) (examining wire, mail, and bank fraud predicates in a civil RICO case); *United States v. Hoskins*, 902 F.3d 69, 95–97 (2d Cir. 2018).

13

The Supreme Court's framework represents a clear and particularly strong approach to the presumption. *See, e.g.*, *RJR Nabisco*, 136 S. Ct. at 2100–01.

Under *RJR Nabisco*, courts follow a two-step framework to determine whether a statute applies to a foreign actor. First, courts must ask "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially." *RJR Nabisco*, 136 S. Ct. at 2101. This is not a blanket determination: even if the presumption has been rebutted, any extraterritorial application is limited to the specific provisions authorizing such application. *Id.*; *see also Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 265 (2010). Second, if the presumption against extraterritoriality is not rebutted, courts must "determine whether the case involves a domestic application of the statute." *RJR Nabisco*, 136 S. Ct. at 2101. This determination hinges on the statute's "focus": "[i]f the conduct relevant to the statute's focus occurred in the United States, then the case involves a permissible domestic application even if other conduct occurred abroad; but if the conduct relevant to the focus occurred in a foreign country, then the case involves an impermissible extraterritorial application *regardless of any other conduct that occurred in U.S. territory*." *Id.* (emphasis added). "'[M]erely incidental'" conduct does not have "'primacy for the purposes of [this] analysis.'" *Bascuñán*, 927 F.3d at 122 (quoting *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138 (2018)).

## B.     The Indictment improperly applies U.S. law extraterritorially.

Conspiracy to Violate IEEPA. The deficiencies of the IEEPA conspiracy charge (Count Two) under this framework are clear. First, the presumption against extraterritoriality is not rebutted. The fact that a statute is internationally-focused or that *some* of its provisions may apply extraterritorially does not permit the extraterritorial application of other provisions. *RJR*

*Nabisco*, 136 S. Ct. at 2101.  IEEPA's jurisdictional provision limits the statute's application to "any person, or with respect to any property, subject to the jurisdiction of the United States."  50 U.S.C. § 1702(a)(1).  The phrase "person . . . subject to the jurisdiction of the United States" has long been understood in the sanctions context to mean only (1) U.S. citizens, (2) individuals "actually within" the United States, (3) U.S. corporations, or (4) organizations owned by the foregoing.  *See, e.g.*, 31 C.F.R. § 535.329 (2019); *see also* 31 C.F.R. § 560.314 (2019).  OFAC's compliance guidelines reflect this understanding.  *See, e.g.*, U.S. Dep't of the Treasury, *OFAC Regulations for the Financial Community* 4 (2012), https://www.treasury.gov/resource-center/sanctions/Documents/facbk.pdf.  And the phrase "with respect to any property" is understood as authorizing the President to freeze or "block" certain foreign property within the United States.[4]

The only domestic connection alleged here is the use of certain domestic banks to process dollar transactions.  The mere existence of such transactions, however, does not end the analysis.  Instead, "this conduct is domestic when a core component" of the alleged conspiracy was use of these domestic accounts.  *Bascuñán*, 927 F.3d at 124.  The fact that the "domestic" transfers were peripheral to the alleged conspiracy is evident from the Indictment: less than five percent of the allegedly "illicitly transferred" funds passed through domestic accounts.  ECF No. 562 ¶¶ 4,

---

[4] The extraterritoriality analysis begins and ends with IEEPA, as regulations cannot apply more broadly than their authorizing statute.  *See City of Arlington v. F.C.C.*, 569 U.S. 290, 301 (2013).  In this case, however, the regulatory framework enacted pursuant to IEEPA reinforces the conclusion that extraterritorial application is inappropriate.  Far from manifesting a clear intent to apply extraterritorially, the ITSR regulations at issue govern exports "from the United States . . . to Iran" or the reexportation of such U.S. exports to Iran.  31 C.F.R. §§ 560.204–05 (emphasis added).  The existence of a secondary sanctions regime further supports this conclusion.  See 31 C.F.R. § 561.203 (2019).

48; *see also Napout*, 963 F.3d at 180–81 (finding domestic wire transfers to be "central" to scheme because more than two-thirds of bribes were paid used domestic wires).

