UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                             :

  UNITED STATES OF AMERICA        :

                             :

        - v. -               :      S6 15 Cr. 867 (RMB)

                             :

  TURKIYE HALK BANKASI, A.S.,    :

    a/k/a "Halkbank,"           :

                             :

          Defendant.        :

                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TURKIYE HALK BANKASI, A.S.'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
*Attorney for the United States of America*

Michael D. Lockard
Sidhardha Kamaraju
David W. Denton, Jr.
Jonathan Rebold
Kiersten Fletcher
Assistant United States Attorneys
    *Of Counsel*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................ 1

Background .......................................................................................... 2

    A.    The Indictment .................................................................... 2

    B.    Offense Conduct ................................................................. 2

Discussion ........................................................................................... 4

I.    Foreign Sovereign Immunity Does Not Bar This Prosecution .......................................... 4

II.    The Court Has Personal Jurisdiction Over Halkbank ...................................... 15

III.    The Statutes Charged in the Indictment Properly Apply to Halkbank's Conduct ........... 17

CONCLUSION .................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171 (2d Cir. 2010) .................... 14

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428 (1989) ............................ 6, 8

*Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*,

813 F.3d 98 (2d Cir. 2016) ............................................................................................... 12, 14

*Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) ......................................................... 19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ................................................. 16

*Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238 (2d Cir. 1994) ............................... 15

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992) ................................... 13

*Ford v. United States*, 273 U.S. 593 (1927) .................................................................. 16

*Frisbie v. Collins*, 342 U.S. 519 (1952) ....................................................................... 16

*Gross v. United States*, 140 S. Ct. 1224 (2020) ........................................................... 23

*Hanson v. Denckla*, 357 U.S. 235 (1958) ..................................................................... 17

*Illinois v. Lidster*, 540 U.S. 419 (2004) ......................................................................... 8

*In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019) ............................... 5, 6, 8, 13

*International Shoe v. State of Washington*, 326 U.S. 310 (1945) ................................... 15

*Lindh v. Murphy*, 521 U.S. 320 (1997) ........................................................................... 7

*Matar v. Dichter*, 563 F.3d 9 (2d Cir. 2009) .................................................................. 9

*Matter of Marc Rich & Co., A.G.*, 707 F.2d 663 (2d Cir. 1983) ............................... 16, 17

*Morton v. Mancari*, 417 U.S. 535 (1974) ....................................................................... 5

*OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390 (2015) ......................................... 10

*Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555 (2d Cir. 2020) ..................................... 10, 11, 13, 14

*Pasquantino v. United States*, 544 U.S. 349 (2005) .................................................. 8, 18

*Petersen Energía Inversora S.A.U. v. Argentine Republic*,

895 F.3d 194 (2d Cir. 2018) ........................................................... 10, 12, 14

*Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) ................................ 9

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) ................................ 11, 12

*Republic of Austria v. Altmann*, 541 U.S. 677 (2004) .................................................. 9

*RJR Nabisco v. European Community*, 136 S. Ct. 2090 (2016) ................................ 19

*Samantar v. Yousef*, 560 U.S. 305 (2010) .......................................................... 6, 8, 9

*Saudi Arabia v. Nelson*, 507 U.S. 349 (1993) .......................................................... 10

*Shaw v. United States*, 137 S. Ct. 462 (2016) ........................................................ 22

*Southway v. Central Bank of Nigeria*, 198 F.3d 1210 (10th Cir. 1999) ........................ 6

*United States v. Al Kassar*, 660 F.3d 108 (2d Cir. 2011) ...................................... 7, 15

*United States v. Alvarez-Machain*, 504 U.S. 655 (1992) ............................................ 16

*United States v. Amrep Corp.*, 560 F.2d 539 (2d Cir. 1977) ...................................... 14

*United States v. Atilla*, 966 F.3d 118 (2d Cir. 2020) ................................ 10, 18, 19, 21

*United States v. Banki*, 685 F.3d 99 (2d Cir. 2012) .................................................. 18

*United States v. Basciano*, 599 F.3d 184 (2d Cir. 2010) ............................................ 24

*United States v. Bowman*, 260 U.S. 94 (122) .......................................................... 20

*United States v. Buck*, No. 13 Cr. 282 (VM),

2017 WL 4174931 (S.D.N.Y. Aug. 28, 2017) .......................................................... 20

*United States v. Burnett*, 10 F.3d 74 (2d Cir. 1993) .................................................. 22

*United States v. Dixon*, 509 U.S. 688 (1993) .......................................................... 24

*United States v. Epskamp*, 832 F.3d 154 (2d Cir. 2016) ............................................ 20

iii

*United States v. Hendron*, 813 F. Supp. 973 (E.D.N.Y. 1993) ...................................................... 7

*United States v. Lebedev*, 932 F.3d 40 (2d Cir. 2019) .............................................................. 23

*United States v. Lussier*, 929 F.2d 25 (1st Cir. 1991) .............................................................. 16

*United States v. Maruyasu Indus. Co.*, 229 F. Supp. 3d 659 (S.D. Ohio 2017) ........................... 16

*United States v. McLaughlin*, 949 F.3d 780 (2d Cir. 2019) .................................................. 5, 15

*United States v. Medina*, S3 13 Cr. 272 (PGG),

2014 WL 3057917 (S.D.N.Y. Jul. 7, 2014) ......................................................................... 23

*United States v. Morgenstern*, 933 F.2d 1108 (2d Cir. 1991) ..................................................... 22

*United States v. Morton*, 467 U.S. 822 (1984) ........................................................................ 6

*United States v. Noriega*, 117 F.3d 1206 (11th Cir. 1997) ......................................................... 9

*United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684 (S.D.N.Y. 2017) ....................... 19

*United States v. Rendon*, 354 F.3d 1320 (11th Cir. 2003) ......................................................... 16

*United States v. Siddiqui*, 699 F.3d 690 (2d Cir. 2011) ............................................................ 20

*United States v. Stavroulakis*, 952 F.2d 686 (2d Cir. 1992) ....................................................... 22

*United States v. Steinberg*, 62 F.2d 77 (2d Cir. 1932) .............................................................. 15

*United States v. Stringer*, 730 F.3d 120 (2d Cir. 2013) ............................................................ 21

*United States v. Vilar*, 729 F.3d 62 (2d Cir. 2013) .................................................................. 20

*United States v. Weingarten*, 713 F.3d 704 (2d Cir. 2013) ........................................................ 24

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003) ........................................................... 15, 20

*United States v. Zarrab*, 15 Cr. 867,

2016 WL 6820737 (S.D.N.Y. Oct. 17, 2016) .............................................................. 18, 20, 21

*United States v. Zvi*, 168 F.3d 49 (2d Cir. 1999) .................................................................... 24

*Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989 (2016) ...................................... 22

iv

*Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480 (1983).......................................... passim

*Williams v. United States*, 458 U.S. 279 (1982) .................................................... 21, 22

## Statutes, Rules, and Regulations

18 U.S.C. § 2 ............................................................................................................. 3

18 U.S.C. § 371 ................................................................................................. passim

18 U.S.C. § 1001 ...................................................................................................... 24

18 U.S.C. § 1073 ...................................................................................................... 14

18 U.S.C. § 1114 ...................................................................................................... 17

18 U.S.C. § 1344 ................................................................................. 2, 21, 22, 23

18 U.S.C. § 1349 ....................................................................................................... 3

18 U.S.C. § 1956 ............................................................................................... 2, 24

18 U.S.C. § 3231 ........................................................................................... 5, 6, 18

21 U.S.C. § 959 ........................................................................................................ 25

28 U.S.C. § 1330 ............................................................................................... 4, 7, 8

28 U.S.C. § 1391 .................................................................................................. 7, 8

28 U.S.C. § 1441 ....................................................................................................... 4

28 U.S.C. § 1603 ........................................................................................ 10, 11, 14

28 U.S.C. § 1604 .................................................................................................. passim

28 U.S.C. § 1605 .................................................................................................. passim

28 U.S.C. § 1606 .................................................................................................. 4, 7

28 U.S.C. § 1607 .................................................................................................. 4, 7

28 U.S.C. § 1608 ....................................................................................................... 7

50 U.S.C. § 1701 ........................................................................................................ 2, 20

50 U.S.C. § 1702 ........................................................................................................... 20

50 U.S.C. § 1705 ........................................................................................................... 24

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Turkiye Halk Bankasi, A.S. ("Halkbank")'s motion ("Mot.") to dismiss Superseding Indictment S6 15 Cr. 867 (RMB) (the "Indictment" or "Ind."). For the reasons set forth below, the Government respectfully submits that the Court should deny the motion.

At its core, Halkbank's motion rests on a flawed premise—that because it was acting abroad and, it now claims, as an instrumentality of the Turkish government, it is immune from prosecution in the United States. Halkbank's invocation of sovereign immunity cannot overcome the sovereign right of the United States to set the rules to use the U.S. financial system, including laws that prohibit defrauding U.S. banks, impeding the work of U.S. sanctions-enforcement officials, and violating the U.S. embargo against Iran—the world's foremost state sponsor of terrorism and fomenter of discord in the Middle East and around the globe. The Indictment properly alleges violations of these laws and, thus, Halkbank's motion should be denied.

To avoid this inescapable conclusion, Halkbank raises a host of meritless arguments. First, the bank claims that, as a purported arm of the Turkish government, it is immune from prosecution pursuant to the Foreign Sovereign Immunities Act (the "FSIA"), but that statute is inapplicable to criminal prosecutions generally and this prosecution specifically. Indeed, the bank has not cited to a single instance in which a court has dismissed a criminal prosecution pursuant to the FSIA. Second, contrary to the bank's claim, the Court also has personal jurisdiction over Halkbank under black-letter law. Third, the bank's motion challenges the sufficiency of the allegations in IEEPA, bank fraud, and *Klein* conspiracy counts that its former executive already has been convicted of after trial and which have been affirmed on appeal. Fourth, Halkbank's multiplicity challenge to Count Six fails as a matter of law. Accordingly, the bank's motion should be denied.

## BACKGROUND

### A.    The Indictment

The Indictment charges Halkbank in six counts: (1) conspiracy to defraud the United States, and in particular the U.S. Department of the Treasury (the "Treasury Department"), in violation of Title 18, United States Code, Section 371 (Count One); (2) conspiracy to violate the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1701 *et seq.*, and orders and regulations promulgated thereunder (Count Two); (3) bank fraud, in violation of Title 18, United States Code, Sections 1344 and 2 (Count Three); (4) conspiracy to commit bank fraud, in violation of Title 18, United States Code, Section 1349 (Count Four); (5) money laundering, in violation of Title 18, United States Code, Sections 1956 and 2 (Count Five); and (6) conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956 (Count Six).

### B.    Offense Conduct

The Indictment describes a years' long scheme in which Halkbank conspired to violate economic sanctions imposed by the United States on Iran.  As alleged, Halkbank participated in several types of illicit transactions for the benefit of Iran, the purpose and effect of which was to create a pool of Iranian oil funds in Turkey and the United Arab Emirates held in the names of front companies, which concealed the funds' Iranian nexus.  From there, the funds were used to make international payments on behalf of the Government of Iran and Iranian banks, including transfers in U.S. dollars that passed through the U.S. financial system in violation of U.S. sanctions laws.  (*See* Ind. ¶¶ 1-6).

As alleged in the Indictment, Halkbank was central to the scheme, because the bank held the proceeds of Iran's sale of oil and gas to Turkey's state-owned energy companies in accounts for the Central Bank of Iran, the National Iranian Oil Company ("NIOC"), and the National Iranian Gas Company ("NIGC") (all of which were sanctioned by the United States at the time).  (*See id.*

2

¶¶ 3, 8).  Due to U.S. sanctions against Iran and the anti-money laundering policies of U.S. banks, Iran was constrained in how it could use the funds, and, in particular, could not use them to make international payments through the U.S. financial system.  (*See id*. & ¶¶ 9-24).

As a result, Halkbank executives, including Suleyman Aslan (the bank's general manager, *i.e.*, chief executive), Mehmet Hakan Atilla (the bank's deputy general manager in charge of international banking), and Levent Balkan (the bank's head of foreign operations), among others, worked with Turkish businessman Reza Zarrab, corrupt Turkish officials, and Iranian officials to devise a scheme through which Iran could surreptitiously access its oil proceeds freely, without scrutiny from the international community.  (*See*, *e.g.*, *id*. ¶¶ 2, 5, 7).  The scheme involved, among other things, fraudulent gold and humanitarian trade transactions run through Halkbank and Zarrab's companies.  (*See id*. ¶¶ 4, 25-65).  The purpose of the defendants' scheme was to demolish the sanctions' restrictions on Iranian access to oil and gas proceeds at Halkbank and create an enormous, anonymous slush fund for Iran.  Because the funds would not nominally be attributable to Iran, the Government of Iran could direct the funds anywhere across the globe free of the effect of sanctions, including through the U.S. financial system.  (*See*, *e.g.*, *id*. ¶¶ 34-35).  As alleged, at least approximately $1 billion was laundered through the U.S. on behalf of the Government of Iran and Iranian entities. (*Id*. ¶¶ 48, 64). At the same time, by disguising these transactions as being exempt from U.S. sanctions and lying to Treasury Department officials, Halkbank ensured the continuity of this profitable business, while also avoiding itself being sanctioned by the United States and losing its ability to transact with U.S. banks.  (*See id*. ¶¶ 4, 15-21).

