**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

v.

TÜRKIYE HALK BANKASI A.Ş.,

Defendant.

S6 15 Cr. 867 (RMB)

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Robert M. Cary
Simon A. Latcovich
James W. Kirkpatrick
Damayanti Desai

WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005

650 Fifth Avenue, Suite 1500
New York, NY 10019
(202) 434-5000

*Counsel for Türkiye Halk Bankası A.Ş.*

# TABLE OF CONTENTS

I. The Government Ignores the FSIA's Plain Language. .......................................................1

II. The FSIA's "Commercial Activities" Exception Does Not Apply. ..................................3

III. There Is No Personal Jurisdiction Given the Lack of Minimum Contacts. .........................5

IV. The Government's Arguments Only Highlight the Improper Extraterritoriality................6

VI. Count Six Is Subsumed Within Count Two, Making It Multiplicitous. ............................10

# TABLE OF AUTHORITIES

## CASES

*Bascuñán v. Elsaca*, 927 F.3d 108 (2d Cir. 2019) ........................................................6, 8

*Gucci Am., Inc. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014)........................................................6

*Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69 (2d Cir. 2010)..............................................5

*In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019).....................................................1, 2

*In re Marc Rich*, 707 F.2d 663 (2d Cir. 1983)..................................................................................5

*Int'l Harvester Co. v. Kentucky*, 234 U.S. 579 (1914)......................................................................6

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945).........................................................................6

*Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44 (2d Cir. 1991)....................................................6

*OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390 (2015) ..........................................................3

*Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555 (2d Cir. 2020) .........................................................4

*Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4 (2d Cir. 2019) ..........................................5

*Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992) .......................................................4

*Samantar v. Yousuf*, 560 U.S. 305 (2010) .........................................................................................2

*Shaw v. United States*, 137 S. Ct. 462 (2016).............................................................................9, 10

*United States v. Atilla*, 966 F.3d 118 (2d Cir. 2020) ........................................................................7

*United States v. Bowman*, 260 U.S. 94 (1922)..............................................................................7, 8

*United States v. Chitron Elecs. Co.*, 668 F. Supp. 2d 298 (D. Mass. 2009) ...................................5

*United States v. Lebedev*, 932 F.3d 40 (2d Cir. 2019)..................................................................10

*United States v. Morgenstern*, 933 F.2d 1108 (2d Cir. 1991)...........................................................9

*United States v. Perez*, 962 F.3d 420 (9th Cir. 2020) .......................................................................8

*United States v. Ubaldo*, 859 F.3d 690 (9th Cir. 2017) .....................................................................8

*United States v. Weingarten*, 713 F.3d 704 (2d Cir. 2013)..........................................................10

*Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511 (D.C. Cir. 1988) .............................................5

## STATUTES

18 U.S.C. § 1956 .......... 9

18 U.S.C. § 3231 .......... 1

28 U.S.C. § 1331 .......... 1

28 U.S.C. § 1441 .......... 3

28 U.S.C. § 1604 .......... 1

28 U.S.C. § 1605 .......... 3

50 U.S.C. § 1702 .......... 8

## I. The Government Ignores the FSIA's Plain Language.

In response to Halkbank's invocation of sovereign immunity, the government responds with a blunderbuss argument that ignores the FSIA's plain language and conjures up a series of inconsistent and unsupported assertions. For good reason, as Halkbank is immune.

Most fundamentally, the government completely ignores the operative statutory language. In focusing on 18 U.S.C. § 3231, the government ignores the FSIA's plain text. Section 1604 states that "a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. Nothing in the statute's plain language limits its immunity application to civil cases, and the government's attempts to bootstrap perceived limitations from other statutes or selective quotes from cases that fail to address the issue are unavailing. This Court's analysis should begin and end with section 1604's plain, unambiguous text.

Rather than focusing on the FSIA's plain text, the government offers failed strawman after strawman. Take, for example, the government's argument that for Halkbank to win, the FSIA must have repealed section 3231. Opp. at 5. Were this argument correct, then the FSIA would have had to repeal multiple jurisdictional statutes. For example, 28 U.S.C. § 1331, provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Thus, the government's argument means there would be no foreign sovereign immunity in federal question cases. That cannot be.

