**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
UNITED STATES OF AMERICA,           :
                                    :          15 Cr. 867 (RMB)
            - against -             :
                                    :          **DECISION & ORDER**
HALKBANK                            :
                 Defendants.        :
---------------------------------------------------------------x

Having carefully reviewed the record herein, including without limitation: (1) the Halkbank Indictment, dated October 15, 2019; (2) Halkbank's motion to dismiss the Indictment, dated August 10, 2020; (3) the Government's opposition to the motion to dismiss, dated August 31, 2020; (4) Halkbank's reply brief, dated September 8, 2020; (5) the oral argument held on September 18, 2020, and (6) all prior related proceedings, **the Court denies Halkbank's motion to dismiss as follows**:[1]

**I.   Background**

On October 15, 2019, Türkiye Halk Bankasi A.S. ("Halkbank") was charged in a six count Indictment with the following crimes: **Count One** - Conspiracy to Defraud the United States in violation of 18 U.S.C. § 371; **Count Two** - Conspiracy to Violate the International Emergency Economic Powers Act ("IEEPA") in violation of 50 U.S.C. § 1705, Executive Orders 12959, 13059, 13224, 13599, 13622, & 13645, and 31 C.F.R. §§ 560.203, 560.204, 560.205, 561.203, 561.204, & 561.205; **Count Three** - Bank Fraud in violation of 18 U.S.C. §§ 1344 and 2; **Count Four** - Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349; **Count Five** - Money Laundering in violation of 18 U.S.C. §§ 1956(a)(2)(A) and 2; and **Count Six** - Conspiracy to Commit Money Laundering in violation of 18 U.S.C. § 1956(h). See Indictment at 35-41.[2]

---

[1] **Any issues or arguments raised by the parties but not specifically addressed in this Decision and Order have been considered by the Court and rejected.**

[2] Halkbank is one of Turkey's largest state-owned banks. See Eric Lipton, U.S. Indicts Turkish Bank on Charges of Evading Iran Sanctions, *New York Times* (Oct. 15, 2019).

1

According to the Government: "[t]he Indictment alleges that Halkbank participated in transactions designed to extract surreptitiously Iran's oil and gas proceeds held at the bank, so that those funds could be used to make international payments through the U.S. financial system on behalf of Iran while hiding Iran's control of those transactions, and lied to Treasury Department officials in the United States to conceal the scheme and evade applicable sanctions." See Opp. at 10; Indictment at 2-4, 21-26, 34. "The scheme involved fraudulent gold and humanitarian trade transactions run through Halkbank." Opp. at 3. "Through these methods, Halkbank illicitly transferred approximately $20 billion worth of otherwise restricted Iranian funds." Indictment at 3. "As alleged, at least approximately $1 billion was laundered through the U.S. on behalf of the Government of Iran and Iranian entities." Opp. at 3.

One of Halkbank's alleged co-conspirators, Reza Zarrab, a dual citizen of Turkey and Iran, pled guilty before this Court on October 26, 2017 to designing the sanctions evasion scheme. Another of Halkbank's alleged co-conspirators, Mehmet Hakan Atilla, who was the Deputy General Manager of International Banking at Halkbank, was convicted by an S.D.N.Y. jury on January 3, 2018 of conspiracy to defraud the United States; conspiracy to violate the IEEPA and the Iranian Transactions and Sanctions Regulations ("ITSR"); bank fraud; conspiracy to commit bank fraud; and conspiracy to commit money laundering. See May 16, 2018 Judgment. Atilla was sentenced to 32 months imprisonment (and he completed his sentence). Id. On July 20, 2020, the Second Circuit affirmed Atilla's conviction and sentence. See discussion of Second Circuit ruling at pp.5-6 infra.

**Prior Related Motions to Dismiss**

On July 18, 2016, Zarrab moved to dismiss the March 30, 2016 Indictment against him which charged Zarrab with conspiracy to defraud the United States; conspiracy to violate the IEEPA; conspiracy to commit bank fraud; and conspiracy to commit money laundering. In his motion, Zarrab raised some of the same issues which are raised here. Among other things, Zarrab contended that: the alleged conspiracy to defraud the U.S. Office of Foreign Assets Control ("OFAC") "occurred entirely abroad;" the IEEPA and bank fraud statutes "do[] not apply extraterritorially;" "the indictment fails to allege a conspiracy to commit bank fraud;" and "conspiracy to commit money laundering is an improper duplicative charge [of

2

the IEEPA charge]." See July 18, 2016 Mot. at 4, 25, 33, 35; Aug. 22, 2016 Reply at 11-12, 17. Following briefing, by Decision & Order, dated October 17, 2016, the Court denied Zarrab's motion to dismiss. *See United States v. Zarrab*, 2016 WL 6820737, at *4, 8, 12, 15-16 (S.D.N.Y. Oct. 17, 2016) ("The Indictment alleges a violation of § 371 against Zarrab and his co-conspirators;" "the Indictment alleges a domestic nexus between Zarrab and his co-conspirators' conduct and the United States, i.e. the exportation of services from the United States;" "the Indictment clearly states the elements of a conspiracy to commit bank fraud;" and "Zarrab's argument that the conspiracy to commit money laundering charge 'merges' with the IEEPA [count] . . . is unpersuasive").