Bank Fraud.  The bank fraud charges (Counts Three and Four) fail on similar grounds. The bank fraud statute does not apply extraterritorially.  *Bascuñán*, 927 F.3d at 124.  And the Second Circuit has suggested that the statute's "focus" for purposes of the domestic-conduct analysis is the *scheme* to defraud rather than its ultimate execution.  *See id.* at 123–25.  In *Bascuñán*, the Second Circuit found that a bank fraud scheme's conduct was domestic "when a core component of the scheme to defraud was the use of domestic mail or wires to direct the theft or misappropriation of property."  *Id.* at 124.  But *Bascuñán* dealt with a scheme involving repeated orders to transfer money *from* U.S. domestic accounts, as well as the use of shell corporations and fraudulent invoices.  *Id.* at 112–14, 124–25.  Here, the core conduct associated with the alleged scheme occurred abroad.  Any contact with U.S. financial institutions through correspondent relationships that belonged to banks in Dubai (not Halkbank) was merely incidental.  *See* ECF No. 562 ¶ 48 (describing movement of gold and funds through Dubai).

Conspiracy to Defraud the United States.  Count One, conspiracy to defraud the United States, hinges on the continued validity of *United States v. Bowman*, 260 U.S. 94 (1922). *Bowman*'s exception to the presumption against extraterritoriality for obstruction or fraud against the government could appear at first to apply to this count.  *See Vilar*, 729 F.3d at 73; *United States v. Cotten*, 471 F.2d 744, 750 (9th Cir. 1973).  But *Bowman* is in fundamental tension with the Supreme Court's current approach to the presumption, *see United States v. Perez*, 962 F.3d 420, 439 n.5 (9th Cir. 2020), and the Second Circuit has not cited *Bowman* for this point in the

post-*RJR Nabisco* era.[5]  Moreover, the application of *Bowman* in this case is doubly problematic because it would criminalize extraterritorial conduct based on a judge-made "common law crime."  *United States v. Coplan*, 703 F.3d 46, 61–62 (2d Cir. 2012).

These considerations counsel in favor of applying *RJR Nabisco* rather than *Bowman*.  Under *RJR Nabisco*, the question of extraterritorial application is clear.  Section 371 contains no indication of an extraterritorial application.  Instead, it criminalizes defrauding the government "in any manner or for any purpose"—precisely the sort of broad language the Supreme Court has held insufficient to rebut the presumption.  *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013).  Nor did the alleged core conduct related to the statute's focus occur domestically.

Money Laundering.  The money laundering statute includes an express extraterritoriality provision that (as relevant here) applies if "the conduct occurs in part in the United States."  18 U.S.C. § 1956(f).  "Conduct" is not a defined term in the statute, but "conducts" is defined to "include[] initiating, concluding, or participating in initiating, or concluding a transaction."  *Id.* § 1956(c)(2).  The Indictment does not allege that such actions occurred in the United States, and "the presumption against extraterritoriality operates to limit th[ose] provision[s] to [their] terms."  *RJR Nabisco*, 136 S.Ct. at 2102 (*quoting Morrison*, 561 U.S. at 265).  Without such a limitation, the money laundering statute would touch any criminal scheme anywhere in the world simply because U.S. dollars were transferred.  Incredibly, under such a reading Section 1956(f)'s "conduct" limitations on extraterritorial application would be superfluous, because Section 1956(a)(2)(A), by its own terms, applies to all transactions that touch the United States.  This

---

[5] The Second Circuit has cited *Bowman* once in this period, for the distinct proposition that the proper extraterritorial application of an offense like conspiracy is coterminous with that of the underlying substantive offense.  *See United States v. Hoskins*, 902 F.3d 69, 96 (2d Cir. 2018).

broad reading of "conduct" is at odds with the Supreme Court's current approach to the presumption against extraterritoriality.[6]

## IV.     The Indictment Fails to Allege Bank Fraud or Conspiracy to Commit Bank Fraud.

Counts Three and Four of the Indictment charge Halkbank with violating and conspiring to violate the bank fraud statute by "knowingly execut[ing] and attempt[ing] to execute a scheme or artifice [1] to defraud a financial institution, the deposits of which were then insured by the FDIC, and [2] to obtain moneys, funds, credits, assets, securities, and other property owned and under the custody and control of a financial institution by means of false and fraudulent pretenses, representations, and promises."  ECF No. 562 ¶¶ 73, 75–76 (citing 18 U.S.C. § 1344(1)–(2)).  These counts fail to allege the requisite elements and must be dismissed.

### A.     The Indictment fails to allege a scheme to defraud a U.S. bank.

As an initial matter, the Indictment fails to establish a scheme to defraud, which requires a "pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property, with the intent to victimize the institution by exposing it to actual or potential loss."  *United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992).