3

## DISCUSSION

### I.      Foreign Sovereign Immunity Does Not Bar This Prosecution

Neither the FSIA nor the common law immunize Halkbank from this prosecution as a foreign sovereign.  Moreover, even if the FSIA did apply, the statute's "commercial activity" exception would remove any immunity.

#### A.      Foreign Sovereign Immunity Under The Common Law and The FSIA

In 1976, Congress passed the FSIA to resolve problems that arose from, among other things, foreign states pressuring the U.S. Department of State (the "State Department") to invoke common law sovereign immunity on their behalf in civil actions brought by private plaintiffs, which led to inconsistent application of the doctrine.  *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 487 (1983); *see also* H.R. Rep. No. 94-1487, 1976 WL 14078, at *9 (1976) (FSIA enacted to address "considerable uncertainty" from "the standpoint of a private litigant").  The FSIA added and amended sections throughout Title 28, and did not impact the criminal code.  *See* P.L. 94-583 (HR 11315), 90 Stat. 2891 (1976); *see, e.g.*, 28 U.S.C. §§ 1441(d) (removal), 1607 (counterclaims).  Specifically, the Act confers jurisdiction over "any nonjury civil action" against a foreign state as to which it "is not entitled to immunity" under treaties or the Act's immunity rules.  28 U.S.C. § 1330(a).  The Act then confers immunity from the jurisdiction of federal and state courts, *id.* § 1604, and describes exceptions to that immunity, *id.* §§ 1605-1607.

#### B.      The Court's Jurisdiction Derives from Section 3231 and Not the FSIA

The FSIA is addressed to civil matters, and Halkbank ignores entirely the source of the Court's jurisdiction here, which stems from 18 U.S.C. § 3231, a statute that pre-dates the FSIA by nearly three decades, and which provides that "[t]he district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."  Section 3231, which is located in the same Title of the United States Code as all

4

but one of the charges in this case, does not exempt prosecutions against foreign sovereigns. "All means all" and "[i]t is hard to imagine a clearer textual grant of subject-matter jurisdiction." *In re Grand Jury Subpoena*, 912 F.3d 623, 628 (D.C. Cir. 2019) (holding that § 3231, and not § 1604 of the FSIA, gave district court subject matter jurisdiction over criminal contempt proceeding).[1] Under § 3231, the Court has subject matter jurisdiction when an indictment—like the Indictment here—properly alleges a violation of a federal criminal statute. *See*, *e.g.*, *United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019) (federal district court had subject matter jurisdiction under § 3231 because indictment alleged violation of federal offense).

Thus, for Halkbank's argument to succeed, the FSIA must have repealed § 3231. But "nothing in the [FSIA's] text expressly displaces section 3231's jurisdictional grant." *In re Grand Jury*, 912 F.3d at 628. "In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable." *Morton v. Mancari*, 417 U.S. 535, 550 (1974). The FSIA and § 3231 are not "irreconcilable," however, because the FSIA "contains a comprehensive set of legal standards governing claims of immunity in every *civil* action against a foreign state or its political subdivisions, agencies or instrumentalities." *Verlinden*, 461 U.S. at 488 (emphasis added). The defendant's motion fails because the Court's subject matter jurisdiction derives from § 3231, which was not impacted by the FSIA.

---

[1] In *In re Grand Jury Subpoena*, the D.C. Circuit assumed, without deciding, that § 1604 of the FSIA applied to criminal prosecutions. *See* 912 F.3d at 627 (declining to "weigh in" on whether § 1604 applies to criminal prosecutions). The court still rejected the argument that the FSIA displaced § 3231, and held that, even if FSIA immunity did apply, then the statute's exceptions would also apply in a criminal prosecution such that the FSIA offered no refuge in that context. *See id.* at 627-28.

### C.        The FSIA and Common Law Do Not Immunize Halkbank from Prosecution

In addition to Halkbank's failure to acknowledge § 3231, the bank's FSIA arguments proceed with myopic focus on § 1604 and ignore other operative FSIA provisions.  *See United States v. Morton*, 467 U.S. 822, 828 (1984) (courts should not "construe statutory phrases in isolation" but rather should "read statutes as a whole").  *First*, Section 1604 carves out immunity exceptions *only* to the subject matter jurisdiction conferred by the FSIA itself, not to other jurisdiction-granting statutes such as § 3231.  *In re Grand Jury*, 912 F.3d at 628.  As the bank concedes, subject matter jurisdiction under the FSIA is governed by § 1330(a), (Mot. at 2), which expressly does not reach criminal cases and extends only to "any nonjury civil action against a foreign state."  *See Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989) (explaining how §§ 1330 and 1604 work "in tandem").  Thus, the statute simply does not apply in this criminal case.

*Second,* that the FSIA as a whole pertains to civil actions rather than criminal prosecutions is confirmed, not only by the text of § 1330, but by other provisions as well.  Congress plainly was mindful of criminal matters when drafting the statute, because it authorized the Attorney General to intervene if a suit authorized by §§ 1605A or 1605B threatened a "criminal investigation or prosecution."  28 U.S.C. § 1605(g)(1).  But Congress chose not to include criminal prosecutions in the FSIA's jurisdictional grant, § 1330(a), or the immunity exceptions therefrom, §§ 1604-1607. *Cf. Samantar v. Yousef*, 560 U.S. 305, 319 (2010) (finding that the FSIA did not apply to civil actions against foreign officials because text did not expressly immunize those officials, even though the statute referred to foreign officials in other contexts); *Southway v. Central Bank of Nigeria*, 198 F.3d 1210, 1215 (10th Cir. 1999) ("If Congress intended [the Central Bank of Nigeria and the Republic of Nigeria] to be immune from criminal indictment under the FSIA, Congress

should amend the FSIA to expressly so state"). The FSIA also "contains a panoply of provisions that are consistent only with an application to civil cases and not to criminal proceedings." *United States v. Hendron*, 813 F. Supp. 973, 974-75 (E.D.N.Y. 1993). Several of those provisions are located in § 1608—a close neighbor to § 1604, the provision upon which the bank places almost exclusive weight. Congress also created special venue and removal provisions for foreign sovereigns in civil cases, *see* 28 U.S.C. §§ 1391(f), 1441(d), with no corresponding changes to Title 18, *i.e.*, the criminal code with the operative jurisdictional provision that governs this case. *See generally Lindh v. Murphy*, 521 U.S. 320, 330 (1997) (finding that Congress's decision to amend one statute but not another reflected a deliberate choice to treat the statutes differently). The implication of these additional steps by Congress is as clear as the text of § 1330(a) and leads to the same conclusion: the FSIA does not apply to criminal cases.