The government's misdirection continues with its repeated cites to *In re Grand Jury Subpoena*, 912 F.3d 623 (D.C. Cir. 2019). The government cites this case at least six times, mostly in an attempt to imply that "for Halkbank's argument to succeed, the FSIA must have repealed § 3231. Opp. at. 5. But the government buries the punchline in a footnote—the D.C.

Circuit's entire analysis *assumed that the FSIA actually applied* in criminal cases. *See* Opp. at 5 n.1; *see also In re Grand Jury Subpoena*, 912 F.3d at 672 ("Taking section 1604's grant of immunity as a given . . . ."). This is exactly the opposite of the government's argument.

Next, the government cites to a series of cases stating that the FSIA applies in civil cases. *See* Opp. at 5–6. So what? Of course, it does. But other than the cases cited in *Halkbank's* original motion, *see* Mot. at 3, none of the government's cited cases say what the government wants them to say—that the FSIA does not apply in criminal cases. Moreover, the government has nothing to say about the Federal Judicial Center recognition that sovereigns cannot be dragged into federal criminal court. *See* Mot. at 3.[1]

The government's argument that defendant's view on the FSIA would "gut" criminal law enforcement is exaggerated and wrong. Opp. at 8. First, counsel is not aware of any pre-FSIA foreign sovereign criminal prosecutions, and the government does not cite to any. One cannot gut what was never used. Second, the government is hardly powerless to combat foreign state misconduct. In this case, as IEEPA's primary enforcer, OFAC could pursue sanctions. The government also could use diplomacy or criminally prosecute individuals, as it has already done.

Finally, the government quotes dicta in response to Halkbank's argument that, if FSIA does not apply, the common law provides for foreign sovereign immunity. *See* Opp. at 9; *see* also Mot. at 7. The government's dicta cannot overcome this simple fact: Prior to the FSIA, there do not appear to be any indictments of foreign sovereigns. And the government notably

---

[1] The government suggests that *Samantar v. Yousuf*, 560 U.S. 305, 308 (2010), states that FSIA immunity does not apply to criminal cases. Opp. at 8. The government's partial quote is misleading, to say the least. *Samantar* was about foreign official civil immunity, not criminal cases: "*The immunity of officials* simply was not the particular problem to which Congress was responding when it enacted the FSIA." *Samantar*, 560 U.S. at 323 (emphasis added).

did not cite to any. Thus, even if the FSIA does not address criminal matters, Halkbank is immune because statutory silence does not abrogate the common law. ECF No. 646 at 7.[2]

## II. The FSIA's "Commercial Activities" Exception Does Not Apply.

The government's arguments that the FSIA's commercial activities exception applies ignores the governing law and attempts to rewrite the Indictment. As the government concedes, (1) Halkbank's activities must be "based upon" one of three types of commercial activities, 28 U.S.C. § 1605(a)(2), and (2) "an action is 'based upon' the 'particular conduct' that constitutes the 'gravamen' of the suit." *OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 396 (2015). Where the government goes off the rails, however, is in its failure to apply this standard.

For example, Indictment paragraphs four through six purport to summarize Halkbank's role in the scheme. *See* ECF No. 562 ¶ 4–6. As described below, these allegations show why the commercial activity exception does not apply here. For example, in *OBB Personenverkehr AG*, the plaintiff claimed that her U.S. purchase of a Eurorail ticket meant the commercial activities exception applied to a train station accident in Austria. The Supreme Court disagreed, holding that, "the conduct constituting the gravamen of [plaintiff's] suit plainly occurred abroad." *OBB Personenverkehr AG*, 136 S. Ct. at 396. The same is true here; the government alleges that the "purpose and effect of the scheme" was "to create a pool of Iranian oil funds in Turkey and the United Arab Emirates held in the names of front companies." ECF No. 562 ¶ 6.

---

[2] The government also asserts that the only way to avoid absurd results is to hold that the FSIA applies only to civil matters and highlights the fact that the FSIA amended civil venue and removal statutes for sovereign cases. *See* 28 U.S.C. § 1441(d) (permitting removal of "civil actions" against foreign sovereigns for trials "without [a] jury"). If the government is correct, then foreign sovereigns can be dragged into state criminal court for jury trials. The government never explains why Congress would protect foreign sovereigns only in civil cases.

The gravamen could not have been U.S. conduct—only $1 billion of the $20 billion from this supposed "pool" is even alleged to have touched the United States. *Id.* ¶¶ 4, 64. No matter how one defines "gravamen," it cannot fairly describe only five percent of the alleged transactions.