On October 9, 2017, Atilla moved to dismiss the September 6, 2017 Indictment against him. Atilla's motion raised some of the same issues which are raised here. In his motion, Atilla contended, among other things, that he "cannot be charged with activity that is exclusively foreign based with no direct U.S. effect;" "there is no allegation linking Atilla with the U.S;" and the IEEPA and ITSR cannot be applied extraterritorially to a foreign national. See Oct. 9, 2017 Mot. at 4, 13, 16. On November 16, 2017, after briefing, the Court denied Atilla's motion to dismiss. See Nov. 16, 2017 Tr. at 12:5-22:7 ("The Second Circuit Court of Appeals has made it abundantly clear that the execution of money transfers from the United States to Iran on behalf of another . . . constitutes the exportation of a service and may be in violation of IEEPA and ITSR." Id. at 19:22-20:1; "the indictment . . . reflects the elements of each count in the indictment and establishes a sufficient nexus between Mr. Atilla and his co-conspirators' conduct and the United States . . . Mr. Atilla is charged with participating in the same conspiracies as eight other defendants, i.e., at its core, circumventing U.S. sanctions against Iran via Halkbank." Id. at 20:24-22:13; "Mr. Atilla is [also] alleged to have . . . lied to U.S. regulators." Id. at 15:18-20).

## II. Legal Standard

"[T]he indictment has a strong presumption of validity . . . [and is] only rarely dismissed." *United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999). "An indictment . . . if valid on its face . . . is enough to call for trial of the charge[s] on the merits." *Costello v. U.S.*, 350 U.S. 359, 409 (1956). "The dismissal of an indictment is an 'extraordinary remedy' reserved only for extremely limited circumstances

3

implicating fundamental rights." *See United States v. De La Pava*, 268 F.3d 157, 165 (2d Cir. 2001). "An indictment need only provide sufficient detail to assure against double jeopardy and state the elements of the offense charged, thereby apprising the defendant of what he must be prepared to meet." *United States v. Tramunti*, 513 F.2d 1087, 1113 (2d Cir. 1975).

There is "a substantial public interest in ensuring that the Government may pursue prosecutions based upon indictments that are legally sufficient." *United States v. Samia*, 2017 WL 980333, at *3 (S.D.N.Y. Mar. 13, 2017); *United States v. Fields*, 592 F.2d 638, 648 (2d Cir. 1978). "In reviewing a motion to dismiss an indictment, the Court must take the allegations of the indictment as true." *See United States v. Avenatti*, 432 F.Supp.3d 354, 360-61 (S.D.N.Y. 2020) (citing *Boyce Motor Lines v. United States*, 342 U.S. 337, 343 n. 16 (1952)); *New York v. Tanella*, 374 F.3d 141, 148 (2d Cir. 2004).

"The standard for the sufficiency of an indictment is not demanding and requires little more than that the indictment track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Hayes*, 811 Fed. App'x 30, 37 (2d Cir. 2020) (citing *United States v. Balde*, 943 F.3d 73, 89 (2d Cir. 2019)) (internal citations omitted).

"The law of the case [doctrine] . . . expresses the practice of courts generally to refuse to reopen what has been decided." *See Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (internal citations and quotations omitted). "When a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case." *United States v. Uccio*, 950 F.2d 753, 758 (2d Cir. 1991). "The court has discretion to apply the law of the case doctrine, notwithstanding a 'difference in parties,' provided that doing so would be consistent with the court's 'good sense.'" *See S.E.C. v. Penn*, 2020 WL 1272285, at *3 (S.D.N.Y. Mar. 17, 2020). "A late-added party, or a co-party who did not participate in the proceedings that led to the first ruling, might be required to show reasons to doubt the adequacy of the underlying argument or of the ruling itself." See 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4478.5 (2d ed.).