The Indictment fails to allege a material misrepresentation.  First, the Indictment does not allege any material misrepresentations made to a U.S. bank.  A wire transfer is not itself a representation.  *See Williams v. United States*, 458 U.S. 279, 284 (1982) ("[T]echnically speaking, a check is not a factual assertion at all, and therefore cannot be characterized as 'true'

---

[6] To the extent that the Court reaches the second step of the *RJR Nabisco* analysis, the "focus" of the scheme alleged here could not have been financial transactions in the United States as described more fully above.  *But see United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 694 (S.D.N.Y. 2017) (holding under different portion of money laundering statute "that use of U.S. correspondent banks to launder illegal proceeds qualifies as domestic conduct").

or 'false'"); *United States v. Briggs*, 939 F.2d 222, 226 (5th Cir. 1991) ("The bare act of instructing a bank to transfer funds is not a factual representation; thus, it cannot be a *mis*representation, a *false* representation, or *any kind* of representation").

Nor do financial instruments make any implicit representations about the underlying transaction.  *See Williams*, 458 U.S. at 285 (presenting a check supported by insufficient funds does not "make any representation as to the state of [the depositor's] bank balance"); *see also United States v. Laljie*, 184 F.3d 180, 191 (2d Cir. 1999) (filling in check's blank payee line is not a representation about payee's legitimacy).  While instructing a bank to process a transaction could involve a misrepresentation, the Indictment fails to allege any here.  *Compare United States v. Rodriguez*, 140 F.3d 163, 166–67 (2d Cir. 1998) (presenting checks procured by fraud to a bank does not constitute a misrepresentation of depositor's authority), *with United States v. Morgenstern*, 933 F.2d 1108, 1113 (2d Cir. 1991) (presenting checks procured by fraud *and* falsifying checks by changing payee names and inflating dollar amounts did constitute a misrepresentation of depositor's authority).[7]

The Indictment fails to allege intent to harm a U.S. bank.  Second, the Indictment not only fails to allege specific intent to harm a U.S. bank, it alleges that Halkbank "intended to deceive U.S. *regulators* and *foreign* banks."  ECF No. 562 ¶ 1 (emphasis added).  Intent to "defraud a financial institution . . . is § 1344(1)'s whole sum and substance."  *Loughrin v. United*

---

[7] For this reason, circuit precedent regarding "half-truths" in the context of mail and wire fraud is inapplicable to bank fraud where the only alleged misrepresentation is the financial instrument itself.  Were it to be applied, every fraud that happens to involve valid checks or wires would be subject to § 1344, which is contrary to precedent on misrepresentations in bank fraud.

*States*, 573 U.S. 351, 357 (2014); *United States v. Bouchard*, 828 F.3d 116, 124–26 (2d Cir. 2016) (confirming *Loughrin*'s mandate that § 1344(1) "requires . . . specific intent").

Section 1344(1) does not cover frauds where "some other person other than a federally insured institution was defrauded in a way that happened to involve banking, without evidence that such institution was an intended victim." *Laljie*, 184 F.3d at 189–90.  Even if a U.S. bank is "directly affected," a conviction under § 1344(1) fails absent "intent to defraud the financial institution *itself*." *Bouchard*, 828 F.3d at 125; *see also Laljie*, 184 F.3d at 190 (noting that a bank can be "made an unwitting instrumentality" of a fraud without being its victim).  In *Bouchard*, the Second Circuit reversed the convictions of defendants who defrauded a non-federally insured entity, a subsidiary of a federally insured bank, because they lacked intent to specifically defraud the parent bank.  828 F.3d at 124.  The government argued—and the court rejected—that the bank was "directly affected" because it "funded [the subsidiary's] loans and was liable for its losses." *Id.* at 124.  Similarly, here the government alleges that Halkbank intended to deceive non-federally insured entities through transactions that affected U.S. banks. ECF No. 562 ¶¶ 1, 6.

The Indictment also does not allege that Halkbank intended to victimize a U.S. bank "by exposing it to actual or potential loss." *Stavroulakis*, 952 F.2d at 694.  Even under the right to control theory, which should not apply in the bank fraud context,[8] a defendant must still "intend

---

[8] The Second Circuit has held that the "right to control" theory is applicable to bank fraud. *See United States v. Calderon*, 944 F.3d 72, 88 (2d Cir. 2019).  This application, which bleeds over from mail/wire fraud jurisprudence, cannot be squared with recent Supreme Court cases on both bank fraud (*see, e.g.*, *Loughrin v. United States*, 573 U.S. 351 (2014)) and wire fraud (*see, e.g.*, *Kelly v. United States*, 140 S. Ct. 1565 (2020).  To the extent the Court finds this theory applicable here, Halkbank respectfully preserves the issue for appeal.

to injure the person or entity misled," which is lacking here.  *United States v. D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994).