*Third*, Halkbank's interpretation of the FSIA makes no sense in light of the statute's purpose. *See United States v. Al Kassar*, 660 F.3d 108, 125 (2d Cir. 2011) (courts "interpret statutes to give effect to congressional purpose") (internal quotation and citation omitted). Congress enacted the FSIA to address difficulties that private litigants faced from the State Department's inconsistent applications of foreign sovereign immunity. *Verlinden*, 461 U.S. 480 at 488 (quoting H.R. Rep. No. 94-1487, p. 7 (1976)); *see also Hendron*, 813 F. Supp. at 976 (legislative history of FSIA did not support application to criminal actions). The U.S. government, however, does not face similar challenges in deciding whether to bring a criminal prosecution because the Executive Branch—which includes both the Departments of State and Justice—can weigh the relevant foreign policy considerations of prosecuting a foreign sovereign.[2] *See*

---

[2] Of course, a foreign sovereign defendant, like any other criminal defendant, can raise a due process challenge to a criminal prosecution—as Halkbank has here—and so the FSIA plays no role in protecting a foreign state's purported due process rights in a criminal prosecution.

*Pasquantino v. United States*, 544 U.S. 349, 369 (2005) ("[B]y electing to bring this prosecution, the Executive has assessed this prosecution's impact on this Nation's relationship with [a foreign state]."). Foreign state immunity from criminal prosecutions "simply was not the particular problem to which Congress was responding when it enacted the FSIA." *Samantar*, 560 U.S. at 323. Indeed, this prosecution highlights the absurdity of the bank's position. Congress has armed the president through the IEEPA with the authority to impose embargoes on foreign nations, like Iran, and the criminal authority to enforce those embargoes without exempting foreign sovereigns, and the Executive Branch has exercised those authorities by promulgating the ITSR and indicting the bank for, among other things, violating the ITSR. The bank now contends, in essence, that the FSIA "dramatically gutted the government's crime-fighting toolkit," *In re Grand Jury Subpoena*, 912 F.3d at 630, "without so much as a whisper," *Samantar*, 560 U.S. at 319. The bank's interpretation of § 1604 should therefore be rejected.

*Fourth*, the cases Halkbank cites are inapposite. The bank relies on *Amerada Hess* for the proposition that "the FSIA provides the sole basis for jurisdiction over a foreign state in a federal court," (*see* Mot. p. 2 (quoting 488 U.S. at 439)), but that case involved a civil action, not a criminal prosecution. The Court explicitly considered whether the FSIA repealed jurisdictional grants under Title 28, but did not once refer to Title 18 or § 3231. "General language in judicial opinions" should be read "as referring in context to circumstances similar to the circumstances then before the Court and not referring to quite different circumstances that the Court was not then considering." *Illinois v. Lidster*, 540 U.S. 419, 424 (2004). Halkbank's other authority is similarly unhelpful. (*See* Mot. 2-3). Those cases involve civil RICO actions; fail to acknowledge § 3231; rely on the same un-contextualized analysis of *Amerada Hess*; ignore the Supreme Court's repeated statements that the FSIA establishes standards for "civil actions," *see Verlinden*, 461 U.S.

at 488; *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004); *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 141 (2014); and are at odds with the Court's rationale in *Samantar* that the FSIA's silence about a potential application of the statute's immunity cuts against, not for, the application of the immunity, *cf.* 560 U.S. at 318-19.

*Fifth*, neither the "*Charming Betsy*" doctrine, nor the common law saves Halkbank in this case. Halkbank invokes the presumption that Congress legislates in accordance with international law, *see Murray v. The Charming Betsy*, 6 U.S. (2 Cranch) 64, 118 (1804), without describing the international law in question. (*See* Mot. p. 3-4). At common law, foreign sovereign immunity was "a matter of grace and comity on the part of the United States" that was exercised on a "case-by-case basis." *Verlinden*, 461 U.S. at 486-88. In this case, the Executive Branch has "not merely refrained from taking a position on this matter; to the contrary, by pursuing [Halkbank's prosecution], the Executive Branch has manifested its clear sentiment that [Halkbank] should be denied immunity." *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997); *see also Matar v. Dichter*, 563 F.3d 9, 14 (2d Cir. 2009). Accordingly, the common law and *Charming Betsy* are as inapposite as the FSIA, and the motion should be denied.

### D.     The FSIA's "Commercial Activities" Exception Applies

Even if the FSIA applied to this prosecution, the Court should still deny Halkbank's motion because the statute's "commercial activities" exception would strip away any immunity.

The exception has three parts, each of which applies here. Specifically, § 1605(a)(2) creates an exception to the FSIA's immunity for actions that are "based upon" any of the following conduct: (1) "commercial activity carried on in the United States by the foreign agent"; (2) "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; or (3) "an act outside the territory of the United States in connection with a commercial

activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). "[A]n action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015) (quoting *Saudi Arabia v. Nelson*, 507 U.S. 349, 357 (1993)). "Commercial activity" means "either a regular course of commercial conduct or a particular commercial transaction or act," and the Court is to look to the "nature of the course of conduct or particular transactions or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d); *see also Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 560 (2d Cir. 2020) ("'[P]urpose' is 'the reason why the foreign state engages in the activity' and 'nature' is 'the outward form of the conduct that the foreign state performs or agrees to perform.'" (quoting *Nelson*, 507 U.S. at 361)). A foreign sovereign engages in "commercial activity" when "it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns." *Petersen Energía Inversora S.A.U. v. Argentine Republic*, 895 F.3d 194, 205 (2d Cir. 2018).

Analysis under § 1605(a)(2) starts with "identifying the particular conduct on which [the] action is 'based' under the FSIA." *Pablo Star Ltd.*, 961 F.3d at 560. The Indictment alleges that Halkbank participated in transactions designed to extract surreptitiously Iran's oil and gas proceeds held at the bank, so that those funds could be used to make international payments through the U.S. financial system on behalf of Iran while hiding Iran's control of those transactions, and lied to Treasury Department officials in the United States to conceal the scheme and evade applicable sanctions. (*See* Ind. ¶¶ 4-6, 40-49, 63, 64). The charges in the Indictment are "based" on these allegations because, "if proven" along with the requisite *mens rea*, *Nelson*, 507 U.S. at 361, they are just as adequate to establish the guilt of Halkbank as they were to establish the guilt of one of its executives. *See United States v. Atilla*, 966 F.3d 118, 128-29 (2d Cir. 2020) (evidence proved

that Halkbank executives were involved in a scheme to launder Iranian oil proceeds through the U.S. financial system on behalf of Iran, and took steps to conceal that scheme from U.S. officials).