In fact, whether the conduct is sovereign or commercial involves "a standard more easily stated than applied, however, and its application may sometimes depend on the level of generality at which the conduct is viewed." *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555, 561 (2d Cir. 2020). The government tries to "generalize" these transactions to make them appear to be routine banking transactions in an attempt to overwhelm the sovereign issues aspect. Opp. at 13. There is nothing routine or commercial about being required by Turkey to process these transactions. These transactions are not available to other banks, nor does the government argue that they are. The Court thus need not reach 1605(a)(2)'s three clauses.

That being said, the government's attempts to apply the three section 1605(a)(2) clauses only highlight its problems. First, in its attempt to create commercial activity where there is none, the government claims that conversations and communications with Treasury officials constitute commercial activity. The government cites no authority supporting this position. The FSIA "leaves the critical term 'commercial' largely undefined." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612 (1992). But no definition of "commercial" reaches the communications claimed by the government. The government cites only to a case involving a foreign sovereign conducting a U.S. marketing campaign; that is not this case. *Pablo Star Ltd.*, 961 F.3d at 562. The government argument that 1605(a)(2)'s second clause, which applies to "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," also fails. The government notably fails to support this argument. "[T]he acts (or omissions) encompassed in this category are limited to those which in and of themselves are

sufficient to form the basis of a cause of action." *Zedan v. Kingdom of Saudi Arabia*, 849 F.2d 1511, 1514 (D.C. Cir. 1988) (citation omitted). These alleged statements are not the gravamen of the claim, particularly as Halkbank could have processed the Iranian transactions even if it had been designated for alleged secondary sanctions violations.

Finally, section 1605(a)(2)'s third clause turns on whether foreign activity causes a "direct effect" in the U.S. The government here ignores Second Circuit precedent. An effect is direct "if it follows 'as an immediate consequence of the defendant's . . . activity.'" *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69,74–75 (2d Cir. 2010). Halkbank allegedly processed the transactions that created a pool of money in Turkey and the United Arab Emirates. ECF No. 562 ¶ 6. The immediate consequence did not directly affect the United States. Nor could it, as only five percent of the alleged transactions are even alleged to have touched the United States. *Id.* ¶¶ 4, 64. Moreover, despite the government's unsupportive citation to the contrary, the fact that there are other actors in the chain matters for the FSIA's direct effects test. *See, e.g.*, *Prime Int'l Trading, Ltd. v. BP P.L.C.*, 784 F. App'x 4, 9 (2d Cir. 2019) ("layers of actors that 'intervened between' Statoil's foreign, commercial activity and any direct effects in the [U.S.].").

## III. There Is No Personal Jurisdiction Given the Lack of Minimum Contacts.

Flouting the Due Process Clause, the government asserts that it has the power to subject any organization in the world to U.S. jurisdiction simply by alleging a crime. In so doing, the government conflates the concepts of personal jurisdiction and subject matter jurisdiction. When a corporate defendant is located abroad and cannot physically be brought to court, the government must establish "physical presence" by demonstrating minimum contacts. *See In re Marc Rich*, 707 F.2d 663, 665–67 (2d Cir. 1983); *United States v. Chitron Elecs. Co.*, 668 F.

Supp. 2d 298, 303 (D. Mass. 2009). The government's cases confirm that subject matter jurisdiction is necessary but not sufficient to create personal jurisdiction.

Second, the government fails to address Supreme Court precedent holding that the minimum-contacts test applies to corporate criminal defendants. *See Int'l Harvester Co. v. Kentucky*, 234 U.S. 579 (1914). This case is still good law and was a primary case on which the minimum-contacts test was based. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 314, 315, 317, 319, 321 (1945). The government's cases that purport to demonstrate Due Process requires a lesser showing all concern principles of extraterritoriality and thus are inapposite.

Third, the government comes up short in claiming there are minimum contacts between Halkbank and the United States. The government fails to address Second Circuit authority holding that correspondent accounts do not create general jurisdiction. *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 135 (2d Cir. 2014). As for specific jurisdiction, the Indictment does not allege any "purposeful availment" to the jurisdiction. The government's past characterization of the alleged conduct—which avoids citation to the Indictment—makes clear that no such allegations exist. Regarding the supposed misstatements to U.S. regulators, the government ignores that personal jurisdiction cannot be based on "getting information from or giving information to the government, or getting the government's permission to do something." *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 51 (2d Cir. 1991) (citation omitted).