**III.     Second Circuit Court of Appeals July 20, 2020 Decision in the Atilla Case**

On September 18, 2020, at the oral argument of Halkbank's motion to dismiss, both Halkbank and the Government sought to rely upon the Second Circuit's decision in *United States v. Atilla*, 966 F.3d 118 (2d Cir. 2020). According to the defense, "the Second Circuit's opinion in *Atilla* stands for one thing and one thing only . . . evasion of secondary sanctions is not a crime." See Sept. 18, 2020 Tr. at 34:14-16. "Halkbank was indicted on the assumption that the entire $20 billion . . . was unlawful because it violated secondary sanctions, and the Second Circuit said, no, that's not the law." Id. at 35:13-17.

The Government counters that "the *Atilla* decision is a ruling of the Second Circuit with respect to the very scheme alleged in this [Halkbank's] indictment and is controlling. The Second Circuit [] viewed the . . . allegations underlying the scheme and concluded that [the allegations] support IEEPA conspiracy involving primary sanctions, bank fraud conspiracy, money laundering conspiracy and . . . bank fraud." Id. at 33:14-21. "In affirming Atilla's convictions . . . the Second Circuit . . . necessarily found that the scheme contemplated laundering the money through the U.S. financial system." Id. at 20:23-25; see also Reenat Sinay, "Feds Say 2nd Circ. Ruling Bolsters Halkbank Sanctions Case," *Law360.com* (Sept. 18, 2020).

In the Court's view, the Second Circuit ruling stands for several relevant propositions. First and foremost, the Second Circuit affirmed Atilla's convictions and sentence for conspiracy to defraud the U.S., conspiracy to violate the IEEPA, bank fraud, conspiracy to commit bank fraud, and conspiracy to commit money laundering. *See United States v. Atilla*, 966 F.3d 118 (2d Cir. 2020). Second, the Second Circuit rejected "secondary sanctions liability" under the IEEPA but affirmed Atilla's conviction under the Government's alternate primary sanctions theory that "Atilla conspired to violate the IEEPA by exporting services (including the execution of U.S. dollar transfers) from the United States to Iran in violation of the ITSR [Iranian Transactions and Sanctions Regulations]." *Atilla*, 966 F.3d at 127. Third, the evidence of Atilla's convictions was "overwhelming" and "demonstrated that the purpose of the scheme was to convert Iranian oil proceeds held at Halkbank into a form that could be used to fund international payments on behalf of the Government of Iran." Id. at 128-29. "These international

5

payments were likely to pass through the U.S. financial system" and "senior-level executives at Halkbank knew the particulars of the scheme, including the importance of the international payments and of U.S. dollar transactions." *Id.* at 121-22, 128-29. "Atilla wanted the Iranian transactions to remain obscured by Zarrab because Atilla knew that they violated U.S. sanctions on Iran." *Id.* at 129. Fourth, that "Atilla repeatedly lied to Treasury officials to conceal the sanctions avoidance scheme . . . [and] he was aware that the scheme involved international payments through U.S. banks that were violations of U.S. sanctions." *Id.*[3]

---

3

Among the evidence adduced at Atilla's trial were meetings between and among Atilla and U.S. Treasury officials Adam Szubin, former Director of OFAC, and David Cohen, former U.S. Undersecretary of the Treasury for Terrorism and Financial Intelligence. These meetings took place both in the U.S. and in Turkey. Indeed, some of these meetings took place at the U.S. Department of Treasury in Washington D.C. See Dec. 7, 2017 Tr. at 1082, 1083:17-19; see also Dec. 12, 2017 Tr. at 1413:6-10; 1474:16-17.

A meeting at the U.S. Department of Treasury in Washington D.C. in March 2012 is reflected in the following trial testimony: AUSA Lockard: "On March 14, 2012, where was the meeting held?" Cohen: "In my office at the Treasury Department." AUSA Lockard: "Who were the participants in that meeting?" Cohen: "Mr. Atilla and Mr. Aslan [the former General Manager of Halkbank] . . . the Halkbank executives were in Washington for a meeting." AUSA Lockard: "What were the topics that you discussed with Mr. Atilla and Mr. Aslan at this meeting in March?" Cohen: "[I]ssues relating to Iran sanctions . . . They told us that they . . . were not allowing Iran to acquire gold . . . using the proceeds that Halkbank was holding for Iran from the sale of oil . . . [W]e were assured that . . . they understood that Iran would look to use deceptive practices to evade sanctions and [] that they had mechanisms in place at the bank to ensure that they would detect and prevent Iranian efforts to evade the sanctions." See Dec. 8, 2017 Tr. at 1112:22-1118:7.