### B.      The Indictment fails to allege a scheme to obtain bank property by means of false or fraudulent pretenses, representations, or promises.

The allegations in the Indictment also fail to establish that Halkbank schemed to "obtain moneys, funds, credits, assets, securities, and other property owned by and under the custody and control of such financial institution, by means of false and fraudulent pretenses, representations, and promises."  ECF No. 562 ¶ 73 (citing 18 U.S.C. § 1344(2)).

The Indictment fails to allege a false statement.  The Indictment once again fails to allege a basic requirement—the use of "false or fraudulent pretenses, representations, or promises."  18 U.S.C. § 1344(2).  The same argument from Part IV(A) above applies with equal force here.

The Indictment fails to allege a scheme to obtain property owned or controlled by a U.S. bank "by means of" a false statement.  The Indictment further fails to allege that Halkbank intended to obtain bank property under a U.S. bank's custody or control.  *See Loughrin*, 573 U.S. at 355 ("We refer to that element . . . as 'intent to obtain bank property.'").  U.S. banks are only allegedly involved as intermediaries providing services, and the Indictment does not contain any allegations that Halkbank, Zarrab, or anyone else sought to obtain property, much less property over which a U.S. bank had custody or control.  *See, e.g.*, *United States v. Blackmon*, 839 F.2d 900, 903, 904–05 (2d Cir. 1988).

Moreover, the property must be obtained "by means of" a false statement.  18 U.S.C. § 1344(2).  This requires more than showing that a bank "would not have disbursed the funds had the misrepresentation never occurred," or that the false statement "counts as the but-for cause."  *Loughrin*, 573 U.S. at 365.  A direct relational link must exist between the alleged statement and the bank being deceived into releasing its property.  *Id.* at 362–63; *see also Bouchard*, 828 F.3d

at 126 ("[Section] 1344(2) should not be read to federalize frauds that are only tangentially related to the banking system, which is § 1344's core concern." (brackets and internal quotation marks omitted)).  The Indictment fails to link any false statement to any instance of a U.S. bank being "naturally induc[ed]" to "part with its money."  *See Loughrin*, 573 U.S. at 365.  And "where no false statement" goes to a U.S. bank, "the fraud is not the means of obtaining bank property."  *Id.*  Accordingly, the bank fraud charge under § 1344(2) fails.

## V.      Count Six Should Be Dismissed as Multiplicitous.

The Indictment is multiplicitous because Halkbank is impermissibly charged with the same crime twice.  Count Two of the Indictment charges Halkbank with willfully conspiring to "provide financial services to Iran" in violation of IEEPA.  Count Six of the indictment charges Halkbank with willfully conspiring to "transmit" and "transfer" funds "to places in the United States from and through places outside the United States, with the intent to promote the carrying on of specified unlawful activity," namely, "the illegal export of services to Iran" in violation of the IEEPA.  The government details the same scheme consisting of the same transfers of funds, from the same accounts, on the same dates as the basis for the two charges.  After the Second Circuit's ruling in *Atilla* that limited this case to only primary sanctions, the alleged conspiracy to violate IEEPA is limited to a conspiracy based *entirely on the transfer of funds through U.S. financial institutions*—the *same transfer of funds* at issue in the alleged conspiracy to commit money laundering.

An indictment is multiplicitous when it charges two or more crimes in separate counts "when in fact and law, only one crime has been committed."  *United States v. Holmes*, 44 F.3d 1150, 1553–54 (2d Cir. 1995).  If each count requires proof of an additional element that the other does not, then the charges are not multiplicitous.  *Blockburger v. United States*, 284 U.S.

22

299, 304 (1932); *accord United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015) (explaining the court looks to the "minimum amount of activity for which criminal liability attaches" (internal quotation marks omitted)).  If the two offenses require proof of the same elements, then "they are the same offense and double jeopardy bars additional punishment and successive prosecution."  *United States v. Basciano*, 599 F.3d 184, 197 (2d Cir. 2010) (internal quotation marks omitted).  Moreover, if the elements of one charge are "subsumed" within the other charge, the counts are multiplicitous.  *See United States v. Zvi*, 168 F.3d 49, 57 (2d Cir. 1999).