The first two clauses of § 1605(a)(2) apply to the domestic aspects of the bank's participation in the scheme—namely, the misrepresentations made to Treasury Department officials during meetings, conference calls, and other communications in the United States to facilitate ongoing sanctions evasion. (*See, e.g.*, Ind. ¶¶ 5, 26, 42, 45, 63). *First*, communications with the Treasury Department about U.S. sanctions applicable to the bank's business are plainly "the *type* of actions by which a private party [*i.e.*, an international bank] engages in trade and traffic or commerce." *Pablo Star Ltd.*, 961 F.3d at 561 (emphasis in original) (internal quotation marks omitted); *see also Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614 (1992) ("[W]hen a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign's actions are 'commercial' within the meaning of the FSIA."). *Second*, the fact that U.S. officials were the intended audience for the bank's misrepresentations, and that the bank made these misrepresentations to protect the bank's correspondent banking relationships with U.S. banks, which it used to route hundreds of millions of dollars through the U.S. financial system, and the bank's ability to solicit millions of dollars in investments from U.S. investors, demonstrates that the bank's conduct had "substantial contact" with the United States, 28 U.S.C. § 1603(e). *See*, *e.g.*, *Pablo Star Ltd.*, 961 F.3d at 566 (Welsh government's distribution of marketing materials in New York demonstrated "substantial contact" under FSIA). Accordingly, Halkbank's contact with the Treasury Department was "commercial activity carried on in the United States by [Halkbank]," as required for the first clause of § 1605(a)(2) to apply. *Third*, even if the bank's communications with the Treasury Department were not "commercial activity" for purposes of the first clause, they were nevertheless "act[s] performed in the United States in

11

connection with a commercial activity of [Halkbank] elsewhere," *i.e.*, its banking activity in Turkey, under the second clause. Accordingly, the first two clauses of § 1605(a)(2) apply to exempt the bank from any immunity the FSIA could be read to confer in this case.

The third clause also applies to the international aspects of the bank's conduct—specifically, knowingly designing the fraudulent gold and food schemes and processing transactions in furtherance of those schemes. (*See* Ind. ¶¶ 4-6, 32-35, 50-58). Halkbank does not dispute (nor could it), that the Indictment is based in part on its conduct abroad and that providing banking services and executing payment instructions is "commercial activity . . . outside this country." *Weltover, Inc.*, 504 U.S. at 614. Thus, the only element in dispute for purposes of the third clause of § 1605(a)(2) is whether the bank's commercial activity "cause[d] a direct effect in the United States." *Petersen Energía*, 895 F.3d at 204 (internal quotation and citation omitted). The bank's role in the scheme clearly had a "direct effect" in this country—the bank's conduct was a necessary step in a scheme that victimized U.S. financial institutions and the U.S. government by laundering more than $1 billion through the U.S. financial system in violation of the U.S. embargo on Iran. *See, e.g.*, *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 111 (2d Cir. 2016) ("direct effect" requirement satisfied where defendant encouraged involvement of U.S. victims and the United States was the "locus of the fraud"). As a result, the third clause of § 1605(a)(2) also applies.

The Court can readily dismiss Halkbank's objections to these straightforward applications of § 1605(a)(2) to the Indictment's allegations.

*First*, Halkbank argues that, while § 1604 confers immunity from prosecution despite the lack of textual references to criminal cases in §§ 1330 and 1604, the commercial activities exception does not apply because there is no reference to criminal cases in § 1605(a)(2). (Mot. p.

4).  The bank cannot have it both ways.  Section 1605(a) expressly reaches "any case," and nothing in § 1605(a)(2) excludes criminal actions.  "Congress's choice to extend the section 1605(a) exceptions to 'any case,' instead of just 'civil actions,' tells us that they are available in criminal proceedings."  *In re Grand Jury Subpoena*, 912 F.3d 632.  Section 1605 also mirrors § 1604— both refer to "the jurisdiction of the courts of the United States and of the States."  If, as Halkbank contends, the phrase from § 1604 includes the criminal jurisdiction of federal district courts (which it does not, *see supra* pp. 4-9), then the same phrase in § 1605(a) should be interpreted to have the same scope.  *See Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 479 (1992) ("This result is contrary to the basic canon of statutory construction that identical terms within an Act bear the same meaning.").  The absurdity Halkbank contrives by comparing § 1605(a) to the terrorism-related exceptions, §§ 1605A and 1605B, results from the bank's contorted reading of §§ 1330 and 1604 and its failure to acknowledge § 3231.  Any absurdity is eliminated by adopting the far simpler interpretation, in accord with the FSIA's text, structure, and legislative purpose, that the FSIA offers no immunity from prosecution, whether for financial crimes or acts of terrorism.

*Second*, Halkbank argues that the conduct alleged in the Indictment is "sovereign" rather than "commercial" activity because the Turkish government designated Halkbank as the approved repository for Iranian oil sales proceeds.  (Mot. pp. 4-5).  This prosecution is not "based" on the Turkish government's designation of Halkbank.  The Government's allegations focus on the "nature" and "outward form" of what the bank did with Iranian oil proceeds after it received them, *Pablo Star*, 961 F.3d at 561, in particular, communicating with a U.S. agency responsible for enforcing the sanctions regime against all market participants, whether private or state-owned, and facilitating payment transactions, which are routine banking functions not at all "peculiar to sovereigns."  *Petersen Energía*, 895 F.3d at 205 (subsequent commercial activity was not

13

sovereign simply because it "triggered by its sovereign act").  Thus, the bank's conduct differs from the defendant in *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 177 (2d Cir. 2010), which involved a foreign government entity responsible for maintaining a government public health insurance option.  Commercial activity is not transformed into sovereign activity simply because a sovereign directs it; if that were the case, then the commercial activity exception would be meaningless.

*Third*, Halkbank confines its objections to the first two clauses of § 1605(a)(2) to a footnote, arguing that they do not apply because the bank purportedly did not engage in any domestic commercial activity, and does not have any branches in the United States.  (Mot. p. 6 n.3).  The first contention ignores the bank's communications with the Treasury Department.  With respect to the second claim, "[t]he point here is not whether [Halkbank] maintained an office in New York," *Pablo Star*, 961 F.3d at 566, but rather that Halkbank's interactions with U.S. officials responsible for enforcing the sanctions regime constituted acts related to "commercial activity." Moreover, as to § 1605(a)(2)'s third clause, the bank is wrong that its conduct did not cause a "direct effect in the United States" because of Zarrab's involvement in the scheme.  (*See* Mot. pp. 6-7).  The argument ignores the "locus of the fraud" holding of *Atlantica Holdings*, 813 F.3d at 111, which is dispositive of this issue.  The bank cannot so easily distance itself from Zarrab's conduct because the Indictment alleges that the bank conspired with Zarrab to engage in illegal transactions through the U.S. financial system, making the bank liable for his conduct.  *See United States v. Amrep Corp.*, 560 F.2d 539, 545 (2d Cir. 1977) (defendant liable for any transactions within the general scope of the scheme in which the defendant agreed to participate).  The fact that another party was involved in the chain of events does not insulate the bank from criminal liability. *See, e.g.*, *Commercial Bank of Kuwait v. Rafidain Bank*, 15 F.3d 238, 241 (2d Cir. 1994) ("direct

14

effect" test satisfied even though defendant was supposed to make payment to agents of the plaintiff outside of the United States).  Therefore, even if the FSIA applies in this case, each of the three clauses of § 1605(a)(2) strip Halkbank of any immunity to which it would otherwise be entitled.