**IV. The Government's Arguments Only Highlight the Improper Extraterritoriality.**

The government's argument regarding extraterritoriality depends on its deft mischaracterization of the Indictment's allegations. The government does not dispute that "merely incidental" conduct lacks "primacy for the purposes of the extraterritoriality analysis." *Bascuñán v. Elsaca*, 927 F.3d 108, 122 (2d Cir. 2019) (citation omitted). And the government

agrees that less than five percent of the allegedly "illicitly transferred" funds passed through domestic accounts. Opp. at 19. To try to overcome these issues, the government argues that "100% of the U.S. criminal conduct engaged in by the bank involved funds that 'passed through domestic accounts,'" so "these transactions were the very purpose of the scheme." Opp. at 18. But the Indictment itself—not the government's most recent self-serving characterization—describes the scheme with which Halkbank is charged—the "purpose and effect of the scheme . . . was to create a pool of Iranian oil funds in Turkey and the United Arab Emirates held in the names of front companies, which concealed the funds' Iranian nexus," and that "the funds were used to make international payments" including but not limited to transfers through the U.S. financial system. ECF No. 562 ¶ 6.[3] Critically, the government never disputes that ninety-five percent of the conduct comprising the alleged scheme involved extraterritorial conduct.

The government next argues that the IEEPA and section 371 counts nevertheless overcome the presumption against extraterritoriality. The government relies too heavily on *United States v. Bowman*, 260 U.S. 94 (1922), to suggest that the IEEPA and section 371 have extraterritorial application because they "are plainly intended to protect the U.S. government from threats that do not 'logically' depend on where those threats originate." Opp. at 20. *Bowman* is toothless. Courts of appeal have recently concluded that the presumption against

---

[3] And although the government cites to *Atilla* as describing that the "very purpose of the scheme was to launder Iranian oil proceeds through U.S. financial institutions," Opp. at 18, the Second Circuit opinion says no such thing; instead, it tracks the Indictment's description. Here are the Second Circuit's words, unaltered: "the purpose of the scheme was to convert Iranian oil proceeds held at Halkbank into a form that could be used to fund international payments on behalf of the Government of Iran and Iranian entities." *United States v. Atilla*, 966 F.3d 118, 128 (2d Cir. 2020). The Second Circuit also noted that trial testimony indicated that NIOC was interested in "get[ting] access to dollars *or Euros*," and that Zarrab testified "that the goal of the conspiracy was to make international financial payments for NIOC, *including* in U.S. dollars." *Id.* (emphasis added).

extraterritorial application is rebutted using *RJR Nabisco*'s framework, without mention of *Bowman*. *See, e.g.*, *United States v. Ubaldo*, 859 F.3d 690 (9th Cir. 2017). And "most courts of appeals applying *Bowman* still require the government to show that the presumption against extraterritoriality has clearly been rebutted by the text of the statute." *United States v. Perez*, 962 F.3d 420, 439 n.5 (9th Cir. 2020). The government does not make this showing.

IEEPA. Regarding the IEEPA, the government does not grapple with the IEEPA's unambiguous text, which, as cited in the Motion to Dismiss, clearly limits the statute's applicability to "person[s] . . . subject to the jurisdiction of the United States." Mot. at 15 (citing 50 U.S.C. § 1702(a)(1)). And the very existence of a secondary sanctions regime confirms that IEEPA's criminal liability provision not to be extraterritorial in application. *Id.*

Conspiracy to Defraud the United States. Regarding section 371, the government makes no argument in reference to the statute's text, which, as the Motion to Dismiss noted, "contains no indication of an extraterritorial application." Mot. at 17. The statute's broad language, criminalizing defrauding the government "in any manner or for any purpose," is insufficient to rebut the strong presumption against extraterritoriality. *Id.*

Bank Fraud. The government argues that, based on *Bascuñán*, this case involves a domestic application of the bank fraud statute because the "very purpose of the scheme was to launder Iranian oil proceeds through U.S. financial institutions for use to make international payments around the world." Opp. at 18. But this was not the "very purpose" of the alleged scheme, and *Bascuñán* dealt with a scheme to repeatedly transfer funds from U.S. accounts.