At the so-called "pull-aside" meeting in Turkey in February 2013, according to Szubin, Szubin warned Atilla "one-on-one" that: "to the extent he [Atilla] was viewing this as a kind of routine discussion or . . . visit . . . that wasn't the case. This was a very conscious visit to Halkbank, by me, because of concerns that were pretty serious about what was going on at Halkbank. And that we viewed them in sort of a category unto themselves, that I wasn't having this same level of conversation with any other bank." See Dec. 12, 2017 Szubin Testimony Tr. at 1436.

At another meeting at the U.S. Department of Treasury in Washington D.C. in October 2014, Atilla gave assurances to Cohen about Halkbank's relationship with Reza Zarrab: AUSA Lockard: "Directing your attention to early October of 2014, did you meet with anyone from Halkbank at that time?" Cohen: "Mr. Atilla and the new CEO of Halkbank . . . in my office in Washington . . . I wanted to know what Halkbank's involvement with Mr. Zarrab was." AUSA Lockard: "Did Mr. Atilla provide any additional details about Mr. Zarrab's then-current business with the bank?" Cohen: "He [Atilla] mentioned that they had a loan for some properties that Mr. Zarrab owned. My recollection is it was a relatively small relationship . . . I was being assured that everything was okay." See Dec. 8, 2017 Tr. at 1149:19-1152:8.

IV.   **Halkbank's Motion to Dismiss**

Halkbank's motion seeks to dismiss all six counts in the Indictment. Halkbank contends that it is immune from prosecution under the Foreign Sovereign Immunities Act ("FSIA"). See Mot. at 1. Halkbank also contends that the Indictment is barred by the "presumption against extraterritoriality." Id. at 12. Halkbank asserts that the Court lacks personal jurisdiction over Halkbank because of the absence of "minimum contacts" with the United States. Id. at 8. Halkbank also seeks to dismiss Counts One, Three, Four, and Six on particularized individual grounds, including respectively failure to allege a conspiracy to defraud the U.S; failure to allege bank fraud; and failure to allege conspiracy to commit bank fraud. Halkbank claims that Count Six is multiplicitous of Count Two.[4]

**Halkbank is Not Immune from Prosecution under the FSIA**

Halkbank argues that the Foreign Sovereign Immunities Act (FSIA) "extends [] immunity to any 'instrumentality of a foreign state.'" See Mot. at 1.  Immunity presumably extends to Halkbank because it is majority-owned by the Turkish government. Id. The Government counters persuasively that FSIA does not apply in criminal cases and that, even if FSIA did apply, "the statute's 'commercial activities' exception would strip away any immunity." See Opp. at 6-7, 9-14.

The Court concludes that Halkbank is not immune from prosecution. For one thing, FSIA does not appear to grant immunity in criminal proceedings. *See United States v. Hendron*, 813 F.Supp. 973, 975 (E.D.N.Y. 1993); *United States v. Biggs*, 273 Fed. App'x 88, 89 (2d Cir. 2008); Opp. at 6-9; *see also Southway v. Central Bank of Nigeria*, 198 F.3d 1210, 1215 (10th Cir. 1999); *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997). In *United States v. Hendron*, the district court undertook a comprehensive analysis of the text and legislative history of FSIA and concluded that FSIA "applies only to civil proceedings." *See Hendron*, 813 F.Supp. at 975. Nothing in the text of FSIA suggests that it applies to criminal proceedings; and the "legislative history . . . gives no hint that Congress was

---

[4] Halkbank argues that "sovereign immunity," the absence of "extraterritoriality," and the absence of minimum contacts (each) void Counts One through Six. Halkbank does not appear to be seeking dismissal of Counts Two and Five on any particularized individual grounds.

concerned [about] a foreign defendant in a criminal proceeding." *Hendron*, 813 F.Supp. at 976; *see also In re Grand Jury Proceeding*, 752 F.Supp. 2d 173, 179 (D.P.R. 2010). "The basic purpose of the [FSIA] is to give the district courts jurisdiction to hear **civil cases** involving claims against foreign states, and their instrumentalities which have waived their immunity from suit." *Corporacion Venezolana de Fomento v. Vintero Sales Corp.*, 629 F.2d 786, 790 (2d Cir. 1980) (emphasis added); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 488 (1983); *see generally* Robert A. Katzmann, Judging Statutes (Oxford University Press, 2014) pp. 31-32 ("the fundamental task for the judge . . . is to interpret language in light of the statute's purpose(s)").[5]

Even assuming, *arguendo*, that FSIA provided immunity in this criminal case (which it does not), FSIA's commercial activity exceptions would clearly apply and support the Halkbank prosecution. The commercial activity exception provides that "a foreign state will not be immune from suit in any case: (1) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or (2) upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (3) upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." *See Hanil Bank v. PT. Bank Negara Indonesia (Persero)*, 148 F.3d 127, 130-31 (2d Cir. 1998) (citing 28 U.S.C. § 1605(a)(2)).