The danger of multiplicitous charges is not just that a defendant will ultimately be punished more than once for a single crime.[9]  Multiplicitous charges can "improperly prejudice a jury by suggesting that a defendant has committed not one but several crimes."  *United States v. Reed*, 639 F.2d 896, 904 (2d Cir. 1981); *see also* 1 Charles A. Wright, *Federal Practice and Procedure* § 142 (5th ed.).  That risk is particularly acute here because the government has spun one alleged scheme into *four different conspiracy counts* as well as two substantive counts.

The same underlying proof is necessary for an IEEPA conspiracy and money laundering conspiracy because 18 U.S.C. §1956(a)(2)(A) does not require that the transferred funds be generated by an unlawful activity.  The elements of the money laundering conspiracy count are entirely subsumed within the elements of the IEEPA count precisely because there is no "two-step requirement" present in "the construction of § 1956(a)(2)" as there is in other federal money laundering statutes.  *United States v. Piervinanzi*, 23 F.3d 670, 680 (2d Cir. 1994).  Unlike the

---

[9] As a long line of Second Circuit cases show, violations of the Double Jeopardy Clause can be remedied post-trial before conviction is entered "so long as no more than one punishment is eventually imposed."  *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006) (per curiam).  That does not, however, address the prejudice issue that is particular to this case.

charges at issue in *Piervinanzi*, here, the elements of the money laundering conspiracy charge are fundamentally indistinguishable from the elements of the IEEPA conspiracy charge.  It strains credulity that a jury could find Halkbank conspired to (i) transport, transmit, or transfer funds, (ii) to places in the United States from and through places outside the United States, (iii) with the intent to promote the carrying on of specified unlawful activity, in this case "the illegal export of [financial] services to Iran" in violation of 18 U.S.C. § 1956(a)(2) without simultaneously finding Halkbank conspired to willfully commit funds to Iran in violation of IEEPA.  *Cf. United States v. Jahedi*, 681 F. Supp. 2d 430, 437 (S.D.N.Y. 2009) (noting the court's "skepticism" regarding "the government's assertion that the jury could conclude [defendant] intended to obstruct a pending judicial proceeding, but decide that he did not attempt to conceal or destroy a document that would be used in an official proceeding").

The money laundering conspiracy charge is identical to the IEEPA conspiracy charge. The same transactions are at issue in both charges, and the government cannot prove the elements of one charge without simultaneously proving the elements of the other.  The money laundering conspiracy charge must be dismissed.

**VI.    Count One Should Be Dismissed Because the Indictment Does Not Allege a Conspiracy to "Defraud" the United States.**

Although the plain language of 18 U.S.C. § 371 criminalizes conspiracies to "defraud," this prong has been broadly construed to include any effort to interfere with lawful governmental functions (in addition to depriving the government of actual property through deceit).  *See, e.g. United States v. Klein*, 247 F.2d 908 (2d Cir. 1957).  This interpretation arises out of two Supreme Court cases from 1910 and 1924.  *See Haas v. Henkel*, 216 U.S. 462 (1910); *Hammerschmidt v. United States*, 265 U.S. 182 (1924).  This overly broad interpretation is unmoored from the common law definition of "defraud," which requires a deprivation of actual

24

property.  Indeed, the *Klein* interpretation effectively criminalizes any alleged unethical interactions with the government, which the Supreme Court has expressed concern about in its more recent criminal jurisprudence, including its *McDonnell* decision.  *See, e.g. McDonnell v. United States*, 136 S. Ct. 2355, 2373 (2016).  And the Second Circuit itself has expressed "considerable judicial skepticism" about this interpretation of Section 371.  *Coplan*, 703 F.3d at 61–62.

Dated: August 10, 2020              Respectfully submitted,

                                    WILLIAMS & CONNOLLY LLP


                                    /S *Robert M. Cary*

                                    Robert M. Cary
                                    Simon A. Latcovich
                                    James W. Kirkpatrick
                                    Damayanti Desai
                                    725 Twelfth Street, N.W.
                                    Washington, DC 20005

                                    650 Fifth Avenue, Suite 1500
                                    New York, NY 10019
                                    Phone: (202) 434-5000
                                    Fax:    (202) 434-5029
                                    E-mail: rcary@wc.com
                                            slatcovich@wc.com
                                            jkirkpatrick@wc.com
                                            ddesai@wc.com