## II.     The Court Has Personal Jurisdiction Over Halkbank

Halkbank's motion to dismiss the Indictment for lack of personal jurisdiction should also be denied.  Because the Court has subject matter jurisdiction over this prosecution pursuant to 18 U.S.C. § 3231, "it has personal jurisdiction over the individuals charged in the indictment and present before the court to answer those charges." *McLaughlin*, 949 F.3d at 781.  Due process requires only that "there must be a sufficient nexus between the defendant and the United States, so that such application [of United States criminal law] would not be arbitrary or fundamentally unfair," *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003) (internal citation and quotation omitted).  "For non-citizens acting entirely abroad, a jurisdictional nexus exists when the aim of that activity is to cause harm inside the United States or to U.S. citizens or interests."  *Al Kassar*, 660 F.3d at 118.  While Halbank's scheme originated abroad, it targeted—and involved acts within—this country.  *See United States v. Steinberg*, 62 F.2d 77, 78 (2d Cir. 1932) (*per curiam*) ("[A] person may be charged in the place where the evil results, though he is beyond the jurisdiction when he starts the train of events of which that evil is the fruit.").

Halkbank nevertheless argues that the Indictment fails the "minimum contacts" set forth for civil cases in  *International Shoe v. State of Washington*, 326 U.S. 310 (1945).  (Mot. at 8-12).  But as this Court has recently held, "Halkbank's reliance upon minimum contacts jurisprudence is simply misplaced. 'A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law.'" (D.E. 581 at 17 (quoting

*United States v. Rendon*, 354 F.3d 1320, 1326 (11th Cir. 2003))); *see also United States v. Maruyasu Indus. Co.*, 229 F. Supp. 3d 659, 670 (S.D. Ohio 2017) ("[I]n a criminal prosecution, '[i]t is well settled that a district court has personal jurisdiction over any party who appears before it, regardless of how his appearance was obtained.'" (quoting *United States v. Lussier*, 929 F.2d 25, 27 (1st Cir. 1991))).

Neither the Supreme Court nor the Second Court has ever held that the *International Shoe* minimum-contacts test must be satisfied for personal jurisdiction in criminal cases. *Matter of Marc Rich & Co., A.G.*, a case upon which Halkbank relies, does not impose a "minimum contacts" requirement for criminal jurisdiction—in that case, the Second Circuit stated only that where "the United States is injuriously affected by the wrongful evasion of its . . . laws . . . , it well may be that the occurrence of the offense itself is sufficient to support a claim of jurisdiction . . . ," and cited to *International Shoe* as an illustration of that conclusion. 707 F.2d 663, 667-68, 670 (2d Cir. 1983). To the contrary, "[t]he principle that a man, who outside of a country willfully puts in motion a force to take effect in it, is answerable at the place where the evil is done, is recognized in the criminal jurisprudence of all countries." *Ford v. United States*, 273 U.S. 593, 623 (1927); *see also United States v. Alvarez-Machain*, 504 U.S. 655, 662 (1992); *Frisbie v. Collins*, 342 U.S. 519, 512 (1952). Nor does the fact that Halkbank is a corporation require any different conclusion—the Supreme Court has applied the same due-process test to individuals and corporations in civil cases, *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-82 (1985), and there is no reason to apply different standards for individuals and corporations in criminal cases.

Even if the Government were required to establish personal jurisdiction under civil standards, the Government easily clears that bar. The Indictment alleges that Halkbank facilitated illegal financial transactions, hid their Iranian nexus in order to pass them through the U.S.

financial system, and lied to U.S. officials to conceal the scheme.  During the time period of the

conspiracy, the bank maintained extensive contacts in the United States, including correspondent

banking relationships with U.S. banks and millions of dollars in investments from U.S. investors.[3]

Protecting Halkbank's access to U.S. markets and its property in the United States was not

incidental to the offenses, but a principal purpose of Halkbank's conduct.  These actions support

the Court's exercise of personal jurisdiction over the bank.  *See*, *e.g.*, *Marc Rich*, 707 F.2d at 667

("[W]here a person has sufficiently caused adverse consequences within a state, he may be

subjected to its judicial jurisdiction so long as he is given adequate notice and an opportunity to be

heard . . . ."); *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (personal jurisdiction appropriate

when "the defendant purposefully avails itself of the privilege of conducting activities within the

forum State, thus invoking the benefits and protections of its laws").  Accordingly, Halkbank's

motion to dismiss the Indictment for lack of personal jurisdiction should be denied.

## III.   The Statutes Charged in the Indictment Properly Apply to Halkbank's Conduct

Halkbank argues that the charges in the Indictment are an improper extraterritorial

application of the cited criminal statutes, or fail to state a valid offense under the bank fraud statute

or 18 U.S.C. § 371.  This Court and the Second Circuit have already found to the contrary under

extremely similar circumstances.  *See United States v. Zarrab*, 15 Cr. 867, 2016 WL 6820737, at

---

[3] Halkbank's own corporate documents demonstrate that the bank engaged in substantial business with the United States, including that it maintained an international correspondent banking network (including U.S. correspondent accounts), had access to U.S. Department of Agriculture loans facilities, was a party to multi-hundred-million-dollar syndicated loan arrangements with U.S. banks, and raised millions of dollars' worth of U.S.-dollar-denominated Eurobond offerings, including offerings in which U.S. banks participated.. *See* 2013 Annual Report at 58 & 60; 2014 Annual Report at 56-57; 2015 Annual Report at 66-68; 2016 Annual Report at 62-64 (available at https://www.halkbank.com.tr/images/channels/English/investor_relations/financial_info/Annual_reports/); Offering Memorandum (Feb. 9, 2015) at 1, 3, 6 (*available at* https://www.ise.ie/debt_documents/Prospectus%20-%20Standalone_89b098bc-4a47-4c09-bf57-eddbe336af56.PDF).