Money Laundering. The government argues that the "use of U.S. correspondent banks to launder illegal proceeds qualifies as domestic conduct" for the purposes of the money laundering statute. Opp. at 19. But the government's cited case did not involve the statute at issue, and the

government failed to address the express extraterritoriality provision contained in 18 U.S.C. § 1956(f). Here, the transactions at issue are alleged to have initiated and concluded abroad.

**V. The Indictment Does Not Allege All the Elements of Bank Fraud.**

The government's suggestion that Halkbank, a separate, later-indicted defendant, is precluded from raising any issue with its own indictment simply because an earlier-tried, alleged co-conspirator was convicted is contrary to precedent, vitiates Halkbank's right to present its own defense, and belies the weaknesses of the government's arguments.

Material Misrepresentations and False Statements. To begin, the government is unable to identify any allegations of material misrepresentations or false statements made to a U.S. bank. Moreover, the government is unable to cite to a single authority to support its contention that wire transfer instructions constitute material misrepresentations. The government's attempt to re-characterize the holding in *Morgenstern* is particularly striking considering the facts of that case. In *Morgenstern* not only did the defendant present checks procured by fraud and falsify those checks by changing payee names and inflating dollar amounts, the defendant also mixed the "negotiation of legitimate checks" with the fraudulently procured and altered checks. *United States v. Morgenstern*, 933 F.2d 1108, 1113 (2d Cir. 1991). The limited allegations contained in the Indictment do not come close to alleging such a material misrepresentation.

Intent to Harm a U.S. Bank. Second, the government is unable to escape the fact that the Indictment only alleges Halkbank "intended to deceive *U.S. regulators* and *foreign banks*." ECF No. 562 ¶ 1 (emphasis added). *Shaw v. United States*, 137 S. Ct. 462 (2016), does not foreclose such an argument. In *Shaw*, the Court held that a scheme to "obtain funds from a *bank depositor's* account" is also a scheme to "obtain property from a 'financial institution'" when (i) "the defendant knew that the bank held the deposits," (ii) "the funds obtained came from the

deposit account," and (iii) "the defendant misled the bank in order to obtain those funds." *Id.* at 466 (citation omitted). Because U.S. banks are only involved as intermediaries providing services, the Indictment's allegations cannot be salvaged by *Shaw*.

Obtained By Means of a False Statement. As discussed above, the government does not identify any alleged false statements in the Indictment. To bolster its argument that Halkbank obtained property from a U.S. bank "by means" of a false statement, the government relies on a case where the defendant provided "false information" to financial institutions to obtain money from customer's deposit accounts. *United States v. Lebedev*, 932 F.3d 40, 49 (2d Cir. 2019). Here, there are no allegations that Halkbank sought to obtain property from the U.S. banks or their customers. The Indictment merely alleges U.S. banks acted as intermediaries.

**VI. Count Six Is Subsumed Within Count Two, Making It Multiplicitous.**

Finally, rather than address the merits of the defense's multiplicity argument, the government intentionally misunderstands the argument and muddles the applicable law. As the Second Circuit held in *United States v. Zvi*, when the elements of one count are entirely subsumed within another count, the two counts are multiplicitous under the *Blockburger* test. 168 F.3d 49, 57 (2d Cir. 1999); *see also United States v. Weingarten*, 713 F.3d 704, 710 n.5 (2d Cir. 2013) (endorsing same-elements test in finding counts "multiplicitous because the elements of one charge were 'subsumed' within the other."). The government was unable to distinguish the money laundering conspiracy charge other than to point out that the specified unlawful activity required by §1956 could be bank fraud. This does little to cure the multiplicitous nature of the indictment. Under the Indictment, once the government proves each element of conspiracy to violate IEEPA, the government has proved each element of conspiracy to commit money laundering. Accordingly, the money laundering conspiracy charge is multiplicitous.

Dated: September 8, 2020

Respectfully submitted,

WILLIAMS & CONNOLLY LLP

/S/ *Robert M. Cary*

Robert M. Cary
Simon A. Latcovich
James W. Kirkpatrick
Damayanti Desai
725 Twelfth Street, N.W.
Washington, DC 20005

650 Fifth Avenue, Suite 1500
New York, NY 10019
Phone: (202) 434-5000
Fax: (202) 434-5029
E-mail: rcary@wc.com
slatcovich@wc.com
jkirkpatrick@wc.com
ddesai@wc.com