The Government points to Halkbank's alleged misrepresentations made to U.S. Treasury officials both in and outside the United States and to Halkbank's use of U.S. banks to facilitate fraudulent transactions in excess of $1 billion as bases for denying immunity (under the commercial activity exception). See Opp. at 9-12. The Indictment alleges, among other things, that: (a) "Halkbank . . . participated in the design of fraudulent transactions intended to deceive U.S. regulators and foreign banks, and lied to U.S. regulators about Halkbank's involvement;" (b) "Senior officers of Halkbank . . .

---

[5] It should be noted that not all Circuits agree with *Hendron*. *See e.g. Keller v. Central Bank of Nigeria*, 277 F.3d 811 (6th Cir. 2002).

concealed the true nature of these transactions from officials with the U.S. Department of the Treasury so that Halkbank could supply billions of dollars' worth of services to the Government of Iran without risking being sanctioned by the United States and losing its ability to hold correspondent accounts with U.S. financial institutions;" and (c) "The purpose and effect of the scheme in which Halkbank [] participated was to create a pool of Iranian oil funds in Turkey . . . From there, the funds were used to make international payments on behalf of the Government of Iran and Iranian banks, including transfers in U.S. dollars that passed through the U.S. financial system in violation of U.S. sanctions laws," see Indictment at 1-4, 26, 34. According to the Government, Halkbank has forfeited any purported immunity from prosecution in the U.S. See Opp. at 9-12.

Halkbank's business meetings, conference calls, and other interactions and communications at the U.S. Department of Treasury described in the Indictment fall under the first commercial activity exception. See Opp. at 11 citing *Pablo Star Ltd. v. Welsh Gov't*, 961 F.3d 555 (2d Cir. 2020). They amount to "commercial activity carried on in the United States." 28 U.S.C. § 1605(a)(2). Halkbank's business meetings, conference calls, and other interactions and communications at the U.S. Department of Treasury also fall under the second commercial activity exception. They amount to "act[s] performed in the United States in connection with a commercial activity elsewhere," including Halkbank's banking activity in Turkey. See Opp. at 10-11; 28 U.S.C. § 1605(a)(2); *see also Devengoechea v. Bolivarian Republic of Venezuela*, 2016 WL 3951279, at *9 (S.D.Fl. Jan. 20, 2016); *Abdulla v. Embassy of Iraq at Washington D.C.*, 2013 WL 4787225, at *7 (E.D.Pa. Sept. 9, 2013).

Halkbank's business meetings, conference calls, and other interactions and communications with the U.S. Department of Treasury (in and outside the U.S.) coupled with its alleged "laundering [of] more than $1 billion through the U.S. financial system in violation of the U.S. embargo on Iran" fall under the third commercial activity exception. They include "acts outside the territory of the United States in connection with a commercial activity elsewhere that [] cause[d] a direct effect in the United States." 28 U.S.C. § 1605(a)(2); see Opp. at 12; see also *Atlantica Holdings v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 813 F.3d 98, 109 (2d Cir. 2016); *Nnaka v. Fed. Republic of Nigeria*, 238 F.Supp.3d 17, 30

(D.D.C. 2017); *Hanil Bank*, 148 F.3d at 131-33. At oral argument on September 18, 2020, the Government persuasively contended that: "[y]ou have a plan by [Halkbank] and Iran, among others, to victimize the United States and its financial institutions, which was successfully completed to the tune of a billion dollars. So, there is no dispute, frankly, that there is a direct effect [in the United States]." See Sept. 18, 2020 Tr. at 29:19-31:9. "While it is true that the bank helped Iran secretly transfer approximately $20 billion-worth in violation of a host of international sanctions . . . the more than $1 billion . . . in other words, 100% of the U.S. criminal conduct . . . passed through domestic accounts." See Opp. at 19. "An injury knowingly caused in the United States is sufficient to satisfy the direct effect requirement and that's exactly what you have here." See Sept. 18, 2020 Tr. at 31:2-5. "The gravamen of the claim is the conspiracy and the scheme to launder money through the United States. That's what gives rise to criminal liability." Id. at 29:19-31:9; *see also Atlantica*, 813 F.3d at 107.