*3-14 (S.D.N.Y. Oct. 17, 2016); *Atilla*, 966 F.3d at 129-31 (rejecting argument that evidence was insufficient to sustain IEEPA, bank fraud, and money laundering charges and that § 371 only applies to conspiracies to deprive another of property).   And although this case involves a "different defendant" and a "different indictment" (Mot. at 1), Halkbank's arguments fare no better.

### A.      The Presumption Against Extraterritoriality Does Not Bar this Prosecution

While Halkbank seeks to paint the Indictment as an unprecedented extraterritorial expansion of U.S. law with dire international implications (Mot. pp. 12-14), in reality, the Indictment alleges routine applications of well-worn criminal statutes.

Contrary to Halkbank's argument, the Indictment involves a domestic, rather than extraterritorial, application of the IEEPA, the bank fraud statute, the money laundering statute, and § 371, and thus the presumption against extraterritoriality does not apply.  *See Pasquantino*, 544 U.S. at 371 (the "domestic element of petitioners' conduct is what the Government is punishing in this prosecution . . . .").   The Second Circuit has confirmed the applicability of these statutes by affirming Atilla's convictions.  *See* 966 F.3d at 128-29.   In particular, by sustaining the IEEPA conviction, the Second Circuit concluded, necessarily, that the transactions at issue here constituted the export of services *from the United States*.  *See United States v. Banki*, 685 F.3d 99, 108 (2d Cir. 2012), *as amended* (Feb. 22, 2012) ("the execution of money transfers from the United States to Iran on behalf of another, whether or not performed for a fee, constitutes the exportation of a service").   Moreover, given that the very purpose of the scheme was to launder Iranian oil proceeds through U.S. financial institutions for use to make international payments around the world, *see Atilla*, 966 F.3d at 128, this case involves a "domestic application of the bank fraud statute."  *Bascuñán v. Elsaca*, 927 F.3d 108, 125 (2d Cir. 2019).   For purposes of the money

laundering statute, the "use of U.S. correspondent banks to launder illegal proceeds qualifies as domestic conduct." *United States v. Prevezon Holdings, Ltd.*, 251 F. Supp. 3d 684, 694 (S.D.N.Y. 2017).  Finally, the *Klein* conspiracy count is based on the bank's concealment of information from, and misrepresentations to, U.S. government departments and officials in this country.  This case does not seek to apply any laws extraterritorially and thus, the presumption does not apply.

Halkbank does not address the Second Circuit's decision in *Atilla*, but rather tries to dismiss the banking transactions at the core of this case as "incidental" to the scheme because "less than five percent of the allegedly 'illegally transferred funds' passed through domestic accounts."  (Mot. pp. 15-16).  Halkbank's argument is meritless.  While it is true that the bank helped Iran secretly transfer approximately $20 billion-worth of funds in violation of a host of international sanctions, the "less than five percent" that specifically violated U.S. sanctions constituted more than *$1 billion*.  (*See* Ind. ¶ 64).  Moreover, Halkbank's reference to the total value of the slush fund the bank helped to create for Iran ignores that only transactions involving the U.S. financial system, *i.e.*, the more than $1 billion, could constitute violations of the IEEPA, the bank fraud statute, and the money laundering statute—in other words, 100% of the U.S. criminal conduct engaged in by the bank involved funds that "passed through domestic accounts."  The bank's sleight of hand cannot make these transactions "incidental" to the scheme, when in fact these transactions were the very purpose of the scheme.

Furthermore, even if the Court were to now accept the bank's description of the Indictment's allegations as "extraterritorial," the presumption still would not bar the IEEPA and § 371 counts.  While the bank leans heavily on the Supreme Court's decision in *RJR Nabisco v. European Community*, 136 S. Ct. 2090, 2100 (2016), the case has no more force now than it did when Zarrab relied on it.  (D.E. 63, p. 20).  *Nabisco* does not displace the long-standing principles

that the presumption does not apply where the law is aimed at "protecting the right of the government to defend itself," *see United States v. Vilar*, 729 F.3d 62, 72 (2d Cir. 2013) (citing *United States v. Bowman*, 260 U.S. 94 (122)), or to "'criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction.'" *Yousef*, 327 F.3d at 86. Criminal statutes intended to contend with extraordinary threats to the United States' national security, like the IEEPA, or to prevent frauds upon the U.S. government, like § 371, are plainly intended to protect the U.S. government from threats that do not "logically" depend on where those threats originate. *See Zarrab*, 2016 WL 6820737, at *8 (finding that presumption does not apply to the IEEPA). The structure and context of the IEEPA confirm that it has extraterritorial application. *See, e.g., United States v. Epskamp*, 832 F.3d 154, 162 (2d Cir. 2016) (examining structure and purpose of 21 U.S.C. § 959 to determine that it applied extraterritorially). The IEEPA was a statute enacted to address threats caused by conduct occurring in "whole or in substantial part outside the United States," 50 U.S.C. § 1701(a), and empowers the president to investigate, regulate, or prohibit any transactions in *foreign* exchange and transfers of credit or payments that involve any interest of any *foreign* country or a national thereof, 50 U.S.C. § 1702(a). It is illogical that Congress would enact a statute to deal with national security threats arising abroad, but then confine the enforcement of that statute to domestic actors. *See, e.g.*, *United States v. Siddiqui*, 699 F.3d 690, 701 (2d Cir. 2011) (nature of offense supported extraterritorial reach of statute).

Halkbank's last-ditch attempt to suggest that *Nabisco* displaced *Bowman* and requires a narrow construction of the money laundering statute (Mot. pp. 16-17), is wrong—*Nabisco* did not even mention *Bowman*, let alone overrule it. *See*, *e.g.*, *United States v. Buck*, No. 13 Cr. 282 (VM), 2017 WL 4174931, at *7 (S.D.N.Y. Aug. 28, 2017) ("[N]one of the [recent Supreme Court] decisions refers to *Bowman* or calls the holding of that case into question."). Moreover,

Halkbank's contention that the Second Circuit has not discussed *Bowman* since *Nabisco* was decided shows only that the Second Circuit has not had to apply *Bowman's* extraterritoriality analysis in the last four years.  Finally, the bank's *Nabisco* argument to limit the money laundering statute is certainly meritless in this case, where the entire purpose of the money laundering scheme was the use of U.S. financial institutions.  *See Atilla*, 966 F.3d at 128.

### B.      The Bank Fraud Statute Applies to the Charged Conduct

Halkbank's challenges to the bank fraud counts provide no reason for the Court to depart from its prior careful conclusions.  *See Zarrab*, 2016 WL 6820737, at *12-14.  The Indictment "track[s] the language of the [bank fraud statute] and state[s] the time and place (in approximate terms) of the alleged crime," which is all that is required to deny a motion to dismiss.  *United States v. Stringer*, 730 F.3d 120, 124 (2d Cir. 2013) (internal citation and quotation omitted).  And although this motion concerns only the sufficiency of the allegations in the Indictment, the Second Circuit held that the crime of bank fraud was proven against the bank's co-conspirator, Atilla, one of the bank's former deputy general managers.  *Atilla*, 966 F.3d at 127-29.