The Court also rejects Halkbank's claim that it is entitled to immunity under the common law. See Mot. at 1. For one thing, Halkbank cites no support for this argument. Rather, Halkbank unpersuasively relies upon *Samantar v. Yousuf*, a case in which the plaintiff sued an individual foreign official "in his personal capacity." *See Samantar v. Yousuf*, 130 S.Ct. 2278, 2281 (2010); *Tawfik v. al-Sabah*, 2012 WL 3542209, at *2 (S.D.N.Y. Aug. 16, 2012); see also Sept. 18, 2020 Tr. at 27:4-6. Second, at common law, "the granting or denial of . . . foreign sovereign immunity . . . was historically the case-by-case prerogative of the Executive Branch" and courts "deferred to the decisions of . . . the Executive Branch on whether to take jurisdiction over actions against foreign sovereigns and their instrumentalities." *See Verlinden*, 103 S.Ct. at 486; *Republic of Iraq v. Beaty*, 556 U.S. 848, 857 (2009); Opp. at 9. By pursuing Halkbank's prosecution, according to the Government, the U.S. Executive Branch "has clearly manifested its clear sentiment that Halkbank should be denied immunity." See Opp. at 9 (quoting *Noriega*, 117 F.3d at 1212).

**The Presumption Against Extraterritoriality Does Not Bar the Charges in the Indictment**

Halkbank argues that the Indictment should be dismissed because the applicable statutes "do not apply extraterritorially." See Mot. at 12, 14. The Government counters persuasively that "the Indictment involves a domestic, rather than an extraterritorial, application of the IEEPA, the bank fraud statute, the money laundering statute, and § 371." See Opp. at 18.

The Court finds that the presumption against extraterritoriality does not apply. Indeed, "there is a sufficient domestic nexus between the allegations in [the Indictment] to avoid the question of extraterritorial application altogether." *See United States v. Mostafa*, 965 F.Supp.2d 451, 469 (S.D.N.Y. 2013). According to the Government, "the very purpose of the scheme was to launder Iranian oil proceeds through U.S. financial institutions for use to make international payments throughout the world." See Opp. at 18. The alleged scheme involved Halkbank's "concealment of information from, and misrepresentations to, U.S. government departments and officials in this country." See Opp. at 19. And, "at least approximately $1 billion was laundered through the U.S. . . . through domestic accounts." See Opp. at 3, 19; *United States v. Prevezon Holdings, Ltd.*, 251 F.Supp.3d 684 (S.D.N.Y. 2017); *United States v. Buck*, 2017 WL 4174931, at *6-8 (S.D.N.Y. Aug. 28, 2017); *United States v. Hayes*, 99 F. Supp. 3d 409, 422 (S.D.N.Y. 2015).

The Indictment clearly alleges domestic application in that "Halkbank knowingly facilitated the scheme [and] participated in the design of fraudulent transactions intended to deceive U.S. regulators;" "Senior officers of Halkbank . . . acting within the scope of their employment and for the benefit of Halkbank, concealed the true nature of these transactions from officials with the U.S. Department of Treasury;" "between at least approximately December 2012 and October 2013, more than $900 million in such transactions were conducted by U.S. financial institutions through correspondent accounts held in the United States;" and "Halkbank continued executing the evasion and money laundering scheme until at least in or about March 2016 . . . [and] continued to deceive Treasury officials." See Indictment at 1-3, 26, 34; see also *Force v. Facebook*, 934 F.3d 53, 73 (2d Cir. 2019) ("the case involves a domestic application

11

of the statute . . . the conduct relevant to the statute's focus occurred in the United States, [and] the case involves a permissible domestic application even if other conduct occurred abroad").[6]

**The Court has Personal Jurisdiction over Halkbank**

Halkbank argues that "to meet the requirements of the Due Process Clause, the Government must establish either (1) that Halkbank has 'continuous and systematic' contacts with the United States . . . or (2) that the conduct giving rise to the alleged crimes 'arises out of' activities by Halkbank in the United States." See Mot. at 9. The Government counters correctly that "[n]either the Supreme Court nor the Second Circuit has ever held that the [] minimum-contacts test must be satisfied for personal jurisdiction in criminal cases." See Opp. at 16; see also *United States v. Halkbank*, 426 F.Supp.3d 23, 35 (S.D.N.Y. 2019) ("While minimum contacts challenges may be appropriate in civil cases, such challenges do not apply in criminal matters . . . Halkbank's reliance upon minimum contacts jurisprudence is simply misplaced.").

The Court clearly has personal jurisdiction over Halkbank. It is axiomatic that where, as here, a District Court has subject matter jurisdiction over the criminal offenses charged, it also has personal jurisdiction over the individuals charged in the indictment. 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States"); *United States v. Maruyasu Indus. Co., Ltd.*, 229 F.Supp.3d 659, 670 (S.D. Ohio 2017); Opp. at 15. "A defendant need not acquiesce in or submit to the court's jurisdiction or actually participate in the proceedings in order for the court to have personal jurisdiction over the defendant." *United States v. McLaughlin*, 949 F.3d 780, 781 (2d Cir. 2019).