*First*, the bank repeats Zarrab's argument that wire instructions cannot be misrepresentations, based on *Williams v. United States*, 458 U.S. 279, 284 (1982).  Initially, the Government is not required to prove a specific misrepresentation under § 1344(1).  "[A] conviction under the 'scheme to defraud' clause of the bank fraud statute requires that the defendant engage in or attempt to engage in a pattern or course of conduct designed to deceive a federally chartered or insured financial institution into releasing property."  *United States v. Stavroulakis*, 952 F.2d 686, 694 (2d Cir. 1992).[4]  Moreover, payment instructions—like checks or wire instructions—can

---

[4] Congress specifically enacted § 1344 in response to *Williams*.  *See United States v. Burnett*, 10 F.3d 74, 78 (2d Cir. 1993)

constitute misrepresentations when they "convey the misleading impression that [the sender] was acting within the scope of [its] legitimate authority and that there was nothing extraordinary about these transactions," *United States v. Morgenstern*, 933 F.2d 1108, 1113 (2d Cir. 1991), particularly where a series of transactions form an overarching scheme to deceive, and thereby defraud, a financial institution, *see, e.g.*, *Williams,* 458 U.S. at 287 (distinguishing between "a single check that was supported by insufficient funds" and checks presented in "an extended scheme to obtain credit fraudulently").  The Indictment alleges precisely that—by obscuring the Iranian nexus of the funds through the use of shell companies, the co-conspirators "conveyed the misleading impression" through a series of wire instructions to U.S. banks that the transactions were authorized, even though the transactions were prohibited by the ITSR.  Such "half-truths— representations that state the truth only so far as it goes, while omitting critical qualifying information—can be actionable misrepresentations."  *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2000 (2016).

*Second*, the bank argues that the Indictment fails to allege a specific intent to harm a U.S. bank or that a U.S. bank suffered an actual loss.  (Mot. pp. 19-20).  These arguments are squarely foreclosed by the Supreme Court's decision in *Shaw v. United States*, 137 S. Ct. 462 (2016).  In *Shaw*, the Court held that a scheme to obtain property within a customer account held at a U.S. bank by misleading the bank constituted a scheme to defraud a financial institution within the meaning of § 1344(1).  *See* 137 S. Ct. at 466-67.  Nothing more is required—the statute "demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss," because, among other things, a bank is defrauded when it loses the opportunity to "bargain with the facts before [it]."  *Id*. at 467 (internal citations and quotations omitted).  The same is true here. The Indictment alleges that Halkbank participated in a "scheme to defraud" U.S. financial

institutions by tricking them into illegally disbursing funds held in customer accounts by concealing the true nature of the transactions.

*Third*, Halkbank's objections to the § 1344(2) portion of the bank fraud charges are equally meritless. Contrary to the bank's argument, as discussed above, the Indictment does allege fraudulent pretenses and misrepresentations related to the wire instructions. *See supra* pp. 21-22. Moreover, while the bank claims that the Indictment fails to allege that the conspiracy obtained any property from a bank "by means" of a misrepresentation, the whole purpose of the scheme described in the Indictment was for these U.S. banks to disburse U.S. dollars, *i.e.*, property under their control, by concealing the Iranian nexus to these transactions. But for the concealment, the U.S. banks would not have disbursed the funds in knowing violation of the sanctions. These allegations support a § 1344(2) charge. *See*, *e.g.*, *United States v. Lebedev*, 932 F.3d 40, 49 (2d Cir. 2019) (affirming conviction where defendant "caused false information to be sent to financial institutions to disguise the fact that their customers were transacting business with an unregistered Bitcoin exchange"), cert. denied sub nom. *Gross v. United States*, 140 S. Ct. 1224, (2020).

### C.    Count Six Is Not Multiplicitous

Finally, Halkbank's argument that Count Two and Count Six of the Indictment are multiplicitous because they are based on the same financial transactions fails as a matter of law.[5] "[T]he critical double jeopardy inquiry is not factual, *i.e.*, whether the same conduct is at issue in charges brought under different statutes, but legal, *i.e.*, whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *United States v. Basciano*, 599 F.3d 184, 198 (2d Cir. 2010) (internal quotation marks omitted).

---

[5] In addition, a pre-trial multiplicity motion is premature. *See United States v. Medina*, S3 13 Cr. 272 (PGG), 2014 WL 3057917, at *3 (S.D.N.Y. Jul. 7, 2014) (collecting cases).

Statutes involve distinct offenses when "each offense contains an element not contained in the other." *United States v. Dixon*, 509 U.S. 688, 696 (1993).  Here, there is no dispute that the IEEPA and the money laundering statute each include at least one exclusive element—for example, the IEEPA count requires the object of the conspiracy to be a violation of "any license, order, regulation or prohibition," promulgated pursuant to the IEEPA, 50 U.S.C. § 1705(a), which § 1956 does not require, and §1956, in turn, requires that the conspiracy be for the purpose of promoting a specified unlawful activity, which could, in this case, be the IEEPA violation, but could also be a bank fraud violation, 18 U.S.C. §§ 1956(a)(2)(A) & (g)(7).  To the extent the bank argues that these counts are multiplicitous because "sometimes the facts at hand may require a finding of multiplicity" based on *United States v. Zvi*, 168 F.3d 49, 57 (2d Cir. 1999), the Second Circuit has explicitly rejected that formulation in *United States v. Weingarten*, 713 F.3d 704, 710 n.5 (2d Cir. 2013) ("[T]o the extent that *Zvi* suggested that 'sometimes the facts at hand' may require a finding of multiplicity, such an approach would be inconsistent with *United States v. Dixon* . . . It makes no difference that the same conduct underlies multiple counts of [the] indictment, so long as the statutes proscribe distinct offenses.").  Accordingly, the Court should reject the bank's multiplicity argument.

24

## **CONCLUSION**

Accordingly, the Government respectfully requests that the Court deny Halkbank's

motion to dismiss the Indictment.

Dated: New York, New York
      August 31, 2020                      Respectfully submitted,

                                           AUDREY STRAUSS
                                           Acting United States Attorney

                                           by: _____/s/_____
                                               Michael D. Lockard
                                               Sidhardha Kamaraju
                                                 David W. Denton, Jr.
                                                   Jonathan Rebold
                                                   Kiersten Fletcher
                                                   Assistant United States Attorneys

cc:    Defense counsel of record (by ECF)