---

[6] The Court in Zarrab's proceedings also found that "[t]he enactment and promulgation of the IEEPA and ITSR reflect the United States' interest in protecting and defending itself against, among other things, Iran's sponsorship of international terrorism, Iran's frustration of the Middle East peace process, and Iran's pursuit of weapons of mass destruction, which implicate the national security, foreign policy, and the economy of the United States." See *Zarrab*, 2016 WL 6820737, at *8; *see also United States v. Vilar*, 729 F.3d 62, 73 (2d Cir. 2013) ("the presumption against extraterritoriality does [not] apply . . . in situations where the law at issue is aimed at protecting the right of the government to defend itself"); *Facebook*, 934 F.3d at 73; *United States v. Tajideen*, 319 F.Supp.3d 445, 457 (D.D.C. 2018).

As noted, the Court has already rejected Halkbank's minimum contacts personal jurisdiction argument by Decision & Order, dated December 5, 2019. "[I]t is improper to make a personal jurisdiction motion based upon the absence of minimum U.S. contacts in a criminal case . . . [S]uch challenges do not apply to criminal matters . . . A federal district court has personal jurisdiction to try any defendant brought before it on a federal indictment charging a violation of federal law." *See United States v. Halkbank*, 426 F.Supp.3d 23, 35 (S.D.N.Y. 2019) (collecting cases); *see also United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002) ("the law of the case doctrine . . . holds that when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case").

Even assuming, *arguendo*, that "minimum contacts" were required (which they are not), the Court would likely find that Halkbank purposefully availed itself of the United States banking system as part of its alleged scheme. See Opp. at 16-17. "It should hardly be unforeseeable to a bank that selects and makes use of a particular forum's banking system that it might be subject to the burden of a lawsuit in that forum for wrongs related to, and arising from, that use." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 171-73 (2d Cir. 2013); *Nike, Inc. v. Wu*, 349 F.Supp.3d 310, 330 (S.D.N.Y. Sept. 25, 2018) ("the Banks have sufficient minimum contacts . . . as the selection and repeated use of New York's banking system constitutes purposeful availment of the privilege of doing business in New York").

The Court also finds that Halkbank's "acts could be expected to or did produce an effect in the United States" and that the "aim of that activity [was] to cause harm inside the United States or to U.S. citizens or interests." *See United States v. Epskamp*, 832 F.3d 154, 168 (2d Cir. 2016); *Mostafa*, 965 F. Supp. 2d at 459; Opp. at 15-17.

**The Indictment Alleges a Conspiracy to Defraud the United States in Count One**

Halkbank argues, among other things, that "Count One should be dismissed because the Indictment does not allege a conspiracy to 'defraud' the United States" under 18 U.S.C. § 371. Mot. at 24. The Government counters persuasively that the Indictment adequately alleges a conspiracy under 18 U.S.C. § 371 because it "tracks the language of the statute and states the time and place (in approximate terms) of the alleged crime, which is all that is required to deny a motion to dismiss." Count One "is

13

based on the bank's concealment of information from, and misrepresentations to, U.S. government departments and officials." See Opp. at 1, 17, 19.

The Court finds that the four elements of a § 371 conspiracy to defraud offense are clearly alleged, including: "(1) that the defendant entered into an agreement; (2) to obstruct a lawful function of the Government; (3) by deceitful or dishonest means; and (4) at least one overt act in furtherance of the conspiracy." *See United States v. Ballistrea*, 101 F.3d 827, 832 (2d Cir. 1996). That is, the Indictment alleges that, "[f]rom at least in or about 2012, up to and including in or about 2016, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere . . . Halkbank . . . and others known and unknown, knowingly and willfully combined, conspired, confederated, and agreed together and with each other to defraud the United States and an agency thereof, to . . . impede and obstruct the lawful and legitimate governmental functions and operations of the U.S. Department of Treasury in the enforcement of economic sanctions laws and regulations administered by that agency." The Indictment also alleges that: "Throughout the scheme, senior executives from Halkbank [] took steps to prevent U.S. authorities, particularly OFAC [Office of Foreign Assets Control], from detecting the illicit nature of the transfers being conducted through Zarrab's companies;" and "[a]fter continuation of the scheme following Zarrab's arrest, officials at Halkbank [] continued to deceive Treasury officials about the bank's relationship with Zarrab." See Indictment at 34-35; *United States v. Tochelmann*, 1999 WL 294992, at *2 (S.D.N.Y. May 11, 1999).

In affirming Atilla's conviction, the Court of Appeals held: "Atilla's challenge to his § 371 conviction fails because § 371's defraud clause was properly applied to his case . . . it has been well established that the term 'defraud' in § 371 . . . embraces 'any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of Government.'" *United States v. Atilla*, 966 F.3d 118, 130 (2d Cir. 2020) (internal citations and quotations omitted).

**The Indictment Alleges Bank Fraud in Count Three**

Halkbank argues that the Indictment "fails to allege a scheme to defraud a U.S. bank." See Mot. at 18. The Government counters persuasively that the Indictment "tracks the language of the bank fraud

14

statute and states the time and place (in approximate terms) of the alleged crime, which is all that is required to deny a motion to dismiss." See Opp. at 21 (internal citations omitted).

The Indictment clearly alleges bank fraud in violation of 18 U.S.C. § 1344 which prohibits "knowingly execut[ing], or attempt[ing] to execute a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the money, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations or promises." The Indictment, as noted, states that "[f]rom at least in or about 2012, up to and including in or about 2016, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere . . . Halkbank . . . and others . . . did knowingly execute and attempt to execute a scheme or artifice to defraud a financial institution, the deposits of which were then insured by the Federal Deposit Insurance Corporation . . . and to obtain moneys, funds . . . and other property owned by and under the custody and control of such financial institution, by means of false and fraudulent pretenses, representations, and promises . . . inducing U.S. financial institutions to conduct financial transactions on behalf of and for the benefit of the Government of Iran . . . by deceptive means." Indictment at 38.

The Indictment also provides details of the scheme to defraud U.S. banks, stating that "[t]he purpose and effect of the scheme . . . was to create a pool of Iranian oil funds . . . in the names of front companies, which concealed the funds' Iranian nexus . . . to make international payments on behalf of the Government of Iran . . . that passed through the U.S. financial system;" that "such transactions were conducted by U.S. financial institutions through correspondent accounts held in the United States;" and that "at least approximately $1 billion was laundered through unwitting U.S. financial institutions." Id. at 3-4, 26, 34.

**The Indictment Alleges Conspiracy to Commit Bank Fraud in Count Four**

Halkbank argues that the Indictment "fails to allege . . . a conspiracy to commit bank fraud." See Mot. at 18. The Government counters persuasively that the Indictment tracks the language of the bank fraud conspiracy statute (18 U.S.C. § 1349) and states the time and place in approximate terms of the alleged crime. See Opp. at 21.

15

The Court finds that the Indictment clearly alleges a conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349 by stating that "[f]rom at least in or about 2012, up to and including in or about 2016, in the Southern District of New York, Turkey, the United Arab Emirates, and elsewhere . . . Halkbank . . . and others . . . knowingly and willfully combined, conspired, confederated, and agreed together and with each other to commit bank fraud." See Indictment at 38-39. The Indictment "tracks the statutory language and specifies the nature of the criminal activity . . . [sufficient] to withstand a motion to dismiss." *United States v. Citron*, 783 F.2d 307, 314 (2d Cir. 1986).

**Halkbank's Contention that Count Six is Multiplicitous is Denied**

Halkbank contends that Count Two (conspiracy to violate the IEEPA) and Count Six (conspiracy to commit money laundering) are multiplicitous because "the government details the same scheme consisting of the same transfers of funds, from the same accounts, on the same dates as the basis for the two charges." See Mot. at 22, 24. The Government counters that because Count Two and Count Six are "distinct offenses" the Court should reject the bank's multiplicity argument. The Government also argues that "a pre-trial multiplicity motion is premature." See Opp. at 23-24.

"Courts in this Circuit have routinely denied pre-trial motions to dismiss potentially multiplicitous counts as premature." *See United States v. Medina*, 2014 WL 3057917, at *3 (S.D.N.Y. July 7, 2014) (citing *United States v. Josephberg*, 459 F.3d 350, 355 (2d Cir. 2006)). If the Court were to deal with the issue on the merits at this time, it would likely reject the motion because Count Two and Count Six each "contains an element not contained in the other" and "one crime could be proven without necessarily establishing the other." *See United States v. Budovsky*, 2015 WL 5602853, at *11 (S.D.N.Y. Sept. 23, 2015); *United States v. Regensberg*, 604 F.Supp.2d 625, 633 (S.D.N.Y. 2009); Opp. at 23-24.

## V. Conclusion & Order

Halkbank's motion to dismiss [Dck. # 645] is respectfully denied.

Dated: New York, New York
October 1, 2020

*Richard M. Berman*
_____
**RICHARD M. BERMAN, U.S.D.J.**